# EXHIBIT 1

**Jason B. Lattimore**
Direct Dial: (973) 639-7536
jason.lattimore@lw.com

One Newark Center, 16th Floor
Newark, New Jersey 07101-3174
Tel: +1.973.639.1234  Fax: +1.973.639.7298
www.lw.com

# LATHAM&WATKINSLLP

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Abu Dhabi | Moscow |
| Barcelona | Munich |
| Beijing | New Jersey |
| Brussels | New York |
| Chicago | Orange County |
| Doha | Paris |
| Dubai | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Shanghai |
| Houston | Silicon Valley |
| London | Singapore |
| Los Angeles | Tokyo |
| Madrid | Washington, D.C. |
| Milan | |

April 22, 2010

File No. 019942-0069

**VIA ECF & FEDEX**

The Honorable Douglas E. Arpert, U.S.M.J.
United States District Court for the District of New Jersey
Clarkson S. Fisher Federal Bldg. & U.S. Courthouse
402 East State Street, Room  2020
Trenton, New Jersey 08608

> Re:  *Wyeth v. Orgenus Pharma Inc. and Orchid Chemicals & Pharmaceuticals Ltd.*,
> Civil Action No.: 09-3235 (FLW/DEA)

Dear Judge Arpert:

We represent Defendants Orgenus Pharma Inc. and Orchid Chemicals & Pharmaceuticals Ltd. (collectively "Orchid") in the above-referenced matter.  We write to request the Court's assistance with a discovery dispute concerning Plaintiff's refusal to produce its settlement agreements and  license agreements relating to the  settlement of previous ANDA cases brought by plaintiff relating to  Venlafaxine (the  same drug at issue in this case).

Request Nos. 7 and 8 of Orchid's First Set Of Requests For Production called for the production of settlement agreements and licenses relating to the settlement of any of the previous litigation regarding Venlafaxine.[1]  On October 26, 2009, Wyeth served its responses to Orchid's document requests, objecting to Request Nos. 7 and 8 on relevance and overbreadth grounds, and on the ground that third  parties maintain a confidentiality interest in the settlement-related agreements.  *See* Wyeth's Response To Orchid's First Set Of Requests For Production, at 15-16 (attached as Exhibit A).

On October 30, 2009, we wrote to counsel for Wyeth regarding, *inter alia*, Wyeth's refusal to produce documents responsive to Request Nos. 7 and 8.  *See* Exhibit B, attached. Counsel for Wyeth responded on November 4, 2009, standing by its original objections.  *See*

---

[1]  Request No. 7 calls for "[c]opies of any agreements relating to any settlement of any of the Venlafaxine Litigations."  Request No. 8 seeks "copies of any license agreements relating to the resolution of any of the Venlafaxine Litigations."  Exhibit A at 15-16.

LATHAM&WATKINS LLP

Exhibit C, attached.  The parties met and conferred on November 5, 2009 and were unable to resolve their dispute.

In an effort to minimize expense, and in reliance on Wyeth's representation that it is interested in pursuing a settlement of this matter, Orchid has held off raising this issue with the court until now.  The progress of settlement discussions, however, has been painfully slow.  Further, it has become increasingly evident that these documents are highly relevant to this case and that the production of such documents would facilitate any settlement discussions.  Consequently, Orchid now requests that the Court compel the production of documents responsive to its Request Nos. 7 and 8.

Prior settlement licenses and settlement agreements are relevant and discoverable in this case.  Rule 26 provides that a party "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1).  Where a settlement agreement or a settlement-related license agreement is relevant to the issues in a given case, its production is appropriate.  *Datapoint Corp. v. Picturetel Corp.*, No. 3:93-cv-2381, 1998 WL 51356 (N.D. Tex. 1998) ("agreements obtained in settlement of a litigation [are often used] to show the commercial success and nonobviousness of a patent.  Such agreements to license allegedly infringing products can be probative evidence of these factors relevant to the validity of the patent.") (attached as Ex. D); *Key Pharma., Inc. v. ESI-Lederle, Inc.*, No. 96-1219, 1997 WL 560131, at *2-4 (E.D. Pa. Aug. 29, 1997) (holding that a settlement agreement in previous ANDA litigation was relevant to, and therefore discoverable in connection with, the defendant's patent misuse arguments) (attached as Ex. E); *Phoenix Solutions Inc. v. Wells Fargo Funds Mgmt.*, 254 F.R.D. 568, 582 (N.D. Cal. 2008) ("[t]here are a multitude of ways in which [Plaintiff's] correspondences with third parties related to the [settlement] license negotiations could be relevant to this litigation."); *Am. Standard, Inc. v. Pfizer, Inc.*, MISC 87-1-73-IP, 1988 WL 156152, at *2 (S.D. Ind. July 8, 1988) ("[A]greements to license allegedly infringing products can be probative evidence of [commercial success and non-obviousness which are] relevant to the validity of a patent.") (attached as Ex. F); *Datatreasury Corp. v. Wells Fargo & Co.*, Civil Action No. 2:06-CV-72 DF, 2010 WL 903259, at *2 (E.D. Tex. Mar. 4, 2010) (litigation-related licenses, along with underlying negotiations, are admissible and discoverable) (attached as Ex. G).

In *Datapoint*, the plaintiff had entered into a settlement license agreement with a third party in previous litigation.  *Datapoint*, 1998 WL 51356, at *1.  The settlement contained a confidentiality provision prohibiting disclosure of the terms of the settlement agreement absent a court order.  *Id.*  In the subsequent litigation, the defendant sought to compel the plaintiff to produce the license agreement from the earlier case.  *Id.*  The plaintiff opposed the motion on multiple grounds, including that the license agreement was irrelevant and was protected from discovery under Rule 408 of the Federal Rules of Evidence.  *Id.* at *2.  The court rejected those arguments, holding that the settlement license was relevant to the defendant's invalidity defenses.  *Id.*; *see also Newell Companies, Inc. v. Kenney Mfg. Co.*, 864 F.2d 757, 768-69 (Fed Cir. 1989) ("'In reaching our conclusion that the invention claimed would have been obvious, we have considered the evidence and arguments pertaining to the so-called 'secondary considerations' such as commercial success, licensing, adoption by the industry, etc.'") (quoting *EWP Corp. v. Reliance Universal Inc.*, 755 F.2d 898, 908 (Fed. Cir. 1985) (Davis, J.,

Hon. Douglas E. Arpert
April 22, 2010
Page 3

**LATHAM&WATKINS**LLP

concurring)); *Graham v. John Deere Co.*, 383 U.S. 1, 17-18, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

As with the defendant in *Datapoint*, Orchid has asserted invalidity defenses, including an obviousness defense under 35 U.S.C. § 103. *See* Answer and Counterclaims at pp. 9, 25-26 (attached as Ex. H). As reflected in the cases cited above, Wyeth's prior settlement licenses involving the patents at issue here are, at minimum, relevant to commercial success and other secondary considerations of non-obviousness.

Further, the settlement licenses and settlement agreements bear on the issue of whether Wyeth has entered into any settlement arrangements that unduly restrict competition and, as a consequence, form the basis for a patent misuse defense. *Cf. Key Pharma*, No. 8-CV-3235, 1997 WL 560131, at *4 (where defendant argued that plaintiff may have intentionally restricted competition through a prior settlement license, the court held that the settlement license was probative of the issue of whether patent misuse had occurred). Orchid is entitled to explore the availability of any and all defenses pertinent to Wyeth's patent infringement claims. *See* Fed. R. Civ. P. 26(b)(1) (permitting discovery regarding "any nonprivileged matter that is relevant to any party's claim or defense"); *Plant v. Merrifield Town Ctr. Ltd. P'ship*, ___ F.R.D. ___, 2010 WL 1039875, at *8 (E.D. Va. Mar. 18, 2010) (defendants were entitled to pursue discovery related to potential defenses) (attached as Ex. I); *accord Ashkenazi v. Lincoln Nat. Life Ins. Co.*, 2009 WL 1346394, at *6 (E.D.N.Y. May 13, 2009) (attached as Ex. J); *Condit v. Dunne*, 225 F.R.D. 100, 110, 113 (S.D.N.Y. 2004). Orchid therefore is entitled to discovery of the settlement agreements/licenses on this independent ground.

Finally, the settlement licenses sought here would be relevant to the application for injunctive relief that Wyeth is expected to file upon the expiration of the thirty-month stay of FDA approval applicable under 21 U.S.C. § 355(j)(2) to Orchid's Abbreviated New Drug Application for generic Venlafaxine. *See i4i Ltd. Partnership v. Microsoft Corp.*, 598 F.3d 831 (Fed. Cir. 2010) (recognizing past licensing practices as a pertinent consideration in the evaluation of whether irreparable injury would occur in the absence of an injunction). The licenses would also be pertinent to the issue of potential damages in the event Orchid launches its generic Venlafaxine product upon FDA approval. *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 872 (Fed. Cir. 2010) ("This court observes as well that the most reliable license in this record arose out of litigation."); *Tyco Healthcare Group LP v. E-Z-EM, Inc.*, Civil Action No. 2:07-CV-262 (TJW), 2010 WL 774878, at *2 (E.D. Tex. Mar. 2, 2010) ("[I]n light of the admissibility and importance of prior related settlement agreements, . . . underlying negotiations are relevant to the calculation of a reasonable royalty" and are discoverable.) (attached as Ex. K). *See also Felix M. v. Cordova*, No. Civ. 99-1287, 2000 WL 33906936, at *2 (D.N.M. March 24, 2000) ("Because the test of relevancy is significantly broader at the discovery stage, discovery is permitted as to matters which are or may become relevant.") (citations and internal quotation marks omitted) (attached as Exhibit L); *Payer, Hewitt & Co. v. Bellanca Corp.*, 26 F.R.D. 219, 221 (D. Del. 1960) (discovery is proper "as to any matter which is or may become relevant").

With regard to Wyeth's objection that the production of the settlement licenses in question would implicate the rights of third parties – the only objection not squarely addressed in the above-cited authority – that is the case whenever an agreement contains a provision limiting the disclosure of its terms. Preliminarily, confidentiality provisions in agreements between

**LATHAM&WATKINS**LLP

private parties typically allow for the production of documents if ordered by a Court, and there has been no showing here that there is no such standard provision in the agreements at issue.

More importantly, confidentiality agreements between private parties cannot affect the discoverability of agreements, and private parties cannot limit the Court's authority to compel the production of relevant documents in a subsequent litigation. *See Thomas & Marker Constr. Co. v. Wal-Mart Stores, Inc.*, No. 3:06-CV-406, 2008 WL 3200642, at *3 (S.D. Ohio Aug. 6, 2008) (compelling production of confidential settlement agreement over, among others, the confidentiality objection of the plaintiff) (attached as Ex. M); *Sonnino v. Univ. of Kan. Hosp. Auth.*, No. Civ. A. 02-2576-KHV-DJ, 2004 WL 769325, at *3 (D. Kan. April 8, 2004) ("[L]itigants cannot shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality, and cannot modify the Federal Rules of Civil Procedure by agreement.") (attached as Ex. N); *Gutter v. E.I. DuPont De Nemours and Co.*, No. 95-2152-CIV-GOLD, 2001 WL 36086590, at *1 (S.D. Fla. Jan. 31, 2001) ("[C]onfidentiality provisions will not be utilized as a shield to obstruct the discovery process.") (attached as Ex. O). The typical course is for the Court to order the production of such documents subject to measures to preserve their confidentiality. *See Wal-Mart*, 2004 WL 769325, at *3 (disclosure of plaintiff's confidential settlement agreement with third party would be subject to protective order already in place); *Koch Indus., Inc. v. Columbia Gas Transmission Corp.*, Civ. A. No. 89-2156, 1990 WL 72789, at *1-2 (E.D. La. May 29, 1990) (compelling discovery of prior settlement agreement between plaintiff and third parties subject to protective order) (attached as Ex. P). Here, a Discovery Confidentiality Order is already in place and provides sufficient protections to render Wyeth's confidentiality objection moot. *See* Doc. No. 26.

For the foregoing reasons, Orchid respectfully requests that the Court order Wyeth to produce the settlement/license agreements sought in Request Nos. 7 and 8 within one week of the Court's ruling on this dispute. Thank you for your consideration of this matter.

Respectfully submitted,

s/ Jason B. Lattimore

Jason B. Lattimore
of LATHAM & WATKINS LLP

Enclosures

cc:     All Counsel of Record via ECF

# Exhibit A

Liza M. Walsh
**CONNELL FOLEY LLP**
85 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 535-0500
Facsimile: (973) 535-9217
*Attorneys for Plaintiff Wyeth*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WYETH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 3:09-cv-03235 |
| | ) | (FLW)(DEA) |
| v. | ) | |
| | ) | |
| ORGENUS PHARMA INC. | ) | **WYETH'S RESPONSES TO** |
| | ) | **ORCHID'S FIRST SET OF** |
| and | ) | **REQUESTS FOR PRODUCTION** |
| | ) | **TO PLAINTIFFS** |
| ORCHID CHEMICALS & | ) | |
| PHARMACEUTICALS LTD., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, Wyeth hereby responds to Orchid's First Set of Requests for Production to

Plaintiffs served by Defendants Orgenus Pharma, Inc. and Orchid Chemicals & Pharmaceuticals

Ltd. (hereinafter, collectively "Orchid") on September 21, 2009 via e-mail transmission.

### GENERAL OBJECTIONS

1.      Wyeth objects to any request to the extent it seeks to impose on Wyeth any

obligation not required by the Federal Rules of Civil Procedure or the local rules of the United

States District Court for the District of New Jersey.

2.      Wyeth objects to Orchid's definition of the term "Venlafaxine Litigations" to the

extent that it encompasses litigation pertaining to any patents other than the patents-in-suit:

United States Patent Nos. 6,274,171 B1; 6,403,120 B1; and 6,419,958 B2.  As used herein, the

term "Litigations regarding the Patents-in-suit" refers to the following United States district court litigations: *Wyeth v. Teva Pharmaceuticals USA, Inc. and Teva Pharmaceutical Industries, Ltd.*, No. 03-1293 (D. N.J.) (hereinafter "Teva litigation"); *Wyeth v. Impax Laboratories, Inc.*, No. 1:06cv222 (D. Del.); *Wyeth v. Anchen USA Pharmaceuticals, Inc.*, No. 8:06cv000386 (C.D. Cal.); *Wyeth v. Lupin Ltd, and Lupin Pharmaceuticals, Inc.*, Civ. No. WDQ-07-632 (D. Md.); *Wyeth v. Osmotica Pharmaceutical Corporation*, No. 7:07cv (E.D.N.C.); *Wyeth v. Mylan Pharmaceuticals Inc.*, No. 1:07-CV-91 (N.D. W. Va.); *Wyeth v. Sandoz, Inc.*, No. 5:07-cv-00234-D (E.D.N.C.); *Wyeth v. Wockhardt Limited,* Case No. CV 07-5166-JVS (ANx) (C.D. Cal.); *Wyeth v. Biovail Corporation, Biovail Laboratories International and Biovail Technologies, Ltd.*, Civ. No. 08-390 (JJF) (D. Del.); *Wyeth v. Apotex Inc. and Apotex Corp.,* Case No.: 08-22308-Civ-MORENO/TORRES (S.D. Fla.); *Wyeth v. Torrent Pharmaceuticals Limited, et. al.,* Civ. No. 1:09-cv-00019-JJF  (D. Del.); and *Wyeth v. Cadila Healthcare Limited and Zydus Pharmaceuticals (USA) Inc.*, Civ. No. 09-239-JJF (D.Del).

     3.     Wyeth maintains the General and Specific Objections it made in response to requests for production and admission, and interrogatories propounded by Defendants in Litigations regarding the Patents-in-Suit and hereby incorporates by reference all of those General and Specific Objections and Responses, including but not limited to the following General Objections.

     4.     Wyeth objects generally to the production of documents and things protected by the attorney-client privilege, work product immunity, or any other applicable privilege.  To the extent that such documents and things not otherwise objectionable are called for by Orchid's requests, they will be identified in a listing of withheld documents which will be prepared in due course and exchanged with Orchid on a mutually agreed upon date.

     5.     An objection based on attorney-client privilege and/or work product immunity should not be construed as a representation that such documents exist or existed.  Such objections indicate only that the requests are of such a scope as to embrace subject matter protected by the attorney-client privilege and/or work product immunity.

6.      Wyeth objects generally to Orchid's document requests to the extent they seek production of documents and things containing both discoverable and non-discoverable or objectionable material.  Wyeth reserves the right to redact any matter which is not called for or with respect to which Wyeth has objected to the request for production.

7.      Wyeth objects to Orchid's instructions to the extent they include within the definition of Wyeth's possession, custody, or control all documents to which Wyeth has any access, however remote.  Thus, Wyeth objects to Orchid's document requests to the extent they seek to require Wyeth to provide any information beyond what is available to Wyeth at present from a reasonable search of its own files at its principal offices and pharmaceutical product research and development facilities in the United States and from reasonable inquiry of its present employees on the grounds that such discovery is irrelevant, unreasonably cumulative, and unduly burdensome.  Subject to those objections, Wyeth will use reasonable diligence to locate responsive documents in its possession, custody, and control based on an examination of those files reasonably expected to yield responsive documents.

8.      As used in these responses, the phrase "all documents," or similar phrases, should be understood to mean those documents Wyeth and its counsel were able to locate using reasonable diligence and judgment concerning the existence and whereabouts of responsive documents.  Such phraseology should not be construed as a representation that each and every document available to Wyeth has been examined in connection with these responses or any production pursuant thereto.

9.      Wyeth's objections and responses are based on the best knowledge and information known to it at this time.  Wyeth's objections and responses are made without prejudice to Wyeth's right to revise or supplement them based on the discovery taken in this case.  Furthermore, Wyeth's objections and responses are based on Wyeth's good-faith interpretation of the individual requests for production and are subject to correction for errors or omission, if any.

3

10.     Wyeth objects to the production of documents in the public domain because the burden of obtaining access to, copying, and production is equal for both parties.  Subject to this General Objection, and to the extent not otherwise objectionable, Wyeth will not seek to exclude from production, responsive public documents within its possession, custody, and control.

11.     A response that documents will be produced should not be construed as a representation that such documents exist or existed.  Such responses indicate only that documents responsive to the request, subject to applicable objections, will be produced if any such documents are found after a reasonable search.

12.     To the extent that Orchid's document requests seek the production of internal work product files from any of Wyeth's counsel, including, but not limited to, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P. and Connell Foley LLP, Wyeth objects to either the production or the listing of those documents on a withheld document list.

13.     Wyeth objects to the production of documents and things subject to the rights of third parties not affiliated with Wyeth.  In addition, Wyeth objects to the production of non-Wyeth documents or information subject to a protective order entered in a litigation other than the above-captioned litigation.

14.     Wyeth objects to Orchid's definition of the term "Wyeth."  This action involves Wyeth and not its present or former divisions, present or former parent, subsidiary, affiliated, or related corporation or any other related entity of Wyeth.  In addition, Wyeth objects to Orchid's definition of "Wyeth" to the extent it includes former directors, officers, employees, agents, representatives, or persons acting on behalf of any of the foregoing entities as potentially including entities outside of Wyeth's possession, custody, or control, or calls for information that may be subject to confidentiality agreements and/or attorney-client privilege. Consequently, in answering Orchid's requests, Wyeth will construe "Wyeth" to mean only those portions of Wyeth involved with the research and development, manufacture, distribution, and/or sale of the venlafaxine hydrochloride extended release product EFFEXOR® XR in the

4

United States.  Wyeth further objects to Orchid's instructions as unduly burdensome to the extent they seek to impose any further limitations or obligations upon Wyeth with respect to the production of documents within Wyeth's possession, custody, or control than those set forth above.

15.     Wyeth objects to Orchid's requests to the extent they call for information (including listing on a withheld document log) or documents generated subsequent to the February 10, 2003 cut-off date observed in the Teva litigation as irrelevant, overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence.  The production or listing on a withheld document log of any document or information generated subsequent to that date should not be construed as a waiver of this objection with respect to any other document or information.

16.     Wyeth objects to the production of documents relating to ongoing clinical trials that are not complete and/or not decoded, analyzed, or reported.  Wyeth further objects to the production of information such as voluminous raw data and data compilations from *in vitro* testing, pre-clinical studies, or clinical trials as unduly burdensome, unreasonably cumulative, unreasonably duplicative, and irrelevant.

17.     Wyeth objects to the production of commercial, financial, regulatory, marketing, patent prosecution and proceedings, legal and other documents to the extent they concern countries other than the United States as unduly burdensome, overly broad, and/or irrelevant to any issue in the suit, and not reasonably calculated to lead to the discovery of admissible evidence.

18.     Wyeth objects to the production of routine manufacturing, production, qualification, quality control, quality assurance, batch records, release records, and other routine testing as overly broad, irrelevant, unduly burdensome, unreasonably cumulative and duplicative, and not reasonably calculated to lead to the discovery of admissible evidence.

19.     The incidental production of any document or information covered by any of Wyeth's General or Specific Objections shall not be construed as a waiver of the objection with respect to any other document or information.

20.     Nothing in these responses should be construed as waiving rights or objections which otherwise might be available to Wyeth, nor should Wyeth's answering any discovery request be deemed an admission of relevancy, materiality, or admissibility in evidence of the discovery requests or the responses thereto.

21.     Although Wyeth objects generally to Orchid's request that documents and things be produced at the offices of Latham & Watkins LLP, Wyeth will forward to the offices of Latham & Watkins LLP copies (TIFF images) of produced documents with the understanding the Latham & Watkins LLP will promptly reimburse Wyeth for the cost of those copies. Nevertheless, Wyeth retains the right to produce documents or things by making them available for inspection and copying by Orchid at Wyeth's or Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.'s facilities.

22.     Wyeth objects to the production of "e-mails and other electronically stored information (including any and all printouts of such information)" and "storage discs or other data records" as overly broad, unreasonably cumulative, and unduly burdensome. Subject to the General and Specific Objections, Wyeth will agree to produce TIFF images of documents produced by Wyeth in the Litigations regarding the Patents-in-Suit that were obtained from searches of Wyeth's relevant electronic systems.

## OBJECTIONS AND RESPONSES

REQUEST NO. 1:     All documents filed in Court by any party in any of the Venlafaxine Litigations, including, but not limited to pleadings, motion papers, briefs, evidence, expert reports, deposition transcripts, hearing transcripts, trial transcripts and exhibits to any of the aforementioned.

### SPECIFIC OBJECTIONS:

Wyeth objects to this request to the extent it seeks information that is publicly available because the burden of obtaining access to, copying, and production of those materials is equal for both parties.

Wyeth also objects to this request to the extent it seeks documents and things subject to the rights of third parties not affiliated with Wyeth.  In addition, Wyeth objects to the production of non-Wyeth documents or information subject to protective orders entered in any litigation other than the above-captioned litigation.

Wyeth further objects to this request as unduly burdensome, overly broad, irrelevant to any issue in this suit, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks the production of pleadings and discovery concerning the witnesses of any defendant from the Litigations regarding the Patents-in-suit, or pleadings and discovery concerning infringement by products other than those at issue in this litigation.  The Litigations regarding the Patents-in-suit involved different parties and products, and information regarding those parties and products is not relevant to this litigation.  Furthermore, those parties have designated the bulk of that information as confidential and subject to the protective orders entered in the Litigations regarding the Patents-in-suit, and it would be unduly burdensome to attempt to redact that information.  Wyeth further objects to this request to the extent it requests all documents concerning any of the Litigations regarding the Patents-in-suit as overly broad,

7

irrelevant to any issue in this lawsuit, and not reasonably calculated to lead to the discovery of admissible evidence.

Wyeth further objects to this request as calling for documents that have no relevance to any claim or defense at issue in this litigation.

**RESPONSE:**

Subject to the General and Specific Objections, Wyeth will produce the following: Wyeth will produce all non-privileged documents produced by Wyeth in response to document requests in the Litigations regarding the Patents-in-suit.  Furthermore, Wyeth will produce Markman briefings and portions of expert reports, expert depositions, and contention interrogatory answers concerning claim construction in the Litigations regarding the Patents-in-suit once the third parties have redacted their confidential information or given Wyeth permission to produce it in unredacted form.  In addition, Wyeth will produce portions of expert reports, expert deposition transcripts, and contention interrogatory answers concerning validity and enforceability in the Litigations regarding the Patents-in-suit once the defending parties have redacted their confidential information or given Wyeth permission to produce it in unredacted form.  Wyeth will also produce the deposition transcripts of Wyeth's fact witnesses and documents marked as exhibits during those fact witness depositions.

REQUEST NO. 2:    All documents served, but not filed, in any of the Venlafaxine Litigations, including but not limited to discovery responses, demonstrative evidence, and expert reports and any exhibits to any of the aforementioned.

**SPECIFIC OBJECTIONS:**

Wyeth objects to this request to the extent it seeks information that is publicly available because the burden of obtaining access to, copying, and production of those materials is equal for both parties.

Wyeth also objects to this request to the extent it seeks documents and things subject to the rights of third parties not affiliated with Wyeth.  In addition, Wyeth objects to the production

8

of non-Wyeth documents or information subject to protective orders entered in any litigation

other than the above-captioned litigation.

Wyeth further objects to this request as unduly burdensome, overly broad, irrelevant to

any issue in this suit, and not reasonably calculated to lead to the discovery of admissible

evidence to the extent it seeks the production of pleadings and discovery concerning the

witnesses of any defendant from the Litigations regarding the Patents-in-suit, or pleadings and

discovery concerning infringement by products other than those at issue in this litigation.  The

Litigations regarding the Patents-in-suit involved different parties and products, and information

regarding those parties and products is not relevant to this present litigation.  Furthermore, those

parties have designated the bulk of this information as confidential and subject to the protective

orders entered in the Litigations regarding the Patents-in-suit, and it would be unduly

burdensome to attempt to redact that information.  Wyeth further objects to this request to the

extent it requests all documents concerning any of the Litigations regarding the Patents-in-suit as

overly broad, irrelevant to any issue in this lawsuit, and not reasonably calculated to lead to the

discovery of admissible evidence.

Wyeth further objects to this request as calling for documents that have no relevance to

any claim or defense at issue in this litigation.

**RESPONSE:**

Subject to the General and Specific Objections, Wyeth will produce the following: Wyeth

will produce all non-privileged documents produced by Wyeth in response to document requests

in the Litigations regarding the Patents-in-suit.  Furthermore, Wyeth will produce Markman

briefings and portions of expert reports, expert depositions, and contention interrogatory answers

concerning claim construction in the Litigations regarding the Patents-in-suit once the third

parties have redacted their confidential information or given Wyeth permission to produce it in

unredacted form.  In addition, Wyeth will produce portions of expert reports, expert deposition

transcripts, and contention interrogatory answers concerning validity and enforceability in the

Litigations regarding the Patents-in-suit once the defending parties have redacted their

confidential information or given Wyeth permission to produce it in unredacted form.  Wyeth

will also produce the deposition transcripts of Wyeth's fact witnesses and documents marked as

exhibits during those fact witness depositions.

REQUEST NO. 3:      To the extent not covered by any of the preceding requests, all deposition
transcripts, including exhibits, of depositions taken by any party in any of the Venlafaxine
Litigations.

   **SPECIFIC OBJECTIONS:**

   Wyeth objects to this request to the extent it seeks information that is publicly available

because the burden of obtaining access to, copying, and production of those materials is equal for

both parties.

   Wyeth also objects to this request to the extent it seeks documents and things subject to

the rights of third parties not affiliated with Wyeth.  In addition, Wyeth objects to the production

of non-Wyeth documents or information subject the protective orders entered in any litigation

other than the above-captioned litigation.

   Wyeth further objects to this request as unduly burdensome, overly broad, irrelevant to

any issue in this suit, and not reasonably calculated to lead to the discovery of admissible

evidence to the extent it seeks the production of pleadings and discovery concerning the

witnesses of any defendant from the Litigations regarding the Patents-in-suit, or pleadings and

discovery concerning infringement by products other than those at issue in this litigation.  The

Litigations regarding the Patents-in-suit involved different parties and products, and information

regarding those parties and products is simply not relevant to this present litigation.

Furthermore, those parties have designated the bulk of that information as confidential and subject to the protective orders entered in the Litigations regarding the Patents-in-suit, and it would be unduly burdensome to attempt to redact that information. Wyeth further objects to this request to the extent it requests <u>all</u> deposition transcripts concerning any of the Litigations regarding the Patents-in-suit as overly broad, irrelevant to any issue in this lawsuit, and not reasonably calculated to lead to the discovery of admissible evidence.

Wyeth further objects to this request as calling for documents that have no relevance to any claim or defense at issue in this litigation.

**RESPONSE:**

Subject to the General and Specific Objections, Wyeth will produce the following: Wyeth will produce all non-privileged documents produced by Wyeth in response to document requests in the Litigations regarding the Patents-in-suit. Furthermore, Wyeth will produce expert depositions concerning claim construction in the Litigations regarding the Patents-in-suit once the third parties have redacted their confidential information or given Wyeth permission to produce it in unredacted form. In addition, Wyeth will produce portions of expert deposition transcripts concerning validity and enforceability in the Litigations regarding the Patents-in-suit once the defending parties have redacted their confidential information or given Wyeth permission to produce it in unredacted form. Wyeth will also produce the deposition transcripts of Wyeth's fact witnesses and documents marked as exhibits during those fact witness depositions.

REQUEST NO. 4:     To the extent not covered by any of the preceding requests, all court transcripts, including hearing transcripts and trial transcripts, in any Venlafaxine Litigations.

**SPECIFIC OBJECTIONS:**

Wyeth objects to this request to the extent it seeks "all court transcripts … in any Venlafaxine Litigation" as overly broad, vague and ambiguous, unduly burdensome, irrelevant to any issue in this suit, and not reasonably calculated to lead to the discovery of admissible evidence. Wyeth objects to this request as seeking information that is publicly available because the burden of obtaining access to, copying, and production of those materials is equal for both parties. Wyeth also objects to this request to the extent it seeks documents and things subject to the rights of third parties not affiliated with Wyeth. In addition, Wyeth objects to the production of non-Wyeth documents or information subject to a protective order entered in a litigation other than the above-captioned litigation. Wyeth further objects to this request as unduly burdensome, overly broad, irrelevant to any issue in the suit, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks the production of pleadings and other documents, including but not limited to, hearing transcripts concerning infringement of products other than those at issue in this litigation and/or third-party confidential information. Wyeth further objects to this request to the extent it seeks documents available to Orchid from the public domain, as unduly burdensome and unreasonable.

**RESPONSE:**

Subject to the General and Specific Objections, Wyeth will produce nonprivileged documents and things previously produced by Wyeth in response to document requests in the Litigations regarding the Patents-in-suit and will identify protected documents associated with those productions on a withheld document log. Those materials will be redacted to the extent

12

they include any material that was designated by another party as confidential and subject to a protective order.

REQUEST NO. 5:    To the extent not covered by any of the preceding requests, all tutorials provided to a Court, including presentations, exhibits and transcripts, in the Venlafaxine Litigations.

**SPECIFIC OBJECTIONS:**

Wyeth objects to this request to the extent it seeks documents and things subject to the rights of third parties not affiliated with Wyeth.  Wyeth further objects to this request as overly broad, vague and ambiguous, irrelevant to any issue in this suit, and not reasonably calculated to lead to the discovery of admissible evidence.  Wyeth objects to this request as seeking information that is publicly available because the burden of obtaining access to, copying, and production of those materials is equal for both parties.  Wyeth further objects to this request as unduly burdensome, overly broad, irrelevant to any issue in this suit, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks information concerning infringement of products other than those at issue in this litigation.  The Litigations regarding the Patents-in-suit involved different parties and products, and information regarding those parties or products is not relevant to the present litigation.  Furthermore, those parties have designated the bulk of their information as confidential and subject to the protective orders in the Litigations regarding the Patents-in-suit, and it would be unduly burdensome to attempt to redact that information.  Moreover, under the protective orders in the Litigations regarding the Patents-in-suit, the third parties, not Wyeth, would have to redact information they designated as confidential.  Wyeth further objects to this request as overly broad, vague, and ambiguous, to the extent it requests information not produced in the Litigations regarding the Patents-in-suit, introduced at a deposition, or filed with the Court.

13

**RESPONSE:**

Subject to the General and Specific Objections above, Wyeth will produce responsive documents to the extent they exist.

REQUEST NO. 6:     To the extent not covered by the preceding requests, any correspondence to the Court in any of the Venlafaxine Litigations.

**SPECIFIC OBJECTIONS:**

Wyeth objects to this request as seeking information that is publicly available because the burden of obtaining access to, copying, and production of those materials is equal for both parties.

Wyeth objects to this request to the extent it seeks documents and things subject to the rights of third parties not affiliated with Wyeth.  Wyeth also objects to the production of non-Wyeth documents or information subject to the protective orders entered in any litigation other than the above-captioned litigation.

Wyeth also objects to this request as unduly burdensome, overly broad, irrelevant to any issue in this litigation, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks "any" correspondence to the Court in any of the Litigations regarding the Patents-in-suit.  Much of the material produced by third parties in other litigations has been marked as either Confidential or Highly Confidential under the Protective Orders in the other litigations; it would be unduly burdensome for Wyeth to attempt to redact that information.

Wyeth further objects to this request as calling for documents that have no relevance to any claim or defense at issue in this litigation.

**RESPONSE:**

Subject to its General and Specific Objections, Wyeth will produce correspondence with the Courts for the Litigations regarding the Patents-in-suit.

14

REQUEST NO. 7:    Copies of any agreements relating to any settlement of any of the Venlafaxine Litigations.

**SPECIFIC OBJECTIONS:**

Wyeth objects to this request as irrelevant to any issue in this suit, and not reasonably calculated to lead to the discovery of admissible evidence.  Wyeth objects to the production of documents and things subject to the rights of third parties not affiliated with Wyeth.  Wyeth further objects to this request as irrelevant to any issue in this suit, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks the production of documents relating to disputes, or the settlement of disputes, concerning infringement by products other than those at issue in this litigation.  Wyeth also objects to this request to the extent it seeks documents relating to settlements, and/or settlement or license agreements as overly broad, irrelevant to any issue in this lawsuit, and not reasonably calculated to lead to the discovery of admissible evidence.

Based on its General and Specific Objections, Wyeth will not produce documents in response to this request.

REQUEST NO. 8:    To the extent not covered by any of the preceding requests, copies of any license agreements relating to the resolution of any of the Venlafaxine Litigations.

**SPECIFIC OBJECTIONS:**

Wyeth objects to this request as irrelevant to any issue in this suit, and not reasonably calculated to lead to the discovery of admissible evidence.  Wyeth objects to the production of documents and things subject to the rights of third parties not affiliated with Wyeth.  Wyeth further objects to this request as irrelevant to any issue in this suit, and not reasonably calculated to lead to the discovery of admissible evidence to the extent it seeks the production of documents relating to disputes, or the settlement of disputes, concerning infringement by products other than

15

those at issue in this litigation.  Wyeth also objects to this request to the extent it seeks documents relating to settlements, and/or settlement or license agreements as overly broad, irrelevant to any issue in this lawsuit, and not reasonably calculated to lead to the discovery of admissible evidence.

Based on its General and Specific Objections, Wyeth will not produce documents in response to this request.

**CERTIFICATE OF SERVICE**

This is to certify that a true and correct copy of **WYETH'S RESPONSES TO ORCHID'S FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFFS** was served by electronic mail upon the following counsel for Defendants:

Jason B. Lattimore, Esq.
jason.lattimore@lw.com
Latham & Watkins LLP
One Newark Center, 16th Floor
Newark, New Jersey 07101
Telephone: (973) 639-1234
Facsimile: (973) 639-7298

Darryl H. Steensma, Esq.
darryl.steensma@lw.com
Kenneth G. Schuler, Esq.
kenneth.schuler@lw.com
Terrence J. Connolly, Esq.
terrence.connolly@lw.com
Latham & Watkins LLP
12636 High Bluff Drive, Suite 400
San Diego, California 92130
Telephone : (858) 523-5400
Facsimile: (858) 523-5450

Dated: October 26, 2009                    _____s/ John L. Marquardt, Jr._____
                                           John L. Marquardt, Jr.
                                           FINNEGAN, HENDERSON, FARABOW,
                                             GARRETT & DUNNER, L.L.P.
                                           901 New York Avenue, N.W.
                                           Washington, D.C. 20001
                                           Telephone: (202) 408-4000
                                           Facsimile: (202) 408-4400

18

# Exhibit B

Darryl H. Steensma
Direct Dial: 858.523.3926
darryl.steensma@lw.com

12636 High Bluff Drive, Suite 400
San Diego, California 92130-2071
Tel: +1.858.523.5400  Fax: +1.858.523.5450
www.lw.com

FIRM / AFFILIATE OFFICES

| Abu Dhabi | Munich |
| Barcelona | New Jersey |
| Brussels | New York |
| Chicago | Orange County |
| Doha | Paris |
| Dubai | Rome |
| Frankfurt | San Diego |
| Hamburg | San Francisco |
| Hong Kong | Shanghai |
| London | Silicon Valley |
| Los Angeles | Singapore |
| Madrid | Tokyo |
| Milan | Washington, D.C. |
| Moscow | |

**By Electronic Mail**

October 30, 2009

Allen M. Sokal, Esq.
Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
E-mail: allen.sokal@finnegan.com

File No. 044496-0029

Re:    Wyeth v Orchid, 3:09-cv-03235-FLW-DEA

Dear Allen:

We write in response to Wyeth's Responses To Orchid's First Set Of Requests For Production.

Wyeth's General Objection 15 objects to producing documents generated subsequent to February 10, 2003. Is Wyeth refusing to produce correspondence with FDA regarding NDA 20-699, documents regarding secondary considerations, and non-privileged litigation documents regarding the Patents-in-suit that were generated subsequent to February 10, 2003? If so, Orchid believes such an objection is improper. Please clarify Wyeth's General Objection 15.

In response to Orchid Request Nos. 1-4, Wyeth agreed (subject to certain objections) to produce all non-privileged documents produced by Wyeth in response to document requests in the Litigations regarding the Patents-in-suit. Orchid purposely omitted such a broad request for documents to facilitate the rapid production of the documents that are responsive to its first set of requests. Please produce all non-privileged documents produced by Wyeth in response to document requests in the Litigations regarding the Patents-in-suit *after* producing the documents responsive to Orchid's requests, and confirm that Wyeth's production of all documents produced in other litigations will not delay the production of the documents responsive to Orchid first set of requests for production.

In response to Orchid Request Nos. 1 and 2, Wyeth also agreed (subject to certain objections) to produce Markman briefings and portions of expert reports, expert depositions, and contention interrogatory answers concerning claim construction, and portions of expert reports, expert depositions transcripts, and contention interrogatory answers concerning validity and enforceability *once the third parties have redacted their confidential information or given Wyeth*

**LATHAM&WATKINS**LLP

*permission to produce it in unredacted form.* Given that we have a protective order that has been agreed to by the parties, we find Wyeth's statement curious. Has Wyeth already obtained such documents with redacted confidential information or permission to produce such documents in unredacted form in other Litigations regarding the Patents-in-suit? Please inform us what the protective orders in the other litigations say about whether Wyeth needs to get approval to produce documents in a litigation. If there is no provision for giving a party such rights please let us know. If there is such a provision, are there time limits built in and, if so, what are they? Finally, is Wyeth refusing to provide responses to Requests For Admission? If so, on what basis is Wyeth refusing to provide responses to Requests For Admission?

Wyeth's response to Orchid's Request No. 4 for all court transcripts is not responsive to the request. Wyeth agreed (subject to certain objections) to produce documents non-privileged documents produced by Wyeth in response to document requests in the Litigations regarding the Patents-in-suit. Such documents, however, are not responsive to the request. Please confirm that Wyeth will produce all court transcripts, including hearing transcripts and trial transcripts, in the Litigations regarding the Patents-in-suit.

In response to Orchid Request Nos. 7 and 8, Wyeth refused to produce settlement and license agreements relating to resolution of any of the Litigations regarding the Patents-in-suit. Wyeth objected to these requests as, among other things, irrelevant to any issue in this suit. Orchid disagrees and believes that responsive documents could be relevant to a number of issues, including secondary considerations of non-obviousness, the propriety of Wyeth's request for injunctive relief, and the reasons that Judge Martini vacated his claim construction ruling in *Wyeth v. Teva Pharmaceuticals*, 2:03-cv-01293. *See, e.g., Iron Grip Barbell Co., Inc. v. USA Sports, Inc.*, 392 F.3d 1317, 1324 (Fed. Cir. 2004) and *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006).

Orchid requests a meet and confer to resolve the issues raised in this letter concerning Wyeth's responses to Orchid's discovery requests. Please provide us with a date and time during the week of November 2nd that you are available for a teleconference.

Sincerely,

Darryl Steensma
of LATHAM & WATKINS LLP

# Exhibit C

# FINNEGAN

FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
WWW.FINNEGAN.COM

ROBERT D. LITOWITZ
202-408-4048
rob.litowitz@finnegan.com

November 4, 2009

Darryl H. Steensma, Esq.                                         *Via E-mail*
Latham Watkins LLP                                    ***Confirmation by First-Class Mail***
12636 High Bluff Drive, Suite 400
San Diego, CA  92130-2071

Re:   *Wyeth v. Orgenus Pharma Inc.*
*and Orchid Chemicals & Pharmaceuticals Ltd.*
Case 3:09-cv-03235-FLW-DEA

Dear Darryl:

We write in response to your October 30, 2009 letter to Allen Sokal regarding Wyeth's responses to Orchid's First Set of Requests for Production.  First, regarding your comment on General Objection 15, Wyeth's document production will include documents regarding secondary considerations of non-obviousness such as documents evidencing the commercial success of Effexor XR®, as well as non-privileged/non-work product litigation documents from prior related litigation.  Correspondence with FDA regarding NDA 20-699 created after February 10, 2003, is not relevant to any issue in this proceeding, and will not be produced.

Regarding the third paragraph of your letter, we do not understand the comments and requests set forth in that paragraph.  To the extent, however, that paragraph is understood, we confirm that Wyeth's production of documents produced in other litigations will not delay the production of documents responsive to Orchid's First Set of Requests for Production.

Regarding the fourth paragraph of your letter that spans pages 1 and 2, Wyeth cannot produce the confidential business information of the defendants in the prior related cases without their express permission.  The protective orders in the other litigations, which are publicly available, do not permit Wyeth to unilaterally produce that information.  To the extent, however, that Wyeth has obtained documents with redacted third-party information or permission to produce such information in other litigations relating to the patents-in-suit, any such documents that are relevant and responsive to Orchid's requests will be produced in this case.  Furthermore, Wyeth is not categorically refusing to produce responses to requests for admission.

Darryl H. Steensma, Esq.
November 4, 2009
Page 2

Regarding the fifth paragraph of your letter, page 2, and subject to our objections, we confirm that to the extent Wyeth already has hearing transcripts from the prior related cases with third-party confidential information redacted, those redacted transcripts will be produced in this case if relevant and responsive to Orchid's requests. Other transcripts not containing confidential business information are publicly available. To the extent we have copies of those publicly-available transcripts, they will be included in our production.

Regarding the sixth paragraph of your letter, page 2, the settlement and license agreements relating to the resolution of the prior related litigations are confidential and are irrelevant to any issue in this suit. Wyeth stands by its objection.

We are available to discuss these issues with you on November 5 after 12:00 p.m. our time, or on November 6 prior to 3:30 p.m. our time.

Sincerely,

Robert D. Litowitz

RDL/jp

# Exhibit D

Westlaw.

Not Reported in F.Supp., 1998 WL 51356 (N.D.Tex.)
**(Cite as: 1998 WL 51356 (N.D.Tex.))**

**H**Only the Westlaw citation is currently available.

United States District Court, N.D. Texas.
DATAPOINT CORPORATION, Plaintiff,
v.
PICTURETEL CORPORATION, Defendant.
**No. Civ.A. 3:93-CV-2381.**

Jan. 23, 1998.

MEMORANDUM OPINION AND ORDER

FITZWATER, J.

**\*1** Defendant PictureTel Corporation ("PictureTel")
has filed a December 4, 1997 renewed motion to
compel, seeking to obtain disclosure of a license
agreement reached as part of a settlement of litigation
between plaintiff Datapoint Corporation ("Data-
point") and non-party NEC America, Inc. ("NEC") in
the United States District Court for the District of
New Jersey. For the reasons that follow, the court
grants the motion.

I

In June 1997 Datapoint and NEC settled litigation
between them in the District of New Jersey, entering
into a final judgment that includes a license agree-
ment. The judgment also contains the following con-
fidentiality provision:

The parties agree that, while each may state that a
settlement has been reached, the settlement terms
including those specified in Articles VII and VIII
shall be kept confidential except that the settlement
terms may be disclosed: a) to any governmental
body or judicial entity having jurisdiction and call-
ing therefor; b) as otherwise may be required by
law and the rules and regulations, pertaining to
such laws; c) to NEC's subsidiaries; or d) to legal
counsel representing either party or any of NEC's
subsidiaries or to certified public accountants re-
tained by either party or any of NEC subsidiaries....

Judgment at ¶ 10G. PictureTel moved this court to
compel production of the agreement. The magistrate
judge denied the motion on the ground that "[t]he
question of the scope and effect of the judgment
should be decided by the court which entered the
judgment." Sept. 16, 1997 Order at 1. PictureTel later
filed a motion to compel in the District of New Jer-
sey. The court denied the motion, but stated:

I am satisfied that if the court in Texas considers
the license to be sufficiently relevant to its pro-
ceedings, it may order it produced pursuant to ¶
10G(a). This court is not intimately involved in the
issues before the Texas court. It is confident that
the Texas court can determine the relevance of the
New Jersey license agreement and order its produc-
tion subject to any appropriate protective orders.

Oct. 7, 1997 Order at 3. PictureTel's instant motion
followed.

II

As an initial matter, the court considers the proce-
dural issues presented. This court defers to a coordi-
nate court to decide issues pertinent to its own judg-
ment and to preside over any proceedings or actions
that would require interpretation or modification of
its judgment. In the present case, PictureTel moved
the District of New Jersey to compel disclosure of the
license agreement. Although that court denied the
motion, it explicitly contemplated that this court may
compel production, subject to appropriate protective
orders.

Datapoint advances the mistaken contention that Pic-
tureTel cannot seek relief from this court that the
New Jersey denied. This argument misunderstands
the New Jersey court's order. The court said in es-
sence that (1) it was not sufficiently familiar with the
Texas case to determine whether the license in the
New Jersey case should be disclosed, but (2) if this
court decided that the license is relevant, it can order
it produced, subject to appropriate protective orders.
In other words, the New Jersey court reached the
common sense conclusion that it should defer to this
court's familiarity with the present litigation to decide
the disclosure issue, rather than to decide the issue
itself. When it denied PictureTel's motion to compel,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1998 WL 51356 (N.D.Tex.)
**(Cite as: 1998 WL 51356 (N.D.Tex.))**

it simply gave effect to the reasoning it had followed. It did not intimate that the license agreement should *not* be produced. Because this court's decision will not "derogate either the New Jersey District Court judgment or its subsequent order denying PictureTel's motion to compel production," as Datapoint maintains, see Datapoint Resp. at 5, the court rejects Datapoint's procedural objection.

**\*2** Datapoint also asserts that this court is powerless to compel production of the license agreement because it lacks jurisdiction over NEC. This objection fails, however, because the New Jersey court-which unquestionably has such jurisdiction over NEC-expressly authorized this tribunal to decide the production issue.

                    III

The court now considers the merits of PictureTel's motion. Datapoint contends that disclosure of the information requested is prohibited because it is irrelevant to the instant proceeding and would be inadmissible under Fed.R.Evid. 408. It reasons that permitting the discovery will have a chilling effect on settlements.

The evidence in question is discoverable pursuant to Fed.R.Civ.P. 26(b)(1), which permits discovery of non-privileged matters that are relevant to the subject matter involved in the pending action. PictureTel does not seek privileged information. The license agreement is subject to a confidentiality provision and can be disclosed pursuant to court order.

The license agreement is relevant to the subject matter of the pending action. The terms of the agreement relate at least to the issues of patent validity and damages. Patentees like Datapoint often use license agreements obtained in settlement of litigation to show the commercial success and nonobviousness of a patent. *See, e .g., American Standard Inc. v. Pfizer Inc., 1988 WL 156152, 8 U.S.P .Q.2d 2019, 2020 (S.D.Ind.1988).* "Such agreements to license allegedly infringing products can be probative evidence of these factors relevant to the validity of a patent." Id. at 2020-21 (citing *Stratoflex, Inc. v. Aeroquip Corp., 713 F.2d 1530, 1539 (Fed.Cir.1983)).* Because PictureTel asserts several invalidity defenses, the license is discoverable in connection with this defense. Additionally, licenses negotiated under the Datapoint pat-

ents are relevant in calculating a reasonable royalty, which is the type of damages Datapoint seeks in this case. *See B & H Mfg., Inc. v. Foster-Forbes Glass Co., 1993 WL 141120, at \*7, 26 U.S.P.Q .2d 1066 (N.D.Ind.1993).*

There is good cause for the court to exercise its discretion and order disclosure of the settlement terms because this information appears reasonably calculated to lead to the discovery of admissible evidence. At a minimum, this evidence could demonstrate patent validity. It is well-settled at common law that evidence regarding patent validity is admissible evidence. *See, e.g., Milgo Electronic Corp. v. United Business Communications Inc., 623 F.2d 645, 656 (10th Cir.1980); B & H Mfg., 1993 WL 141120, at \*7.* Fed .R.Evid. 408 likewise recognizes the admissibility of evidence of settlement communications for purposes other than proving liability for or invalidity of the claim or its amount. Additionally, as the court noted in a January 14, 1998 order granting another motion to compel, the court is not concerned by suggestions that requiring disclosure will chill settlements. Jan. 14, 1998 Order at 4-5.

**\*3** Accordingly, the court grants the motion to compel. The court assumes that the parties, within 20 days of the date this order is filed, can reach agreement concerning the logistics of disclosure and, if necessary, submit a proposed order to ensure the confidential use by the parties of the settlement agreement. If not, an aggrieved party may seek relief from the court, after *fully conferring in good faith* in an attempt to resolve the dispute.

**SO ORDERED.**

N.D.Tex.,1998.
Datapoint Corp. v. Picturetel Corp.
Not Reported in F.Supp., 1998 WL 51356 (N.D.Tex.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit E

Westlaw.

Not Reported in F.Supp., 1997 WL 560131 (E.D.Pa.)
**(Cite as: 1997 WL 560131 (E.D.Pa.))**

C Only the Westlaw citation is currently available.

United States District Court, E.D. Pennsylvania.
KEY PHARMACEUTICALS, INC.
v.
ESI-LEDERLE, INC.
**No. CIV. A. 96-1219.**

Aug. 29, 1997.

Charles B. Blakinger, Hoyle, Morris & Kerr, Phila, PA, Anthony Herman, Covington & Burling, Harris Weinstein, Covington & Burling, Ivan Fong, Covington and Burling, Washington, DC, for Key Pharmaceuticals, Inc., Plaintiff.

Michael T. Scott, Reed, Smith, Shaw & MC Clay, Phila, PA, Paul H. Heller, Kenyon & Kenyon, Deborah A. Somerville, Kenyon & Kenyon, New York, NY, for ESI-Lederle, Inc., Defendant.

*MEMORANDUM ORDER*

RUETER, Magistrate J.

**\*1** The Honorable Jan E. DuBois referred to me for disposition the defendant's Motion to Compel Production of Allegedly Privileged Documents (Document No. 80). The plaintiff has filed a response, and on August 26, 1997, the court heard oral argument on the motion.

At the court's request, the plaintiff submitted to the court, *in camera,* copies of all documents which defendant asserts were improperly withheld in response to discovery requests. Plaintiff has not produced these documents because it has claimed they are protected by the attorney-client privilege and/or the work-product doctrine. For the reasons that follow, the defendant's Motion to Compel is DENIED.

The requirements of the attorney-client privilege and the work product doctrine as they apply to patent cases have been previously discussed at length by this court in *Applied Telematics, Inc. v. Sprint Com-* *munications Company, L.P.,* 1996 WL 539595 (E.D.Pa. Sept.18, 1996). I have carefully reviewed each and every document submitted by the plaintiff to the court and have applied the principles set forth in *Applied Telematics.* I find that all the documents (or the redactions made therein) are protected from discovery by the attorney-client privilege. Additionally, some of the documents are also attorney work-product. I further find that none of the documents are discoverable pursuant to the crime-fraud exception to the attorney-client privilege and work-product doctrine. *See generally, Haines v. Liggett Group, Inc.,* 975 F.2d 81, 84 (3d Cir.1992); *In re Grand Jury Proceeding,* 604 F.2d 798, 802-03 (3d Cir.1979).

*MEMORANDUM OF DECISION*

I. *INTRODUCTION*

Plaintiff, Key Pharmaceuticals, Inc., owns a patent entitled "Controlled Release Potassium Chloride", U.S. Patent No. 4, 863,743 (hereinafter the '743 patent). Since 1986, Key has practiced this patent to produce a 20mEq sustained-release potassium chloride tablet, called K-Dur 20, which is used to treat persons who have potassium deficiency problems. The '743 patent has an expiration date of 2006. K-Dur 20 is the most widely used potassium supplement in the United States today. It has been estimated that as of 1996, the brand has nearly a 40% market share of all new potassium chloride prescriptions.

Plaintiff maintains that the dominance of K-Dur 20 in the market place results from special qualities that other potassium supplements do not possess. For example, patients only have to ingest K-Dur 20 tablets twice a day and do not have the bad taste problems that inhibit compliance with liquid forms of potassium chloride. Moreover, K-Dur 20 tablets dispense into microcapsules when ingested so that intestinal problems are greatly decreased compared to other treatment approaches which use solid forms of potassium chloride.

On or about November 3, 1995, Upsher-Smith Laboratories, Inc., a Minnesota pharmaceutical company, filed an Abbreviated New Drug Application

Not Reported in F.Supp., 1997 WL 560131 (E.D.Pa.)
**(Cite as: 1997 WL 560131 (E.D.Pa.))**

("ANDA") with the Food and Drug Administration ("FDA") seeking approval for commercial sale of a product called Klor-Con M, a 20 mEq extended-release potassium chloride tablet product. On December 15, 1995, plaintiff, Key Pharmaceuticals, Inc., filed an action in the United States District Court for the District of New Jersey, asserting that its '743 patent is infringed by Upsher-Smith's filing of the ANDA for the Klor-Con M tablet. The case was assigned to the Honorable William H. Walls, and docketed at Civil Action No. 95-6281. On or about July 24, 1997, the parties settled this case. The settlement agreement was not filed with the court, nor were the settlement terms placed on the record. On or about July 29, 1997, Judge Walls dismissed the case as settled. On or about March, 1997, Upsher-Smith received approval from the FDA to market its Klor-Con M Tablet. To date, Upsher-Smith has not sold the tablets commercially.

**\*2** On or about December 29, 1995, defendant ESI-Lederle, Inc. filed an ANDA with the FDA, seeking approval for commercial sale of a product called Micro-K 20, a 20 mEq extended-release potassium chloride tablet product. On February 16, 1996, plaintiff, Key Pharmaceuticals, Inc., filed the above-captioned action in this court asserting that its '743 patent is infringed by ESI-Lederle's filing of the ANDA for the Micro-K 20 tablet. The case is assigned to the Honorable Jan E. DuBois. To date, ESI-Lederle, Inc. has not received approval from the FDA to market its Micro-K 20 tablet. Consequently, it has not sold the product commercially.

On July 17, 1997, Judge DuBois referred to me for disposition the defendant's motion to compel discovery related to settlement of the Upsher-Smith case (Document No. 87). Plaintiff filed a memorandum in opposition thereto, and defendant filed a reply memorandum in support of its motion. Counsel presented oral argument on the issues on August 26, 1997.

## II. *DISCUSSION*

In its motion, defendant seeks an order compelling plaintiff to produce any settlement agreement in the case *Key Pharmaceuticals, Inc. v. Upsher-Smith Laboratories,* Civil Action No. 95-6281 (D.N.J .) (the "Upsher Settlement Agreement").[FN1] Defendant claims that plaintiff has exhibited a pattern of asserting its patent against competitors' products which are

clearly non-infringing, and this practice constitutes patent misuse, and renders plaintiff's patent unenforceable. (Amended Answer at ¶ 56; Def.'s Mem. Supp. Mot. at 1.) [FN2] Defendant argues that the Upsher Settlement Agreement is relevant to the issue of patent misuse in two respects. First, defendant contends that the agreement is expected to show that plaintiff settled the litigation against Upsher-Smith on terms "highly favorable to Upsher-Smith, illustrating how the suit against Upsher-Smith was as meritless as the suit against [defendant]." *Id.* at 2. Further, defendant argues that discovery is necessary because the settlement agreement itself may constitute further patent misuse, or an extension of the original patent misuse, if the terms of the Upsher Settlement Agreement further delay the entry of competition in the relevant product market. More specifically, according to 21 U.S.C.A. § 355(j)(4)(B)(iv) (West Supp.1997), defendant and other competitors may be precluded from entering the market until 180 days after (1) Upsher-Smith notifies the Secretary of Health, Education and Welfare that it has commercially marketed its product, or (2) the court in the *Upsher-Smith* litigation decides that plaintiff's patent is invalid or not infringed. Defendant contends that the terms of the Upsher Settlement Agreement may delay the start of this 180 day period, and thereby further delay defendant's entry into the product market.

> FN1. In its motion, defendant also requested drafts of any settlement agreement, documents drafted in anticipation thereof, and a witness to testify pursuant to Fed.R.Civ.P. 30(b)(6). At the oral argument, counsel for defendant stated that these items were requested because defendant did not know at the time the motion was filed whether a final settlement had been reached between the parties in the *Upsher-Smith* case. Since defendant now knows that a settlement agreement was signed in that case, it is willing to withdraw without prejudice its requests for drafts, documents drafted in anticipation of the settlement, and a deposition pursuant to Fed.R.Civ.P. 30(b)(6), and to seek merely a copy of the Upsher Settlement Agreement.

> FN2. "Patent misuse is an application of the equity doctrine of 'unclean hands' in the patent field and serves as a defense for an alleged infringer against a patentee." *National*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 560131 (E.D.Pa.)
(Cite as: 1997 WL 560131 (E.D.Pa.))

*Patent Dev. Corp. v. T.J. Smith & Nephew, Ltd.*, 865 F.2d 353, 356 n. 2 (D.C.Cir.1989).

Plaintiff argues that the motion should be denied because defendant fails to meet the burden of proof required for a discovery request for this type of information. The parties agree that defendant's burden is set forth correctly in *Fidelity Fed. Sav. and Loan Ass'n v. Felicetti*, 148 F.R.D. 532 (E.D.Pa.1993). In that case, the court considered, *inter alia*, "the strong Congressional policy behind Fed.R.Evid. 408 as well as the liberal discovery rules", and concluded that the burden is on the party seeking discovery to make a particularized showing "that the documents relating to the settlement negotiations are relevant and likely to lead to the discovery of admissible evidence." *Id.* at 534. The effect of this heightened requirement is to switch the burden of proof from the party in opposition to the discovery to the party seeking the information. *Id. See also Doe v. Methacton School District*, 164 F.R.D. 175, 176 (E.D.Pa.1995).

*3 "[R]elevancy is the touchstone of any discovery request." *EEOC v. University of Pennsylvania*, 850 F.2d 99, 979 (3d Cir.1988), *aff'd*, 493 U.S. 182, 110 S.Ct. 577, 107 L.Ed.2d 571 (1990). However, Federal Rule of Civil Procedure 26(b)(1) does not demand that the matter sought to be discovered be relevant to the issues in the case, but requires only that the information be "relevant to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1); 8 Charles A. Wright, Arthur R. Miller, & Richard L. Marcus, *Federal Practice and Procedure* § 2008 at 99(1994). Courts should construe the requirement of relevancy "liberally and with common sense, rather than in terms of narrow legalisms." *Id.* at § 2008 at 107. Information that may be inadmissible as evidence at trial still may be discoverable, "if it is relevant to the subject matter of the action and there is a reasonable possibility that the information sought may provide a lead to other evidence that will be admissible." *Id.* at § 2008 at 112-13. Moreover, discovery is not to be limited solely to matters arising prior to the commencement of the action; in certain circumstances, events occurring after the commencement of the action will "plainly be relevant." *Id.* at § 2008 at 105.

Applying the above principles to the defendant's discovery request, the court finds that defendant has met its burden of showing that the settlement agreement

between plaintiff and Upsher-Smith is relevant and likely to lead to the discovery of admissible evidence. Federal Rule of Evidence 408 "is not an absolute ban on the admissibility of evidence that falls within its scope." 23 Charles A. Wright & Kenneth W. Graham, *Federal Practice and Procedure* § 5308 at 237 (1980). Evidence of a settlement agreement between plaintiff and Upsher-Smith Laboratories is inadmissible only "to prove liability for or invalidity of the claim and its amount." Fed.R.Evid. 408. If the settlement agreement is offered for another purpose, it may be admissible. *See* Advisory Committee's Note to Rule 408 ("Since the Rule excludes only when the purpose is proving the validity or invalidity of the claim or its amount, an offer for another purpose is not within the rule").

Clearly, the Upsher Settlement Agreement would be inadmissible to show that plaintiffs' action against Upsher-Smith "was as meritless as the suit against [defendant]."(Def.'s Memo Supp. Mot. at 2). Rule 408 expressly forbids the use of compromise evidence if offered to prove the invalidity of plaintiff's claims against Upsher-Smith and the defendant. If this were the only relevancy argument made to support defendant's discovery request, the court could easily deny it. However, defendant further argues that the settlement agreement itself may constitute further patent misuse, or a continuation of a pattern of patent misuse. Specifically, defendant contends that the terms of the Upsher Settlement Agreement may have intentionally delayed the entry of competition in the relevant product market and violate the federal antitrust laws, and thereby constitute patent misuse. *See Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 668 (Fed.Cir.1986)(an antitrust violation by a patentee constitutes patent misuse). If this were the case, the compromise agreement itself would be illegal and would not be inadmissible under Rule 408. *See Overseas Motors, Inc. v. Import Motors, Ltd.*, 375 F.Supp. 499, 537 and n. 128 (E.D.Mich.1974)(evidence of settlement agreement is admissible if distinct antitrust claim arises from the agreement itself).

*4 Defendant further argues that the Upsher Settlement Agreement may have the effect of delaying its entry into the product market. Defendant points out that, according to 21 U.S.C.A. § 355(j)(4)(B)(iv)(West Supp.1997), defendant and other competitors may be precluded from entering the

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1997 WL 560131 (E.D.Pa.)
**(Cite as: 1997 WL 560131 (E.D.Pa.))**

market until 180 days after (1) Upsher-Smith notifies the Secretary of Health, Education and Welfare that it has commercially marketed its product, or (2) the court in the Upsher-Smith litigation decides that the plaintiff's patent is invalid or not infringed. Since the Upsher-Smith litigation settled before trial, Judge Walls never decided the validity or invalidity of the '743 patent. Thus, defendant argues that the plaintiff may have intentionally delayed the start of this 180 day period, by placing restrictions on when Upsher-Smith may commercially market its product and thereby further delay defendant's entry into the market.[FN3] If this be the case, this agreement may be an illegal restraint on trade and constitute patent misuse. *See generally,* Morton Salt Co. v. G.S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363 (1942); Compton v. Metal Products, Inc., 453 F.2d 38 (4th Cir.1971), *cert. denied.* 406 U.S. 968 (1972).

> FN3. As noted earlier, Upsher-Smith's ANDA was tentatively approved in March 1997, conditioned on the outcome of plaintiff's litigation against Upsher-Smith. Thus, as of the dismissal of the lawsuit, Upsher-Smith was free to market its Klor-Con M tablet, but has not done so to date.

Because the court finds that the above arguments satisfy the defendant's burden under Fed.R.Civ.P. 26(b)(1) of showing the relevance of the Upsher Settlement Agreement to the subject matter of the instant litigation, the court will order that plaintiff produce the settlement agreement. However, to protect the rights of both the plaintiff and Upsher-Smith to keep their settlement agreement confidential, the court will order that plaintiff produce the settlement agreement subject to all the provisions of the protective order entered by the Honorable Jan E. DuBois in this litigation. (Order dated July 3, 1996, Doc. No. 23). Furthermore, the court will not permit further discovery relating to the Upsher Settlement Agreement without a further order of the court.

An appropriate order follows.

### ORDER

AND NOW, this 29th day of August, 1997, in accordance with the court's Memorandum of Decision filed this day, it is hereby ORDERED that

(1) Defendant's Motion to Compel Discovery Related to the Settlement of the Upsher Smith Case (Doc. No. 87) is GRANTED IN PART and DENIED IN PART.

(2) Within ten (10) days of the date of this order, plaintiff shall produce copies of all executed settlement agreements entered into by parties in the case of *Key Pharmaceuticals, Inc. v. Upsher-Smith Laboratories, Inc.,* Civil Action No. 95-6281 (D.N.J.)

(3) Production of the settlement agreements by the plaintiff to the defendant shall be subject to all the provisions of the Protective Order entered by the Honorable Jan E. DuBois on July 3, 1996, (Doc. No. 23).

(4) No further discovery relating to the Upsher-Smith settlement agreements will be permitted, unless ordered by the Court.

E.D.Pa.,1997.
Key Pharmaceuticals, Inc. v. ESI-Lederle, Inc.
Not Reported in F.Supp., 1997 WL 560131 (E.D.Pa.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit F

Westlaw.

Not Reported in F.Supp., 1988 WL 156152 (S.D.Ind.), 8 U.S.P.Q.2d 2019
**(Cite as: 1988 WL 156152 (S.D.Ind.))**

**H**

United States District Court,
S.D. Indiana.

AMERICAN STANDARD, INC., Plaintiff,
v.
PFIZER, INC., and Howmedica, Inc., Defendants.
**MISC. 87-1-73-IP.**

July 8, 1988.

ENTRY

DILLIN, District Judge.

**\*1** This cause is before the Court on objections by third parties, Boehringer Mannheim Corp. and its DePuy Division (hereinafter collectively "Boehringer"), to the Magistrate's order granting a motion by defendants, Pfizer, Inc. and Howmedica, Inc. (hereinafter collectively "Pfizer"), to compel discovery. For the following reasons, the Magistrate's order is affirmed and adopted by the Court.

*Background*

In 1983, plaintiff, American Standard, Inc., filed parallel actions for infringement of its underlined patent number 3,605,123 against Boehringer in the United States District Court for the Northern District of Indiana and against Pfizer in the United States District Court for the District of Delaware. The patent involves orthopedic bone implants. The Indiana suit was settled in February 1987, and American Standard and Boehringer entered into a consent judgment and a settlement license agreement. American Standard has informed Pfizer that it intends to use this agreement at the trial of the Delaware action against Pfizer.

Accordingly, in April 1987, Pfizer sought to discover from Boehringer information about the background of the settlement agreement by way of a deposition subpoena and subpoena duces tecum issued by this Court. After Boehringer objected to the subpoena duces tecum, Pfizer filed a motion to compel discov-

ery in the matter in November 1987. Boehringer responded with a motion for a protective order. The Court referred this dispute to the Magistrate. After a hearing on March 2, 1988, the Magistrate granted Pfizer's motion and issued an order delineating the scope of discovery. Boehringer now objects to the Magistrate's ruling.

*Discussion*

According to 28 U.S.C. § 636(b)(1)(A) and Rule 72(a), Federal Rules of Civil Procedure, a magistrate may hear and rule upon nondispositive pretrial motions referred to him by a district judge. Local Rule M-5 of the United States District Court for the Southern District of Indiana specifically states that "(such motions shall include ... discovery motions pursuant to the Federal Rules of Civil Procedure." Both federal rule 72(a) and local rule M-5 establish that when such a magistrate's ruling is objected to, the standard for judicial review of the magistrate's order is whether it is "clearly erroneous or contrary to law."

Federal Rule of Civil Procedure 26(b)(1) provides that unless otherwise limited, "(Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party...." In ruling on an objection to discovery, a court must balance " 'the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena." ' *Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc.,* 813 F.2d 1207, 1210 (Fed.Cir.1987) (quoting *Heat & Control, Inc. v. Hester Indus., Inc.,* 785 F.2d 1017, 1024 (Fed.Cir.1986)). Moreover, according to the Court of Appeals for the Federal Circuit:

**\*2** Relevance under Rule 26(b)(1) is construed more broadly for discovery than for trial.... A district court whose only connection with a case is supervision of discovery ancillary to an action in another district should be "especially hesitant to pass judgment on what constitutes relevant evidence thereunder." ... Where relevance is in doubt, the rule indicates that the court should be permissive.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1988 WL 156152 (S.D.Ind.), 8 U.S.P.Q.2d 2019
**(Cite as: 1988 WL 156152 (S.D.Ind.))**

*Id.* at 1211-12 (citations omitted).

In its notice of discovery directed to Boehringer, Pfizer listed four requests for documents. Requests 1-3 basically seek information about Boehringer's motivation and reasons for settling with American Standard. Boehringer argues that because Federal Rule of Evidence 408 precludes admission of any of this information at the Delaware trial, the information sought is not relevant and therefore not discoverable.

Initially, the Court notes that relevance is not the same as admissibility. Information that is not admissible is nevertheless discoverable as long as it "appears reasonably calculated to lead to the discovery of admissible evidence." F.R.Civ.P. 26(b)(1).

Second, it is questionable whether, as Boehringer contends, Rule 408 would absolutely bar admission of the settlement agreement at the Delaware trial. As the Magistrate noted, this case does not present the paradigmatic Rule 408 scenario in which a settlement offer and negotiations are sought to be used at trial against the offeror. Here, plaintiff has stated it intends to use at trial a settlement agreement with a nonparty. Moreover, admissibility under Rule 408 depends not only on the nature of the evidence offered, but on the purpose for which it is introduced, and the trial court can exercise its discretion in ruling on admissibility. *See Kennon v. Slipstreamer, Inc.,* 794 F.2d 1067, 1069-70 (5th Cir.1986); *Crues v. KFC Corp.,* 768 F.2d 230, 233-34 (8th Cir.1985) (evidence of settlement admissible where proposed use "violates neither the spirit nor the letter of Rule 408"). Therefore, this Court can neither predict nor mandate how the Delaware court will rule on the admissibility of Boehringer's settlement agreement with American Standard.

Here, defendant Pfizer has been confronted with American Standard's statement that it "does intend to rely at trial on the Settlement And License Agreement entered into by Boehringer Mannheim Corporation." Pfizer contends American Standard is likely to use the agreement to try to show the commercial success and nonobviousness of its patent. Such agreements to license allegedly infringing products can be probative evidence of these factors relevant to the validity of a patent. *See Stratoflex, Inc. v. Aeroquip Corp.,* 713 F.2d 1530, 1539 (Fed.Cir.1983); *Creative*

*Pioneer Products Corp. v. K Mart Corp.,* 5 U.S.P.Q.2d (BNA) 1841, 1843 (S.D.Tex.1987). Pfizer asserts that therefore, to rebut such evidence, it needs information from Boehringer to show that Boehringer decided to settle for reasons other than paying tribute to American Standard's patent. The Court finds the information sought by Pfizer in requests 1-3 is thus relevant to the Delaware action.

**\*3** As the Seventh Circuit has noted, where a nonparty discovery target will not be a trial witness, but trial evidence will concern his activities, the party confronted with such evidence needs to conduct discovery to be able effectively to rebut the evidence at trial. *Deitchman v. E.R. Squibb & Sons, Inc.,* 740 F.2d 556, 561-62 (7th Cir.1984). Considering Pfizer's need for the information from Boehringer, as the Magistrate noted, clearly only Boehringer can explain its motivation for the settlement.

Regarding hardship, the third factor to be balanced under Rule 26(b)(1), Boehringer argues it would be extremely burdensome for it to sort through and produce the vol.ume of documentation requested. However, Pfizer stated at the March 2 hearing that in view of the short time in which the settlement was reached, this may involve a review of documents spanning only a few months. Moreover, also as noted at the hearing, much of this material is likely to be privileged. The Magistrate's order clarifies that Boehringer need not produce privileged documents, but only identify and list them.

In view of these considerations, the Court concludes that the Magistrate's balancing of relevance, need, and hardship with respect to discovery requests 1-3 and his order compelling this discovery and protecting against disclosure of privileged material is not clearly erroneous and should be upheld.

Pfizer's discovery request number 4 seeks information about Boehringer's sales of allegedly infringing products, which Pfizer contends it needs to calculate a royalty rate should American Standard seek to use the Boehringer agreement as evidence of damages. Boehringer asserts its sales data is highly confidential proprietary information which it should not be compelled to reveal to Pfizer, its competitor. Federal Rule of Civil Procedure 26(c) addresses the discoverability of confidential commercial information from nonparties as well as parties and provides that a court may

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp., 1988 WL 156152 (S.D.Ind.), 8 U.S.P.Q.2d 2019
**(Cite as: 1988 WL 156152 (S.D.Ind.))**

order "that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way." F.R.Civ.P. 26(c)(7).

Settlement figures like those between Boehringer and American Standard are not highly probative evidence of damages or a reasonable royalty rate in a patent infringement case. *See Rude v. Westcott, 130 U.S. 152, 164, 9 S.Ct. 463, 468, 32 L.Ed. 888, 894 (1889); Hanson v. Alpine Valley Ski Area, Inc., 718 F.2d 1075, 1078-79* (Fed. Cir.1983). However, the Court, like the Magistrate, must consider Pfizer's defensive posture in this case. If American Standard does use the Boehringer agreement on the issue of damages in the Delaware trial, Pfizer needs at least some information on Boehringer's sales volume in relation to the settlement amount. As Boehringer has in effect admitted, this information is available only from Boehringer.

Furthermore, in a patent infringement action, such data on sales by a nonparty of allegedly infringing items may be discoverable despite asserted confidentiality if the disclosure is properly limited. See *Truswal,* 813 F.2d at 1210-11; *Heat & Control,* 785 F.2d at 1025. According to the Federal Circuit, "The normal and expected reluctance of business firms to disclose sales information ... is in itself an insufficient basis on which to deny discovery of that information under appropriate protection from divulgement to competitors." *Truswal,* 813 F.2d at 1211.

**\*4** Although in *American Standard, Inc. v. Pfizer, Inc.,* 828 F.2d 734 (Fed.Cir.1987), the court affirmed a trial court ruling protecting against discovery of such confidential sales data from a nonparty, the discovery target there was not a party to a settlement agreement that might be used as evidence at trial. in addition, the information sought in *American Standard* was to be used offensively, rather than defensively as here. In the case at hand, given plaintiff's statement that it intends to use the settlement agreement at trial, the Court finds that the sales information sought by Pfizer is "reasonably necessary for a fair opportunity to develop and prepare the case for trial" and "uniquely available" from Boehringer, thus satisfying the criteria for need as defined by the Federal Circuit. *Id.* at 743.

The Court further finds that with respect to request

number 4, the Magistrate's order adequately protects Boehringer's interest in the confidentiality of this information. Discovery is limited to:

> representative documents (i) which will permit Pfizer's attorneys to calculate the effective royalty rate ... and (ii) which refer or relate to Boehringer's sales of its products which are contended to fall within the scope of the Settlement License Agreement and which were provided to or relied on by American Standard and/or Boehringer in the course of negotiating the Settlement License Agreement.

In addition, access to the documents relative to royalty rate calculation is "limited to Pfizer's outside litigation counsel." *See Truswal,* 813 F.2d at 1211 (order limiting disclosure to counsel adequately protects against disclosure of confidential trade information-to competitors). Like the Federal Circuit, this Court "will not assume that counsel would breach the duty of an officer of the court by disclosing the sales information ... to any [Boehringer] competitor in violation of a protective order." *Id.*

Because, with respect to Boehringer's sales data, the Magistrate appropriately balanced the relevance of the information sought and Pfizer's need for it against the potential hardship to Boehringer and Boehringer's interest in confidentiality, the Court finds that the Magistrate's order regarding discovery request number 4 is not clearly erroneous.

For the foregoing reasons, Boehringer's objections to the Magistrate's granting of Pfizer's motion to compel discovery are overruled, and the Magistrate's order defining the scope of discovery is affirmed and ad the Court.

S.D.Ind.,1988.
American Standard, Inc. v. Pfizer, Inc.
Not Reported in F.Supp., 1988 WL 156152 (S.D.Ind.), 8 U.S.P.Q.2d 2019

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit G

Westlaw.

Slip Copy, 2010 WL 903259 (E.D.Tex.)
(Cite as: 2010 WL 903259 (E.D.Tex.))

**H**Only the Westlaw citation is currently available.

United States District Court,
E.D. Texas,
Marshall Division.
DATATREASURY CORPORATION, Plaintiff,
v.
WELLS FARGO & COMPANY, et al., Defendants.
**Civil Action No. 2:06-CV-72 DF.**

March 4, 2010.

Nelson James Roach, David Neil Smith, Derek Tod Gilliland, Harold Wayne Nix, Nix Patterson & Roach LLP, Daingerfield, TX, Adam A. Biggs, Albritton Law Firm, Eric M. Albritton, Albritton Law Firm, Longview, TX, Alexander James Stack, Elizabeth S. Depchand, Sara Carli Zborovski, Shonagh McVean, Timothy H. Gilbert, Gilbert's LLP, Toronto Ontario, Canada, Pro Hac Vice, Andrew Joseph Wright, Anthony Kyle Bruster, Edward K. Chin, Nicole R. Kliewer, Rodney Allyn Cooper, Nix Patterson & Roach, Nida Nadir, Nida Nadir-Attorney at Law, Irving, TX, Arianna Frankl, Jeanpierre J. Giuliano, Matthew L. Kaufman, Seth H. Ostrow, Ostrow Kaufman & Frankl LLP, New York City, NY, Charles Cary Patterson, Louis Brady Paddock, Richard Benjamin King, Nix Patterson & Roach LLP, Texarkana, TX, Elton Joe Kendall, Karl Anthony Rupp, Kendall Law Group, LLP, Dallas, TX, Elyssa S. Lane, Elyssa S. Lane, New York, NY, for Plaintiffs.

Brian John Hurst, Jay Forrest Utley, John G. Flaim, Weldon Barton Rankin, Baker & McKenzie, Thomas M. Melsheimer, Fish & Richardson, Dallas, TX, Charles Dick, James P. Conley, Howard N. Wisnia, Baker & McKenzie, San Diego, CA, Pro Hac Vice, Kevin M. O'Brien, Baker & McKenzie LLP, Washington, DC, Pro Hac Vice, Lance Lee, Young Pickett & Lee, Robert William Weber, Smith Weber LLP, Texarkana, TX, Marcella Ballard, Baker & McKenzie LLP, New York, NY, Pro Hac Vice, for Defendants.

**ORDER**

DAVID FOLSOM, District Judge.

**\*1** This case is set for a "Phase I" trial in March 2010. Before the Court is Defendants' Omnibus Motion in Limine and to Exclude, as well as Plaintiff's response, Defendants' reply, and Plaintiff's sur-reply. Dkt. Nos. 1876, 1896, 1920, & 1939, respectively. The Court entered an order on this motion on February 26, 2010, but the Court reserved final ruling on Defendants' *in limine* item number 6. *See* Dkt. No.1982 at 36-38.

At the February 18, 2010 Initial Pretrial Conference, the Court heard oral argument on this *in limine* item. Plaintiff submitted a recent appellate decision purportedly bearing on the admissibility of litigation-related licenses: *ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860, 2010 WL 396157 (Fed.Cir. Feb.5, 2010). Because *ResQNet* may have changed the legal landscape regarding admissibility of litigation-related licenses, the Court permitted supplemental briefing. Defendants filed a supplemental brief on February 22, 2010. Dkt. No.1961. Plaintiff responded on February 24, 2010. Dkt. No.1973. Defendants replied on February 26, 2010. Dkt. No.1990. The Court heard further oral arguments at the March 4, 2010 Final Pretrial Conference.[FN1]

> FN1. The Court has also reviewed summaries of the licenses-at-issue in a copy of the October 16, 2009 expert report of Plaintiff's damages expert, Mr. Bokhart, regarding U.S. Bank, which Plaintiff submitted to the Court in connection with briefing on various motions to strike expert testimony.

Having considered the original briefing on Defendants' motion *in limine,* the supplemental briefing, and oral argument on both sets of briefing, the Court finds that this *in limine* item should be DENIED.

**I. DISCUSSION**

In their *in limine* item number 6, Defendants move to "preclude Plaintiff from offering evidence of litigation-induced licensing agreements, including any

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 903259 (E.D.Tex.)
(Cite as: 2010 WL 903259 (E.D.Tex.))

related consent decrees and judgments as well as communications related thereto, as evidence of the value of the patents-in-suit, whether pertaining to a 'reasonable royalty' analysis or as alleged 'secondary considerations' of nonobviousness and/or commercial success." Dkt. No. 1876 at 13. Pursuant to Rules 401, 402, 403, and 408, Defendants argue that "Plaintiff should not be permitted to misuse the existence of these litigation-induced and bargained-for settlement agreements ... by arguing that their existence proves that Plaintiff's positions in this case are meritorious." Dkt. No. 1876 at 13.

Defendants argue that *ResQNet* did not directly address admissibility and involved a bench trial, not a jury trial. *See* Dkt. No.1961 at 1. Defendants also urge that ResQNet itself notes concerns about the use of litigation-related licenses. *See id.* at 3. Plaintiff responds that it intends to use the licenses at issue to show non-obviousness [FN2] and to rebut arguments that Plaintiff has failed to mark. Dkt. No.1973 at 1. Also, although Plaintiff suggested at the February 18, 2010 Initial Pretrial Conference that litigation-related licenses may be used to show a reasonable royalty, Plaintiff submits in briefing that it "has no intention of offering the licensing agreement as evidence, or in support, of a reasonably royalty." *Id.* at 1 & 4; *see* Dkt. No.1953 at 65:1-4 ("I think, Your Honor, that the Fed Circuit's recent ResQNet case makes clear that litigation licenses can be the most appropriate means of evaluating the reasonable royalty in that case."). Defendants reply that the court has already excluded Plaintiff's evidence of commercial success and that Defendants are withdrawing any defense on marking grounds. Dkt. No.1990 at 2.

> FN2. Since the filing of Defendants' motion *in limine,* the Court has granted a motion to exclude testimony by Plaintiff's damages expert that licenses are evidence of commercial success for purposes of secondary considerations of non-obviousness. *See* 2/26/2010 Order, Dkt. No.1984. That Order only addressed the expert testimony that Defendants sought to exclude and did not pass on whether Plaintiff could show, through some other means, the required nexus between the licenses and commercial success. The Court also did not pass on whether Plaintiff could show the required nexus between the licenses and other secondary con-

siderations of nonobviousness.

*2 At the March 4, 2010 Final Pretrial Conference, Plaintiff again reversed course, urging that litigation-related licenses should be admissible to show a reasonable royalty. Acknowledging that the licenses at issue were generally for a lesser amount that what Plaintiff intends to seek at trial as a reasonable royalty, Plaintiff argued that the amounts of the licenses should be excluded. Later during the hearing, however, Plaintiff withdrew its request to exclude the amounts of the licenses. Plaintiff also argued that the licenses should be admissible for other purposes, such as secondary considerations of non-obviousness. The issue now presented to the Court is whether the litigation-related licenses (including their amounts) are admissible for essentially all purposes.

In light of *ResQNet,* litigation-related licenses should not be excluded from the March 2010 Phase I trial in the above-captioned case. Although *ResQNet* involved a bench trial, the licenses at issue were considered by that trial court sitting as trier of fact, just as the jury will sit in the above-captioned case. Defendants' concerns about the reliability of litigation-related licenses are better directed to weight, not admissibility. Defendants' *in limine* item number 6 should therefore be DENIED. Defendants (as well as Plaintiff) may nonetheless propose a final jury instruction that gives the jury guidance on applying litigation-related licenses.

Also at the March 4, 2010 Final Pretrial Conference, Defendants argued that if the litigation-related licenses are admitted, Defendants are entitled to discovery on the negotiations surrounding those licenses. The Court agrees. *See Tyco Healthcare Group LP v. E-Z-EM, Inc.,* Civil Action No. 2:07-CV-262, Dkt. No. 383 at 3-4 (E.D.Tex. Mar. 2, 2010) (discussing *ResQNet.com, 594 F.3d 860, 2010 WL 396157, at *11).* Defendants indicated at the Final Pretrial Conference that they can readily identify the discovery that they require. Plaintiff indicated that it can promptly provide the appropriate discovery. The parties should confer regarding the appropriate discovery, and Plaintiff should provide this discovery *within 48 hours of this Order.*

## II. CONCLUSION

Defendants' Omnibus Motion in Limine and to Ex-

Page 3

Slip Copy, 2010 WL 903259 (E.D.Tex.)
**(Cite as: 2010 WL 903259 (E.D.Tex.))**

clude (Dkt. No. 1876) is hereby **DENIED** as to *in limine* item number 6. The parties are hereby OR-DERED to confer regarding the appropriate discovery, and Plaintiff is hereby ORDERED to provide this discovery *within 48 hours of this Order.*

**IT IS SO ORDERED.**

E.D.Tex.,2010.
Datatreasury Corp. v. Wells Fargo & Co.
Slip Copy, 2010 WL 903259 (E.D.Tex.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit H

Jason B. Lattimore
**LATHAM & WATKINS LLP**
One Newark Center, 16th Floor
Newark, NJ 07101-3174
Telephone: +1 973.639.1234
Facsimile: +1 973.639.7298

Attorneys for Defendants Orchid Chemicals &
Pharmaceuticals Ltd. and Orgenus Pharma Inc.

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WYETH,<br><br>   Plaintiff,<br><br>  v.<br><br>ORGENUS PHARMA INC. AND ORCHID CHEMICALS & PHARMACEUTICALS LTD.,<br><br>   Defendants. | Civil Action No. 3:09-cv-03235 (FLW)(DEA)<br><br>*ELECTRONICALLY FILED*<br><br>**ANSWER OF ORGENUS PHARMA INC. AND ORCHID CHEMICALS & PHARMACEUTICALS LTD.**<br><br>**COUNTERCLAIMS OF ORCHID CHEMICALS & PHARMACEUTICALS LTD.** |

## STATEMENT PURSUANT TO L. CIV. R. 10.1

Defendant Orchid Chemicals & Pharmaceuticals Ltd. is a company organized and existing under the laws of India with its principal place of business at Orchid Towers, #313, Valluvar Kottam High Road, Nungambakkam, Chennai – 600 034, Tamil Nadu, India. Defendant Orgenus Pharma Inc. is a corporation incorporated under the laws of the State of New Jersey with its principal place of business at 700 Alexander Park, Suite 104, Princeton, NJ 08540.

1

## ANSWER

Defendants Orchid Chemicals & Pharmaceuticals Ltd. and Orgenus Pharma Inc. (collectively, "Orchid") hereby answer the Complaint of Plaintiff Wyeth ("Wyeth") and counterclaim as follows.  Orchid hereby denies all allegations not otherwise admitted or denied.

### Response to the Parties

1.      Orchid lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 1.  Orchid therefore denies the allegations in paragraph 1.

2.      In response to paragraph 2, Orchid admits that Orchid Chemicals & Pharmaceuticals Ltd. is a company organized and existing under the laws of India with its principal place of business at Orchid Towers, #313, Valluvar Kottam High Road, Nungambakkam, Chennai – 600 034, Tamil Nadu, India.

3.      In response to paragraph 3, Orchid admits that Orgenus Pharma Inc. is a corporation incorporated under the laws of the State of New Jersey with its principal place of business at 700 Alexander Park, Suite 104, Princeton, New Jersey 08540.

4.      In response to paragraph 4, Orchid admits that Orgenus Pharma Inc. is a subsidiary of Orchid Pharmaceuticals Inc., which is itself a wholly-owned subsidiary of Orchid Chemicals & Pharmaceuticals Ltd.  Orchid also admits that Orgenus Pharma Inc. is Orchid Chemicals & Pharmaceuticals Ltd.'s primary business contact in the United States.

5.      Orchid denies the allegations in paragraph 5.

6.      Orchid denies the allegations in paragraph 6.

### Response to Nature of the Action

7.      In response to paragraph 7, Orchid admits that Wyeth alleges that this is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 100 *et. seq.*, and in particular under 35 U.S.C. § 271(e).  Orchid admits that Wyeth alleges that this action relates to Abbreviated New Drug Application ("ANDA") No. 91-123 filed by Orchid with the United States Food and Drug Administration ("FDA") for approval to market Venlafaxine

Hydrocholoride Extended-Release Capsules, 37.5 mg, 75 mg and 150 mg (the "Orchid ANDA" or "ANDA No. 91-123").  Orchid denies any and all liability.

<b><u>Response to Jurisdiction and Venue</u></b>

8.      In response to paragraph 8, Orchid admits that this Court has jurisdiction over the subject matter of the claims against Orchid pursuant to 28 U.S.C. §§ 1331 and 1338(a).  .

9.      In response to paragraph 9, Orchid admits that Orgenus Pharma Inc. has its principal place of business at 700 Alexander Park, Suite 104, Princeton, New Jersey, conducts business in New Jersey, and is incorporated in New Jersey.

10.     Orchid denies the allegations of paragraph 10, except admits that Orgenus Pharma Inc. forwarded a CD of ANDA No. 91-123 to FDA by courier, that ANDA No. 91-123 lists Ms. Diana Wilk / Mr. Satish Srinivasan of Orgenus Pharma Inc. as "US Agent," and that Ms. Diana Wilk signed Form FDA 356h and Form FDA 3674 as "US Agent."

11.     In response to paragraph 11, Orchid admits that this Court has personal jurisdiction over Orgenus Pharma Inc.

12.     Orchid denies the allegation of paragraph 12, except admits that Orchid Chemicals & Pharmaceuticals Ltd. is registered to do business in New Jersey, has appointed Corporation Service Company of West Trenton, New Jersey to accept service of process on its behalf, and has designated Mr. Satish Srinivasan, Orgenus Pharma Inc., to accept service of process in connection with a lawsuit filed with respect to ANDA No. 91-123.

13.     Orchid denies the allegations of paragraph 13, except admits that Orchid Chemicals & Pharmaceuticals Ltd. is in the business of developing, manufacturing, marketing, and selling generic drugs.

14.     In response to paragraph 14, Orchid admits that Orchid Chemicals & Pharmaceuticals Ltd.'s website notes under the heading "Subsidiaries" that Orgenus Pharma Inc. is its primary business contact for the United States and Canada and that this website provides contact information for Orgenus Pharma Inc. and its Executive Vice President for Business Development and Operations, Mr. Satish Srinivasan.

3

15.     Orchid denies the allegations of paragraph 15, except admits that the 2007-08 annual report for Orchid Chemicals & Pharmaceuticals Ltd., available on its website, lists Orgenus Pharma Inc. as a subsidiary of Orchid Pharmaceuticals Inc., which is itself a wholly owned subsidiary of Orchid Chemicals & Pharmaceuticals Ltd. and notes that the nature of Orgenus Pharma Inc.'s business in the United States is "services."

16.     Orchid denies the allegations in paragraph 16.

17.     Orchid denies the allegations in paragraph 17.

18.     Orchid denies the allegations in paragraph 18.

19.     Orchid denies the allegations in paragraph 19.

20.     Orchid denies the allegations in paragraph 20.

21.     Orchid denies the allegations in paragraph 21.

22.     Orchid denies the allegations in paragraph 22.

23.     Orchid denies the allegations in paragraph 23.

24.     Orchid denies the allegations of paragraph 24, except admits that Orgenus Pharma Inc. forwarded a CD of ANDA No. 91-123 to FDA by courier, that ANDA No. 91-123 lists Ms. Diana Wilk / Mr. Satish Srinivasan of Orgenus Pharma Inc. as "US Agent," and that Ms. Diana Wilk signed Form FDA 356h and Form FDA 3674 as "US Agent."

25.     Orchid denies the allegations in paragraph 25.  However, for the purpose of this particular action, Orchid does not contest that Orchid Chemicals & Pharmaceuticals Ltd. is subject to personal jurisdiction in New Jersey.

26.     In response to paragraph 26, Orchid admits that venue is proper in this judicial district under 28 U.S.C. §§ 1391 and 1400(b).

**<u>Response to Background</u>**

27.     Orchid lacks knowledge or information sufficient to form a belief as to the truth or falsity of the allegations in paragraph 27.  Orchid therefore denies the allegations in paragraph 27.

4

28.     Orchid denies the allegations of paragraph 28, except admits that Orchid filed with FDA ANDA No. 91-123 under 21 U.S.C. § 355(j) requesting approval for the commercial manufacture, use, and sale of Venlafaxine HCl Extended-Release Capsules in 37.5 mg, 75 mg, and 150 mg dosage strengths.

29.     In response to paragraph 29, Orchid admits that Orchid Chemicals & Pharmaceuticals Ltd. notified Wyeth by letter dated May 19, 2009 that it had filed ANDA No. 91-123 seeking approval to market Venlafaxine HCl Extended-Release Capsules in 37.5 mg, 75 mg, and 150 mg dosage strengths and that it was providing information to Wyeth pursuant to 21 U.S.C. § 355(j)(2)(B)(ii).  On information and belief, Wyeth received that letter on or about May 21, 2009.

**Response to First Count for Infringement by Orchid Chemicals & Pharmaceuticals Ltd. and Orgenus Pharma Inc. of United States Patent No. 6,274,171 B1**

30.     Orchid repeats and incorporates by reference its responses in paragraphs 1-29.

31.     In response to paragraph 31, Orchid admits that the United States Patent and Trademark Office issued United States Patent No. 6,274,171 B1 ("the '171 patent"), entitled "Extended Release Formulation of Venlafaxine Hydrochloride," on August 14, 2001.  Orchid also admits that FDA has listed the '171 patent in the publication "Approved Drug Products with Therapeutic Equivalence Evaluations," commonly referred to as "The Orange Book" ("The Orange Book"), in connection with EFFEXOR® XR.  Orchid further admits that a copy of the '171 patent is attached as Exhibit A to Wyeth's complaint.  Orchid lacks knowledge or information sufficient to form a belief as to whether Wyeth is the owner by assignment of the '171 patent, and therefore denies this allegation.  Orchid denies the remaining allegations in paragraph 31 and specifically denies that the '171 patent was duly and legally issued.

32.     Orchid denies the allegations of paragraph 32, except admits that Orchid filed ANDA No. 91-123 seeking approval to market the Orchid Venlafaxine HCl Extended-Release Capsules in the United States prior to the expiration of the '171 patent.  Orchid also admits that Orchid filed with FDA, pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) and 21 C.F.R. §

5

314.94(a)(12)(i)(A)(4), a certification alleging that the claims of the '171 patent are invalid, unenforceable, and/or not infringed.

33.    Orchid denies the allegations in paragraph 33.

34.    Orchid denies the allegations in paragraph 34.

35.    Orchid denies the allegations in paragraph 35.

36.    Orchid denies the allegations in paragraph 36.

37.    Orchid denies the allegations in paragraph 37.

38.    Orchid denies the allegations in paragraph 38.

39.    Orchid denies the allegations in paragraph 39.

40.    Orchid denies the allegations in paragraph 40.

**Response to Second Count for Infringement by Orchid Chemicals & Pharmaceuticals Ltd.
and Orchid Pharma Inc. of United States Patent No. 6,403,120 B1**

41.    Orchid repeats and incorporates by reference its responses in paragraphs 1-40.

42.    In response to paragraph 42, Orchid admits that the United States Patent and Trademark Office issued United States Patent No. 6,403,120 B1 ("the '120 patent"), entitled "Extended Release Formulation of Venlafaxine Hydrochloride," on June 11, 2002.  Orchid also admits that FDA has listed the '120 patent in The Orange Book in connection with EFFEXOR® XR.  Orchid further admits that a copy of the '120 patent is attached as Exhibit B to Wyeth's complaint.  Orchid lacks knowledge or information sufficient to form a belief as to whether Wyeth is the owner by assignment of the '120 patent, and therefore denies this allegation. Orchid denies the remaining allegations in paragraph 42 and specifically denies that the '120 patent was duly and legally issued.

43.    Orchid denies the allegations of paragraph 43, except admits that Orchid filed ANDA No. 91-123 seeking approval to market the Orchid Venlafaxine HCl Extended-Release Capsules in the United States prior to the expiration of the '120 patent.  Orchid also admits that Orchid filed with FDA, pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) and 21 C.F.R. §

314.94(a)(12)(i)(A)(4), a certification alleging that the claims of the '120 patent are invalid, unenforceable, and/or not infringed.

44.     Orchid denies the allegations in paragraph 44.

45.     Orchid denies the allegations in paragraph 45.

46.     Orchid denies the allegations in paragraph 46.

47.     Orchid denies the allegations in paragraph 47.

48.     Orchid denies the allegations in paragraph 48.

49.     Orchid denies the allegations in paragraph 49.

50.     Orchid denies the allegations in paragraph 50.

51.     Orchid denies the allegations in paragraph 51.

**Response to Third Count for Infringement by Orchid Chemicals & Pharmaceuticals Ltd. and Orchid Pharma Inc. of United States Patent No. 6,419,958 B2**

52.     Orchid repeats and incorporates by reference its responses in paragraphs 1-51.

53.     In response to paragraph 53, Orchid admits that the United States Patent and Trademark Office issued United States Patent No. 6,419,958 B2 ("the '958 patent"), entitled "Extended Release Formulation of Venlafaxine Hydrochloride," on July 16, 2002. Orchid also admits that FDA has listed the '958 patent in The Orange Book in connection with EFFEXOR® XR. Orchid further admits that a copy of the '958 patent is attached as Exhibit C to Wyeth's complaint. Orchid lacks knowledge or information sufficient to form a belief as to whether Wyeth is the owner by assignment of the '958 patent, and therefore denies this allegation. Orchid denies the remaining allegations in paragraph 53 and specifically denies that the '958 patent was duly and legally issued.

54.     Orchid denies the allegations of paragraph 54, except admits that Orchid filed ANDA No. 91-123 seeking approval to market the Orchid Venlafaxine HCl Extended-Release Capsules in the United States prior to the expiration of the '958 patent. Orchid also admits that Orchid filed with FDA, pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV) and 21 C.F.R. §

7

314.94(a)(12)(i)(A)(4), a certification alleging that the claims of the '958 patent are invalid, unenforceable, and/or not infringed.

    55.    Orchid denies the allegations in paragraph 55.

    56.    Orchid denies the allegations in paragraph 56.

    57.    Orchid denies the allegations in paragraph 57.

    58.    Orchid denies the allegations in paragraph 58.

    59.    Orchid denies the allegations in paragraph 59.

    60.    Orchid denies the allegations in paragraph 60.

    61.    Orchid denies the allegations in paragraph 61.

    62.    Orchid denies the allegations in paragraph 62.

**Response to Fourth Count for Infringement by Orgenus Pharma Inc. of United States Patent Nos. 6,274,171 B1, 6,403,120 B1 and 6,419,958 B2**

    63.    Orchid repeats and incorporates by reference its responses in paragraphs 1-62.

    64.    Orchid denies the allegations of paragraph 64, except admits that Orgenus Pharma Inc. forwarded a CD of ANDA No. 91-123 to FDA by courier, that ANDA No. 91-123 lists Ms. Diana Wilk / Mr. Satish Srinivasan of Orgenus Pharma Inc. as "US Agent," and that Ms. Diana Wilk signed Form FDA 356h and Form FDA 3674 as "US Agent."

    65.    Orchid denies the allegations in paragraph 65.

    66.    Orchid denies the allegations in paragraph 66.

**Response to Fifth Count For Infringement by Orchid Chemicals & Pharmaceuticals of United States Patent Nos. 6,274,171 B1, 6,403,120 B1 and 6,419,958 B2**

    67.    Orchid repeats and incorporates by reference its responses in paragraphs 1-66.

    68.    Orchid denies the allegations of paragraph 68, except admits that Orchid Chemicals & Pharmaceuticals Ltd. filed ANDA No. 91-123 with FDA and that it was aware of the '171, '120, and '958 patents at the time.

    69.    Orchid denies the allegations in paragraph 69.

    70.    Orchid denies the allegations in paragraph 70.

### Response to Prayer for Relief

Orchid denies that Wyeth is entitled to any of the relief that it seeks in the prayer.

### AFFIRMATIVE DEFENSES

Orchid alleges and asserts the following affirmative defenses in response to the allegations in Wyeth's Complaint:

### First Affirmative Defense

#### Invalidity of the '171 Patent

71.     Each claim of the '171 patent is invalid for failure to meet one or more of the requirements of Title 35, United States Code, including, *inter alia*, §§ 101, 102, 103, 112, and/or for double patenting.

### Second Affirmative Defense

#### Invalidity of the '120 Patent

72.     Each claim of the '120 patent is invalid for failure to meet one or more of the requirements of Title 35, United States Code, including, *inter alia*, §§ 101, 102, 103, 112, and/or for double patenting.

### Third Affirmative Defense

#### Invalidity of the '958 Patent

73.     Each claim of the '958 patent is invalid for failure to meet one or more of the requirements of Title 35, United States Code, including, *inter alia*, §§ 101, 102, 103, 112, and/or for double patenting.

### Fourth Affirmative Defense

#### Non-Infringement of the '171 Patent

74.     The commercial manufacture, use, offer for sale, sale or importation of the product described in ANDA No. 91-123 does not and will not infringe (either literally or under the doctrine of equivalents), directly or indirectly (either by inducement or contributorily), any claim of the '171 patent.  For this reason, the submission of ANDA No. 91-123 to the FDA was not an act of infringement under 35 U.S.C. § 271(e).

9

## Fifth Affirmative Defense

### Non-Infringement of the '120 Patent

75.     The commercial manufacture, use, offer for sale, sale or importation of the product described in ANDA No. 91-123 does not and will not infringe (either literally or under the doctrine of equivalents), directly or indirectly (either by inducement or contributorily), any claim of the '120 patent.  For this reason, the submission of ANDA No. 91-123 to the FDA was not an act of infringement under 35 U.S.C. § 271(e).

## Sixth Affirmative Defense

### Non-Infringement of the '958 Patent

76.     The commercial manufacture, use, offer for sale, sale or importation of the product described in ANDA No. 91-123 does not and will not infringe (either literally or under the doctrine of equivalents), directly or indirectly (either by inducement or contributorily), any claim of the '958 patent.  For this reason, the submission of ANDA No. 91-123 to the FDA was not an act of infringement under 35 U.S.C. § 271(e).

## Seventh Affirmative Defense

### Unenforceability of the '171 Patent

77.     The '171 patent is unenforceable due to inequitable conduct before the United States Patent and Trademark Office for the reasons set forth in paragraphs 1-98 of the counterclaims below, and incorporated herein by reference.

## Eighth Affirmative Defense

### Unenforceability of the '120 Patent

78.     The '120 patent is unenforceable due to inequitable conduct before the United States Patent and Trademark Office for the reasons set forth in paragraphs 1-98 of the counterclaims below, and incorporated herein by reference.

10

### Ninth Affirmative Defense

### Unenforceability of the '958 Patent

79.     The '958 patent is unenforceable due to inequitable conduct before the United

States Patent and Trademark Office for the reasons set forth in paragraphs 1-98 of the

counterclaims below, and incorporated herein by reference.

### COUNTERCLAIMS

Defendant/Counterclaimant Orchid Chemicals & Pharmaceuticals Ltd.

("Counterclaimant") brings the following Counterclaims against Plaintiff/Counterdefendant

Wyeth ("Counterdefendant").

### The Parties

1.     Counterclaimant Orchid Chemicals & Pharmaceuticals Ltd. is a company

organized and existing under the laws of India with its principal place of business at Orchid

Towers, #313, Valluvar Kottam High Road, Nungambakkam, Chennai – 600 034, Tamil Nadu,

India.

2.     On information and belief, Counterdefendant Wyeth is a corporation

incorporated under the laws of the State of Delaware with its principal place of business at Five

Giralda Farms, Madison, New Jersey 07940.

### Nature of the Action

3.     This is an action for a declaration of patent noninfringement, invalidity and

unenforceability arising under the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, and the

patent laws of the United States, 35 U.S.C. § 1 *et seq.*

### Jurisdiction and Venue

4.     This Court has jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§

1331, 1338(a), 2201 and 2202.

5.     This Court has personal jurisdiction over Wyeth because, *inter alia*, Wyeth has

submitted to the jurisdiction of this Court and, on information and belief, Wyeth has its

principal place of business at Five Giralda Farms, Madison, New Jersey 07940.

11

6.  Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400, as well as Counterdefendant's choice of forum.

7.  Wyeth has created an actual controversy between itself and Orchid through its listing of the '171, '120, and '958 patents in the Orange Book, as well as by virtue of its allegations that Orchid's submission of ANDA No. 91-123 to the FDA constituted an act of infringement under 35 U.S.C. § 271(e) with regard to one or more claims of the '171, '120, and '958 patents.

## The Patents and Related Drug Product

8.  Pursuant to 21 U.S.C. § 355(j), the Federal Food, Drug and Cosmetic Act ("FDCA") authorizes a generic drug company to file an ANDA with FDA for approval of a generic drug product that has the same active ingredient as, and is bioequivalent to, a drug product that FDA has already approved pursuant to an NDA.

9.  Pursuant to 21 U.S.C. § 355(b), the FDCA requires NDA holders to submit to FDA the patent numbers and expiration dates of any patent that claims the drug or a method of using the drug for which an NDA is filed.  FDA then lists those patents in The Orange Book.

10.  Pursuant to 21 U.S.C. § 355(j)(2)(A)(vii)(IV), if a generic drug company seeks approval to market a generic drug product prior to the expiration of a patent listed in the Orange Book, the generic drug company is required by law to include a certification in its ANDA that the patent is invalid, unenforceable, or will not be infringed by the generic drug product ("Paragraph IV Certification").

11.  Pursuant to 21 U.S.C. § 355(j)(2)(B), if the generic drug company includes a Paragraph IV Certification in its ANDA, the generic drug company must send the NDA holder and the patent owner notice of that certification, including a detailed statement of the factual and legal basis for the generic drug company's opinion that the patent is invalid, unenforceable or will not be infringed ("Notice Letter").

12.  Pursuant to 21 U.S.C. § 355(j)(5)(B)(iii), if a suit for patent infringement is brought within 45 days of receiving the Notice Letter, FDA generally may not grant final

12

approval for the generic drug company's ANDA for 30 months or until resolution of the patent infringement action.

13.    On information and belief, Wyeth is the holder of NDA No. 20-699 for an extended release dosage form containing venlafaxine hydrochloride. On information and belief, the trade name of Wyeth's venlafaxine hydrochloride is EFFEXOR® XR.

14.    On information and belief, Wyeth is the owner of United States Patent No. 6,274,171 ("the '171 patent"), United States Patent No. 6,403,120 ("the 120 patent"), and United States Patent No. 6,419,958 ("the '958 patent"). Copies of the '171, '120, and '958 patents are attached respectively as Exhibits A, B and C to Wyeth's Complaint.

15.    On information and belief, Wyeth requested that FDA list the '171, '120, and '958 patents in The Orange Book for EFFEXOR® XR, NDA No. 20-699.

16.    Orchid Chemicals & Pharmaceuticals Ltd. filed ANDA No. 91-123 with FDA seeking approval to engage in the commercial manufacture, use, importation, offer for sale, and/or sale of the venlafaxine extended release product described in its ANDA prior to the expiration of the '171, '958, and '120 patents. Orchid Chemicals & Pharmaceuticals Ltd. included in ANDA No. 91-123 a Paragraph IV Certification stating that, in the opinion of Orchid Chemicals & Pharmaceuticals Ltd., and to the best of its knowledge, the '171, '958, and '120 patents are invalid, unenforceable, or will not be infringed by the commercial manufacture, use, importation, offer for sale, or sale of the venlafaxine extended release product described in its ANDA.

17.    By letter dated May 19, 2009, Orchid Chemicals & Pharmaceuticals Ltd. sent Wyeth a Notice Letter that included a detailed statement of the factual and legal basis for Orchid Chemicals & Pharmaceuticals Ltd.'s opinion that its venlafaxine ANDA product would not infringe any valid and enforceable claim of the '171, '958, and '120 patents. Pursuant to 21 U.S.C. § 355(j)(5)(C), the Notice Letter was accompanied by an Offer of Confidential Access to ANDA No. 91-123. On or about May 21, 2009, Wyeth received the Notice Letter.

18.     On or about July 2, 2009, Wyeth filed a Complaint in this action against Orchid Chemicals & Pharmaceuticals Ltd. and Orgenus Pharma Inc. alleging infringement of the '171, '958, and '120 patents. Wyeth asserted in its Complaint that the filing of ANDA No. 91-123 was an act of infringement of the '171, '958, and '120 patents under 35 U.S.C. § 271(e)(2). Wyeth also asserted in its Complaint that the commercial manufacture, use, offer for sale, sale, or importation of the product described in ANDA No. 91-123 would infringe one or more claims of the '171, '958, and '120 patents under 35 U.S.C. § 271.

19.     Wyeth's assertion against Orchid of claims of infringement of the '171, '120, and '958 patents after being advised by Orchid Chemicals & Pharmaceuticals Ltd. in its Notice Letter that there is no basis for those claims renders the Counterclaimant's case exceptional within the meaning of 35 U.S.C. § 285.

20.     Orchid Chemicals & Pharmaceuticals Ltd. has no adequate remedy at law. The actions and assertions made by Wyeth with respect to the '171, '958, and '120 patents have caused and will continue to cause irreparable injury to the rights of Orchid Chemicals & Pharmaceuticals Ltd.

### Prosecution of Wyeth's Patents

### Wyeth's Upton Patent

21.     On January 30, 1995, American Home Products Corporation (now Wyeth via a name change; hereinafter simply referred to as Wyeth) filed patent application No. 08/380,903, that disclosed the administration of venlafaxine as a sustained oral administration form or time-release form. ("the Upton application").

22.     The Upton application issued as U.S. Patent No. 5,506,270 ("the Upton patent") on April 9, 1996.

### The '137 Parent Application

23.     On March 20, 1997, Wyeth filed patent application No. 08/821,137 (the "'137 parent application").

14

24. Deborah M. Sherman was named as the sole inventor on the '137 parent application.

25. At least the following Wyeth attorneys were involved in the prosecution of the '137 parent application: Ronald W. Alice and Robert F. Boswell.

26. Claims 1, 9, and 10 of the '137 parent application respectively read as follows:

1. An encapsulated, extended release formulation of venlafaxine hydrochloride comprising a hard gelatin capsule containing a therapeutically effective amount of spheroids comprised of venlafaxine hydrochloride, microcrystalline cellulose and hydroxypropyl methycellulose coated with ethyl cellulose and hydroxypropylmethylcellulose.

9. A method for providing a therapeutic blood plasma concentration of venlafaxine over a twenty four hour period with diminished incidences of nausea and emesis which comprises administering orally to a patient in need thereof, an encapsulated, extended release formulation that provides a peak blood plasma level of venlafaxine in from about four to about eight hours, said formulation containing venlafaxine hydrochloride as the active ingredient.

10. A method for eliminating the troughs and peaks of drug concentration in a patients blood plasma attending the therapeutic metabolism of plural daily doses of which comprises administering orally to a patient in need thereof, an encapsulated, extended release formulation that provides a peak blood plasma level of venlafaxine in from about four to about eight hours, said formulation containing venlafaxine hydrochloride as the active ingredient.

27. On July 30, 1997, the examiner of the '137 parent application, Examiner Amy Hulina, cited Upton U.S. Patent No. 5,506,270; Wong U.S. Patent No. 5,532,244; Husbands U.S. Patent No. 5,530,013; Husbands U.S. Patent No. 4,535,186; and Husbands U.S. Patent No. 4,761,501 on Form PTO-892.

28. The five patents cited by Examiner Hulina on the July 30, 1997 Form PTO-892 were material to the patentability of the pending claims in the '137 parent application.

29. On July 30, 1997, Robert F. Boswell of Wyeth conducted a telephonic interview with Examiner Hulina.

15

30.     During the interview, Robert F. Boswell of Wyeth:

> Agreed to amend claims 9 and 10 to depend from claim 1 to avoid
> rejection over Upton which discloses extended release venlafaxine
> at col. 5, lines 25-27.

31.     In response to the applicant's agreement, Examiner Hulina issued a Notice of

Allowability, which included an Examiner's Amendment that made claims 9 and 10 of the '137

parent application dependent upon claim 1.

32.     Robert F. Boswell of Wyeth authorized the examiner's amendment in the

telephone interview with the examiner on July 30, 1997.

33.     Examiner Hulina provided the following statement of reason for allowance:

> The prior art does not teach or suggest the specific extended
> release claim formulation according to claim 1.

34.     Wyeth permitted the '137 parent application to go abandoned by not paying the

issue fee that was due on November 5, 1997.

## The '328 Application

35.     On November 5, 1997, Wyeth filed continuation-in-part application No.

08/964,328 ("the '328 application").

36.     Deborah M. Sherman, John C. Clark and John U. Lamer were named joint

inventors on the '328 application.

37.     At least the following Wyeth attorneys were involved in the prosecution of the

'328 application: Ronald W. Alice, Robert F. Boswell, Steven R. Eck, and Arthur G. Seifert.

38.     The '328 application was assigned to Examiner James Spear.

39.     The '328 application included the following independent method claims:

> 13.     A method for providing a therapeutic blood plasma concentration
> of venlafaxine over a twenty four hour period with diminished incidences
> of nausea and emesis which comprises administering orally to a patient in
> need thereof, an encapsulated, extended release formulation that provides
> a peak blood plasma level of venlafaxine in from about four to about eight
> hours, said formulation containing venlafaxine hydrochloride as the active
> ingredient.

16

14.     A method for eliminating the troughs and peaks of drug concentration in a patient's blood plasma attending the therapeutic metabolism of plural daily doses of venlafaxine hydrochloride which comprises administering orally to a patient in need thereof, an encapsulated, extended release formulation that provides a peak blood plasma level of venlafaxine in from about four to about eight hours, said formulation containing venlafaxine hydrochloride as the active ingredient.

40.     Claim 13 of the '328 application was identical to claim 9 of the '137 parent application, prior to its amendment "to avoid rejection over Upton."

41.     Claim 14 of the '328 application was substantially similar to claim 10 of the '137 parent application, prior to its amendment "to avoid rejection over Upton."

42.     At least Deborah M. Sherman, John C. Clark, John U. Lamer, Ronald W. Alice, Robert F. Boswell, Steven R. Eck, and Arthur G. Seifert failed to disclose to the new examiner (Examiner James Spear) the earlier examiner's (Examiner Amy Hulina's) requirement for an amendment of the identical and substantially similar claims "to avoid rejection over Upton" and the fact that Wyeth had acquiesced to Examiner Hulia's requirement and agreed to narrow the scope of the identical and substantially similar claims in order "to avoid rejection over Upton."

43.     The information withheld by the named inventors and/or prosecuting attorneys was material to the patentability of the pending claims.

44.     On information and belief, the named inventors and/or prosecuting attorneys withheld such material information from the examiner in order to prosecute claims substantially similar to the previously rejected claims and did so with an intent to mislead or deceive the USPTO.

45.     Wyeth permitted the '328 application to go abandoned by failing to respond to an Office Action by January 21, 2000.

### The '171 Patent

46.     On January 20, 2000, Wyeth filed Application No. 09/488,629 ("the '629 application") as a continuation-in-part application of the '328 application.

17

47.     Deborah M. Sherman, John C. Clark, John U. Lamer and Stephen A. White were named joint inventors on the '629 application.

48.     At least the following Wyeth attorneys were involved in the prosecution of the '328 application: Egon E. Berg, Rebecca R. Barrett, and Steven R. Eck.

49.     The '629 application was assigned to Examiner James Spear.

50.     The '629 application included the following independent claims:

> 21.     A method for providing a therapeutic blood plasma concentration of venlafaxine over a twenty four hour period with diminished incidences of nausea and emesis which comprises administering orally to a patient in need thereof, an encapsulated, extended release formulation that provides a peak blood plasma level of venlafaxine in from about four to about eight hours, said formulation containing venlafaxine hydrochloride as the active ingredient.

> 22.     A method for eliminating the troughs and peaks of drug concentration in a patients blood plasma attending the therapeutic metabolism of plural daily doses of venlafaxine hydrochloride which comprises administering orally to a patient in need thereof, an encapsulated, extended release formulation that provides a peak blood plasma level of venlafaxine in from about four to about eight hours, said formulation containing venlafaxine hydrochloride as the active ingredient.

51.     Claim 21 of the '629 application was identical to claim 9 of the '137 parent application, prior to its amendment "to avoid rejection over Upton."

52.     Claim 22 of the '629 application was substantially similar to claim 10 of the '137 parent application, prior to its amendment "to avoid rejection over Upton."

53.     During prosecution, Wyeth added the following new independent claims:

> 23.     A method for providing a therapeutic blood plasma concentration of venlafaxine over a twenty-four hour period with diminished incidence of nausea and emesis which comprises administering orally to a patient in need thereof, an encapsulated extended release formulation that provides a peak blood plasma level of venlafaxine in from about 5 to about 8 hours, said formulation containing venlafaxine hydrochloride as the active ingredient.

> 24.     A method for providing a therapeutic blood plasma concentration of venlafaxine over a twenty-four hour period with diminished incidence of nausea and emesis which comprises administering orally to a patient in need thereof, an encapsulated extended release formulation that provides a

18

peak blood plasma level of venlafaxine in about 6 hours, said formulation containing venlafaxine hydrochloride as the active ingredient.

25.    A method for eliminating the troughs and peaks of drug concentration in a patient's blood plasma attending the therapeutic metabolism of plural daily doses o[f] venlafaxine hydrochloride which comprises administering orally to a patient in need thereof, an encapsulated, extended release formulation that provides a peak blood plasma level of venlafaxine in from about 5 to about 8 hours, said formulation containing venlafaxine hydrochloride as the active ingredient.

26.    A method for eliminating the troughs and peaks of drug concentration in a patient s blood plasma attending the therapeutic metabolism f plural daily doses o[f] venlafaxine hydrochloride which comprises administering orally to a patient in need thereof, an encapsulated, extended release formulation that provides a peak blood plasma level of venlafaxine in about 6 hours, said formulation containing venlafaxine hydrochloride as the active ingredient.

54.    Claims 23-26 of the '629 application were substantially similar to original claims 9 and 10 of the '137 parent application, prior to their amendment "to avoid rejection over Upton."

55.    During prosecution of the '629 application, at least Deborah M. Sherman, John C. Clark, John U. Lamer, Stephen A. White, Egon E. Berg, Rebecca R. Barrett, and Steven R. Eck failed to disclose to the new examiner (Examiner James Spear) the earlier examiner's (Examiner Amy Hulina's) requirement for an amendment of the identical and substantially similar claims "to avoid rejection over Upton" and the fact that Wyeth had acquiesced to Examiner Hulia's requirement and agreed to narrow the scope of the identical and substantially similar claims in order "to avoid rejection over Upton."

56.    The information withheld by the named inventors and/or prosecuting attorneys was material to the patentability of the pending claims.

57.    On information and belief, the named inventors and/or prosecuting attorneys withheld such material information from the examiner in order to prosecute claims substantially similar to the previously rejected claims and did so with an intent to mislead or deceive the USPTO.

58.    The '171 patent issued from the '629 application on August 14, 2001.

19

## The '958 Patent

59.    On June 19, 2001, Wyeth filed patent application n No. 09/884,412 ("the '412 application") and asserted that it was properly designated as a "divisional" application of the '629 application.

60.    Deborah M. Sherman, John C. Clark, John U. Lamer, and Stephen A. White were named joint inventors on the '412 application.

61.    At least the following Wyeth attorneys were involved in the prosecution of the '412 application: Rebecca R. Barrett and Egon E. Berg.

62.    The '412 application was assigned to Examiner James Spear.

63.    The '412 application included the following claims:

> 23.    A method for providing a therapeutic blood plasma concentration of venlafaxine over a twenty-four hour period with diminished incidence of nausea and emesis which comprises administering orally to a patient in need thereof, an extended release formulation that provides a peak blood plasma level of venlafaxine in from about 4 to about 8 hours, said formulation containing venlafaxine hydrochloride as the active ingredient.

> 24.    A method for eliminating the troughs and peaks of drug concentration in a patient's blood plasma attending the therapeutic metabolism of plural daily doses of venlafaxine hydrochloride which comprises administering orally to a patient in need thereof, extended release formulation that provides a peak blood plasma level of venlafaxine in from about 4 to about 8 hours, said formulation containing venlafaxine hydrochloride as the active ingredient.

64.    Claims 23 and 24 of the '412 application are substantially similar to original claims 9 and 10 of the '137 parent application, prior to their amendment "to avoid rejection over Upton."

65.    During prosecution, Wyeth added the following claims to the '412 application:

> 25.    A method for providing a therapeutic drug plasma concentration of venlafaxine over a twenty-four hour period with diminished incidence of nausea and emesis which comprises administering orally to a patient in need thereof, an extended release formulation that provides a peak blood plasma level of venlafaxine in from about 5 to about 8 hours, said formulation containing venlafaxine hydrochloride as the active ingredient.

20

26.     A method for providing a therapeutic drug plasma concentration of venlafaxine over a twenty-four hour period with diminished incidence of nausea and emesis which comprises administering orally to a patient in need thereof, an extended release formulation that provides a peak blood plasma level of venlafaxine in about 6 hours, said formulation containing venlafaxine hydrochloride as the active ingredient.

27.     A method for eliminating the troughs and peaks of drug concentration in a patient's blood plasma attending the therapeutic metabolism of plural daily doses of venlafaxine hydrochloride which comprises administering orally to a patient in need thereof, an extended release formulation that provides a peak blood plasma level of venlafaxine in from about 5 to about 8 hours, said formulation containing venlafaxine hydrochloride as the active ingredient.

28.     A method for eliminating the troughs and peaks of drug concentration in a patient's blood plasma attending the therapeutic metabolism of plural daily doses of venlafaxine hydrochloride which comprises administering orally to a patient in need thereof, an extended release formulation that provides a peak blood plasma level of venlafaxine in about 6 hours, said formulation containing venlafaxine hydrochloride as the active ingredient.

66.     Claims 25-28 of the '412 application were substantially similar to original claims 9 and 10 of the '137 parent application, prior to their amendment "to avoid rejection over Upton."

67.     During prosecution of the '412 application, at least Deborah M. Sherman, John C. Clark, John U. Lamer, Stephen A. White, Rebecca R. Barrett, and Egon E. Berg failed to disclose to the new examiner (Examiner James Spear) the earlier examiner's (Examiner Amy Hulina's) requirement for an amendment of the identical and substantially similar claims "to avoid rejection over Upton" and the fact that Wyeth had acquiesced to Examiner Hulia's requirement and agreed to narrow the scope of the identical and substantially similar claims in order "to avoid rejection over Upton."

68.     The information withheld by the named inventors and/or prosecuting attorneys was material to the patentability of the pending claims.

69.     On information and belief, the named inventors and/or prosecuting attorneys withheld such material information from the examiner in order to prosecute claims substantially

21

similar to the previously rejected claims and did so with an intent to mislead or deceive the USPTO.

70.    The '958 patent issued from the '412 application on July 16, 2002.

### The '120 Patent

71.    On September 12, 2001, Wyeth filed patent application No. 09/950,965 ("the '965 application") as a continuation application of the '412 application.

72.    Deborah M. Sherman, John C. Clark, John U. Lamer, and Stephen A. White were named joint inventors on the '965 application.

73.    At least the following Wyeth attorneys were involved in the prosecution of the '965 application: Rebecca R. Barrett and Egon E. Berg.

74.    The '965 application was assigned to Examiner James Spear.

75.    The '965 application included the following claim:

> 23.    A method for providing therapeutic blood plasma concentration of venlafaxine over a twenty four hour period with diminished incidence of nausea and emesis which comprises administering orally to a patient in need thereof, an extended release formulation that provides peak blood plasma levels of venlafaxine of no more than about 150 ng/ml, said formulation containing venlafaxine hydrochloride as the active ingredient.

76.    Claim 23 of the '965 application was substantially similar to original claims 9 and 10 of the '137 parent application, prior to their amendment "to avoid rejection over Upton."

77.    During prosecution of the '965 application, at least Deborah M. Sherman, John C. Clark, John U. Lamer, Stephen A. White, Rebecca R. Barrett, and Egon E. Berg failed to disclose to the new examiner (Examiner James Spear) the earlier examiner's (Examiner Amy Hulina's) requirement for an amendment of the identical and substantially similar claims "to avoid rejection over Upton" and the fact that Wyeth had acquiesced to Examiner Hulia's requirement and agreed to narrow the scope of the identical and substantially similar claims in order "to avoid rejection over Upton."

78.    The information withheld by Wyeth's inventors and prosecuting attorneys was material to the patentability of the pending claims.

79.     On information and belief, Wyeth's inventors and prosecuting attorneys withheld this material information from the examiner in order to prosecute claims substantially similar to the previously rejected claims and did so with an intent to mislead or deceive the USPTO.

80.     The '120 patent issued from the '965 application on June 11, 2002.

## First Counterclaim

### Declaratory Judgment of Unenforceability of the '171 Patent

81.     Orchid Chemicals & Pharmaceuticals Ltd. repeats and realleges the allegations in paragraphs 1-80 of its counterclaims.

82.     As described above, the applicants (including Wyeth) violated their duty of candor to USPTO under 35 U.S.C. § 282 and 37 C.F.R. § 1.765 by failing to disclose during prosecution of the '328 application and the '629 application that the previous examiner considered the claimed subject matter unpatentable over Upton and that they had acquiesced and agreed to amendment of the claimed subject matter to avoid rejection over Upton. The applicants' failure to disclose such material information was done with the intent to mislead and deceive. Therefore, the '171 patent is unenforceable.

## Second Counterclaim

### Declaratory Judgment of Unenforceability of the '958 Patent

83.     Orchid Chemicals & Pharmaceuticals Ltd. repeats and realleges the allegations in paragraphs 1-82 of its counterclaims.

84.     As described above, the applicants (including Wyeth) violated their duty of candor to USPTO under 35 U.S.C. § 282 and 37 C.F.R. § 1.765 by failing to disclose during prosecution of the '328 application, the '629 application, and the '412 application that the previous examiner considered the claimed subject matter unpatentable over Upton and that they had acquiesced and agreed to amendment of the claimed subject matter to avoid rejection over Upton. The applicants' failure to disclose such material information was done with the intent to mislead and deceive. Therefore, the '958 patent is unenforceable.

### Third Counterclaim

### Declaratory Judgment of Unenforceability of the '120 Patent

85.     Orchid Chemicals & Pharmaceuticals Ltd. repeats and realleges the allegations in paragraphs 1-84 of its counterclaims.

86.     As described above, the applicants (including Wyeth) violated their duty of candor to USPTO under 35 U.S.C. § 282 and 37 C.F.R. § 1.765 by failing to disclose during prosecution of the '328 application, the '629 application, the '412 application, and the '120 application that the previous examiner considered the claimed subject matter unpatentable over Upton and that they had acquiesced and agreed to amendment of the claimed subject matter to avoid rejection over Upton. The applicants' failure to disclose such material information was done with the intent to mislead and deceive. Therefore, the '120 patent is unenforceable.

### Fourth Counterclaim

### Declaratory Judgment of Noninfringement of the '171 Patent

87.     Orchid Chemicals & Pharmaceuticals Ltd. repeats and realleges the allegations in paragraphs 1-86 of its counterclaims.

88.     Orchid Chemicals & Pharmaceuticals Ltd. has not infringed any claim of the '171 patent by filing ANDA No. 91-123, and the commercial manufacture, use, importation, offer for sale and/or sale of the product described in ANDA No. 91-123 will not infringe any valid and enforceable claim of the '171 patent.

### Fifth Counterclaim

### Declaratory Judgment of Noninfringement of the '120 Patent

89.     Orchid Chemicals & Pharmaceuticals Ltd. repeats and realleges the allegations in paragraphs 1-88 of its counterclaims.

90.     Orchid Chemicals & Pharmaceuticals Ltd. has not infringed any claim of the '120 patent by filing ANDA No. 91-123, and the commercial manufacture, use, importation, offer for sale and/or sale of the product described in ANDA No. 91-123 will not infringe any valid and enforceable claim of the '120 patent.

24

## Sixth Counterclaim

### Declaratory Judgment of Noninfringement of the '958 Patent

91.     Orchid Chemicals & Pharmaceuticals Ltd. repeats and realleges the allegations in paragraphs 1-90 of its counterclaims.

92.     Orchid Chemicals & Pharmaceuticals Ltd. has not infringed any claim of the '958 patent by filing ANDA No. 91-123, and the commercial manufacture, use, importation, offer for sale and/or sale of the product described in ANDA No. 91-123 will not infringe any valid and enforceable claim of the '958 patent.

## Seventh Counterclaim

### Declaratory Judgment of Invalidity of the '171 Patent

93.     Orchid Chemicals & Pharmaceuticals Ltd. repeats and realleges the allegations in paragraphs 1- 92 of its counterclaims.

94.     Each claim of the '171 patent is invalid for failure to comply with one or more provisions of Title 35, United States Code, including, inter alia, §§ 101, 102, 103, 112, and/or for double patenting.

## Eighth Counterclaim

### Declaratory Judgment of Invalidity of the '120 Patent

95.     Orchid Chemicals & Pharmaceuticals Ltd. repeats and realleges the allegations in paragraphs 1-94 of its counterclaims.

96.     Each claim of the '120 patent is invalid for failure to comply with one or more provisions of Title 35, United States Code, including, *inter alia*, §§ 101, 102, 103, 112, and/or for double patenting.

## Ninth Counterclaim

### Declaratory Judgment of Invalidity of the '958 Patent

97.     Orchid Chemicals & Pharmaceuticals Ltd. repeats and realleges the allegations in paragraphs 1-96 of its counterclaims.

98.     Each claim of the '958 patent is invalid for failure to comply with one or more provisions of Title 35, United States Code, including, inter alia, §§ 101, 102, 103, 112, and/or for double patenting.

### Prayer for Relief

WHEREFORE, Orchid Chemicals & Pharmaceuticals Ltd. respectfully requests this Court enter a Judgment and Order:

A.     dismissing the Complaint, and each and every Claim for Relief contained therein, with prejudice;

B.     declaring the claims of United States Patent No. 6,274,171 unenforceable due to inequitable conduct;

C.     declaring the claims of United States Patent No. 6,403,120 unenforceable due to inequitable conduct;

D.     declaring the claims of United States Patent No. 6,419,958 unenforceable due to inequitable conduct;

E.     declaring that no valid and enforceable claim of United States Patent No. 6,274,171 has been or would be infringed by Orchid Chemicals & Pharmaceuticals Ltd. directly, by inducement of infringement, or otherwise;

F.     declaring that no valid and enforceable claim of United States Patent No. 6,419,958 has been or would be infringed by Orchid Chemicals & Pharmaceuticals Ltd. directly, by inducement of infringement, or otherwise;

G.     declaring that no valid and enforceable claim of United States Patent No. 6,403,120 has been or would be infringed by Orchid Chemicals & Pharmaceuticals Ltd. directly, by inducement of infringement, or otherwise;

H.     declaring the claims of United States Patent No. 6,274,171 invalid;

I.     declaring the claims of United States Patent No. 6,403,120 invalid;

J.     declaring the claims of United States Patent No. 6,419,958 invalid;

K.      declaring this case exceptional pursuant to 35 U.S.C. § 285 and awarding Orchid

Chemicals & Pharmaceuticals Ltd. its attorneys' fees, costs and expenses; and

L.      granting such other and further relief as this Court may deem just and proper.


Dated: September 2, 2009                        _____ s/ Jason B. Lattimore _____

                                                JASON B. LATTIMORE
                                                LATHAM & WATKINS LLP
                                                One Newark Center, 16th Floor
                                                Newark, NJ 07101-3174
                                                Telephone: (973) 639-1234
                                                Facsimile: (973) 639-7298

                        OF COUNSEL

                                                TERRENCE J. CONNOLLY
                                                (applying for *pro hac vice* admission)
                                                LATHAM & WATKINS LLP
                                                885 Third Avenue, Suite 1000
                                                New York, NY 10022-4834
                                                Tel: (212) 906-1200
                                                terrence.connolly@lw.com

                                                KENNETH G. SCHULER
                                                (applying for *pro hac vice* admission)
                                                LATHAM & WATKINS LLP
                                                Sears Tower, Suite 5800
                                                233 South Wacker Drive
                                                Chicago, IL 60606
                                                Tel: (312) 876-7700
                                                kenneth.schuler@lw.com

                                                DARRYL H. STEENSMA
                                                (applying for *pro hac vice* admission)
                                                LATHAM & WATKINS LLP
                                                12636 High Bluff Drive, Suite 400
                                                San Diego, CA 92130
                                                Tel: (858) 523.5400
                                                darryl.steensma@lw.com

                                                Attorneys for defendants Orchid Chemicals
                                                & Pharmaceuticals, Ltd. and Orgenus
                                                Pharma, Inc.

27

## CERTIFICATION PURSUANT TO L. CIV. R. 11.2

I hereby certify that to the best of my knowledge the matter in controversy is not the subject of any other action pending in any court, or of any pending arbitration or administrative proceeding.

s/ Jason B. Lattimore

Jason B. Lattimore

Dated: September 2, 2009

# Exhibit I

Westlaw.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
**(Cite as: 2010 WL 1039875 (E.D.Va.))**

**H**Only the Westlaw citation is currently available.

United States District Court, E.D. Virginia,
Alexandria Division.
Zhou Jie PLANT, et al., Plaintiffs,
v.
MERRIFIELD TOWN CENTER LIMITED PART-
NERSHIP, et al., Defendants.
**No. 1:08cv374.**

March 18, 2010.

<u>Henry St. John Fitzgerald</u>, Law Offices of Henry St.
<u>J. Fitzgerald</u>, Arlington, VA, for Plaintiffs, Haeng Ja
Kim.

<u>Edward W. Cameron</u>, <u>Sean Patrick Roche</u>, Cam-
eron/McEvoy, PLLC, Fairfax, VA, for Merrifield
Town Center, LP, Uniwest Group, LLC, Uniwest
Development, LLC, Michael D. Collier.

<u>John Laughlin Carter</u>, Carter Fullerton & Hayes LLC,
Alexandria, VA, for Walker Title and Escrow Com-
pany, Inc.

### *MEMORANDUM OPINION*

<u>T.S. ELLIS, III</u>, District Judge.

**\*1** This federal question suit alleging violations of
the Interstate Land Sales Full Disclosure Act, <u>15</u>
<u>U.S.C. § 1701 *et seq.*</u> ("ILSFDA"), is before the
Court on several motions and objections.<sup>FN1</sup> Specifi-
cally, at issue are the following:

(i) plaintiffs' objection to the magistrate judge's
December 23, 2009 report and recommendation on
discovery sanctions recommending dismissal of
noncomplying plaintiffs from this case (Docket No.
195), defendants' motion for attorney's fees and
costs incurred in connection with their third motion
for sanctions (Docket No. 198), and defendants'
motion for leave to file a supplemental declaration
in support of their motion for attorney's fees and
costs (Docket No. 211);

(ii) plaintiffs' objections to the magistrate judge's
orders compelling discovery (Docket Nos. 143 &
178);

(ii) the parties' objections to the magistrate judge's
September 29, 2009 report and recommendation
concerning the parties' evidentiary burdens on li-
ability and affirmative defenses (Docket Nos. 177
& 179); and

(iv) plaintiffs' motion for partial summary judg-
ment (Docket No. 192), and defendants' motion to
strike plaintiffs' pleadings in support of their mo-
tion for partial summary judgment (Docket No.
204).

The motions and objections have been fully briefed
and argued,<sup>FN2</sup> and are now ripe for disposition. Each
set of motions and objections will be separately ad-
dressed.

### *I. Objection to the Report and Recommendation on Sanctions*

A.

Review appropriately begins with plaintiffs' objection
to the magistrate judge's December 23, 2009 report
and recommendation on sanctions ("R & R I"). In his
report and recommendation, the magistrate judge
recommends dismissal of the 97 (out of 120) plain-
tiffs who have repeatedly failed to comply with or-
ders compelling discovery. The timeline pertaining to
the magistrate judge's report and recommendation is
as follows:

1. On August 3, 2009, defendants served each
plaintiff with twenty interrogatories and twenty-
four requests for production of documents.

2. On or about August 18, 2009, plaintiffs served
defendants with objections to four of the twenty in-
terrogatories and to eight of the twenty-four docu-
ment production requests.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
(Cite as: 2010 WL 1039875 (E.D.Va.))

3. By September 2, 2009, the date on which responses to the August 3, 2009 discovery requests were due, plaintiffs had failed to file any such responses. Instead, on that date, plaintiffs filed a motion seeking a two week enlargement of time to respond to defendants' discovery requests.

4. Also on September 2, 2009, defendants filed a motion to compel responses to the discovery requests.

5. On September 11, 2009, the magistrate judge granted plaintiffs' motion for an extension of time and extended plaintiffs' discovery deadline to September 16, 2009. By the same order, the magistrate judge granted in part and denied in part defendants' motion to compel.

6. By September 16, 2009, the new discovery deadline, defendants still had not received any of plaintiffs' responses. Instead, plaintiffs on that date filed an objection to the September 11, 2009 order granting in part the motion to compel. Plaintiffs objected to the order compelling discovery only insofar as it compelled responses to two of the interrogatories to which plaintiffs had previously objected. Plaintiffs neither objected to nor served responses to the other discovery requests, a clear violation of the Magistrate Judge's September 11, 2009 order and Rules 33(b)(2) and 34(b)(2), Fed.R.Civ.P.

*2 7. Also on September 16, 2009, plaintiffs filed a certificate of service giving notice that "Plaintiffs ... have served, via U.S. Mail, their responses to discovery." This statement was incorrect. In fact, by September 16, 2009, plaintiffs had mailed, at most, fifteen of the 120 required interrogatory responses.

8. On September 18, 2009, two days after the discovery deadline had passed, defendants filed a motion to compel and a motion for sanctions, stating that no discovery responses had yet been received.

9. On September 23, 2009, plaintiffs filed an opposition to defendants' motions stating that the discovery responses "were served by mail on September 16, 2009, and also that a "second group of documents" would be produced on September 24, 2009.

10. On September 24, 2009, defendants filed a brief indicating that they received responses from fifteen (out of 120) plaintiffs on September 22, 2009, and further indicating that only five of the interrogatories were signed, and only four of those signatures were made under oath as required by Rule 33(b), Fed.R.Civ.P. Thus, as of September 24, 2009, 115 plaintiffs were in clear violation of the Magistrate Judge's September 11, 2009 order and the Federal Rules governing discovery.

11. By order dated September 25, 2009, the magistrate judge granted defendants' second motion to compel. The order indicated that failure to file full responses by 5:00 p.m., Friday, October 2, 2009, would result in sanctions "which may include costs and a recommendation to the District Judge to dismiss the claims asserted by the disobedient party."

12. On October 2, 2009, at 4:25 p.m., some thirty-five minutes before the new discovery deadline, plaintiffs filed a motion requesting five additional days to respond to the discovery requests. In that motion, plaintiffs represented that they "have produced the vast majority of the signed interrogatories and all responsive documents," and indicated that plaintiffs' counsel was having difficulty reaching "approximately ten plaintiff [sic]."

13. At 4:41 p.m. on October 2, 2009, plaintiffs' counsel filed an involuntary bankruptcy petition in United States Bankruptcy Court against defendant Merrifield Town Center, L.P. ("Merrifield"). At 5:07 p.m., plaintiffs filed a notice of the involuntary bankruptcy petition in the instant civil action requesting a stay of proceedings with respect to all defendants pursuant to the bankruptcy code's automatic stay provisions, codified at 11 U.S.C. § 362(a).

14. At 5:01 p.m. on October 2, 2009, defendants filed a third motion for sanctions indicating that sworn responses to interrogatories had been received from only six of the 120 plaintiffs. Thus, as of the 5:00 p.m. discovery deadline, 114 plaintiffs were in clear violation of two orders of the magistrate judge and the Federal Rules governing discovery.

15. By the end of the day on October 2, 2009, de-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
**(Cite as: 2010 WL 1039875 (E.D.Va.))**

fendants had received interrogatory responses from only twenty-three of 120 plaintiffs.

\*3 16. An Order dated October 7, 2009 held that although the automatic stay provision applied with respect to Merrifield and not to any other defendants, the case was nonetheless stayed in its entirety as of October 7 pursuant to <u>Rule 19(b), Fed.R.Civ.P.</u>, because Merrifield was an essential party.

17. On December 2, 2009, the involuntary bankruptcy petition was dismissed and the automatic stay was terminated. The bankruptcy judge found that the involuntary petition was filed in order "to secure what clearly appears to me to be a tactical advantage, that this involuntary petition was filed because a trial date was looming ." *In re: Merrifield Town Center Limited Partnership,* No. 09-18119, tr. at 8 (Bankr.E.D.Va. Dec. 1, 2009) (transcript of bench ruling).

18. On December 4, 2009 defendants filed a motion to lift the stay on the case, which motion was granted by Order dated December 7, 2009. Defendants also filed a renewed motion for sanctions and noticed a hearing for December 18, 2009.

19. Late in the afternoon on December 17, 2009, plaintiffs' counsel served signed and unsigned interrogatory responses from eighteen plaintiffs, two of whom had already submitted responses, and one of whom is not a plaintiff in this case. Thus, plaintiffs' counsel, by December 18, 2009, had served interrogatory responses from only thirty-eight of the 120 plaintiffs. The other 82 plaintiffs remained in clear violation of two discovery orders and the Federal Rules.

20. Plaintiffs' counsel failed to appear at the hearing on the sanctions motion scheduled for 9:00 a.m., Friday, December 18, 2009, until 10:00 a.m., at which point argument had already been heard.

In his report and recommendation, the magistrate judge made factual findings as summarized in the timeline. He found that 97 of the 120 plaintiffs had failed to comply with two orders compelling discovery, including an order that clearly and explicitly warned that noncompliance could result in sanctions including dismissal. The magistrate judge further

found that the 97 noncomplying plaintiffs "have undoubtedly acted in bad faith by disregarding two Orders compelling them to serve full and complete responses to discovery." R & R I at 10. In this regard, the magistrate judge found that bad faith was evidenced by the noncomplying plaintiffs' "willful disregard of the federal rules" and by plaintiffs' counsel's "representations to the court concerning the status of the plaintiffs' discovery responses that clearly were not correct." *Id.* at 11. Citing "the persistent nature of these violations and the various misleading or untrue representations made by plaintiffs' counsel" concerning plaintiffs' compliance with discovery, and applying the factors articulated by the Fourth Circuit in *Anderson v. Found. for Advancement, Educ. & Employment of Am. Indians,* 155 F.3d 500, 504 (4th Cir.1998), the magistrate judge concluded that dismissal of the 97 noncomplying plaintiffs was warranted. R & R I at 13. The magistrate judge further recommended that defendants be awarded costs incurred in filing their third motion for sanctions pursuant to <u>Rule 37(d)(3), Fed.R.Civ.P.</u>

B.

\*4 Findings and conclusions of the magistrate judge on dispositive motions must be reviewed *de novo* when objections are timely filed. 43 U.S.C. § 636(b)(1)(B); <u>Rule 72(b)(3), Fed.R.Civ.P.</u>; *see United States v. Midgette,* 478 F.3d 616, 621 (4th Cir.2007). Here, plaintiffs' timely objection advances the following arguments: (i) that they were not required to comply with the discovery orders and deadlines because their timely objections to the discovery orders stayed those orders and deadlines in all respects, (ii) that no deadline expired because the filing of the bankruptcy petition stayed the case, (iii) that the discovery sought is irrelevant, (iv) that the lead plaintiff properly responded to the discovery request on behalf of all plaintiffs, (v) that jurisdiction to impose sanctions is lacking because the bankruptcy court has retained jurisdiction over the sanctions request, and (vi) that the sanctions recommended by the magistrate judge are too severe in light of the alleged violations. Each of these arguments is separately addressed.

First, plaintiffs contend that their objections to the magistrate judge's orders excused their compliance with discovery deadlines pending resolution of these objections. This argument is without merit for two

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
**(Cite as: 2010 WL 1039875 (E.D.Va.))**

reasons. First, there is no support for the contention that a magistrate judge's order on a nondispositive motion, such as the discovery orders in issue here, is automatically stayed upon timely filing of an objection to that order. Instead, governing law is to the contrary. *See* Local Civil Rule 26(C) ("Any such objection does not extend the time within which the objecting party must otherwise answer or respond ...."); *see also* 12 Charles Alan Wright et al., *Federal Practice & Procedure* § 3069 ("Moreover, a timely objection does not automatically render the magistrate judge's ruling invalid until the district court acts on the objection.") (citing cases). Indeed, plaintiffs' counsel's repeated requests-subsequent to his objections-for additional time and his factual representations concerning compliance clearly indicate that he knew that his objections had no staying effect. Moreover, plaintiffs objected only to a fraction of the discovery requests. Thus, even assuming, *arguendo*, that the objections had a staying effect, they could not excuse plaintiffs from complying with those discovery requests to which they did not object. In any event, because plaintiffs' objections did not operate to stay the magistrate judge's binding orders, plaintiffs were obligated to file timely responses to the discovery requests, which they failed to do.

Plaintiffs' second argument-that no deadline was violated because the involuntary bankruptcy petition filed by plaintiffs' counsel nineteen minutes before the discovery deadline stayed the entire case and terminated all deadlines-is also meritless. As indicated in the Order dated October 7, 2009, the automatic stay provisions of the bankruptcy code only applied with respect to Merrifield and not to any other joined defendant.[FN3] Thus, the case was not stayed in its entirety until the October 7, 2009 Order staying proceedings pursuant to Rule 19(b), Fed.R.Civ.P. *See Plant v. Merrifield*, No. 1:08cv374 (E.D.Va. Oct. 7, 2009) (Order).

**\*5** Plaintiff now argues, citing *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir.1986), that the "unusual circumstances" required for the automatic stay to apply to the non-Merrifield defendants existed here. Yet, *Robins* does not support this argument. Instead, it is clear that for an automatic stay to apply to non-debtor defendants, these other defendants must have "such identity" with the debtor that suing the non-debtor is functionally the same as suing the debtor. *Robins*, 788 F.3d at 999. In this matter, the

non-Merrifield defendants are Uniwest Group, LLC, Uniwest Development, LLC, and Michael D. Collier. The second amended complaint in this case alleges that Uniwest Group, LLC is the sole general partner of Merrifield and "is the *only* entity having the authority to make decisions on behalf of [Merrifield]. All decisions and actions of [Merrifield] are therefore the responsibility of Uniwest Group, LLC." 2d Am. Compl. ¶ 8. Assuming, *arguendo*, the truth of this allegation, it is at least possible that Uniwest Group, LLC satisfies the *Robins* test for the application of the automatic stay to third parties. But there are no allegations that would satisfy *Robins* with respect to the other two defendants, Uniwest Development, LLC, and Mr. Collier. In this regard, the amended complaint merely alleges (i) that Uniwest Development, LLC shares its place of business with Uniwest Group, LLC, and (ii) that Mr. Collier is the president, registered agent, and "controlling person" of Uniwest Group, LLC and Merrifield. The active complaint in this case therefore alleges no facts to suggest that either of these two defendants would be liable for Merrifield's debts, or vice versa. Thus, the involuntary bankruptcy petition against Merrifield did not stay the entire proceeding, and hence the October 2, 2009 discovery deadline was not stayed. Additionally, plaintiffs should not receive the benefit of having filed a bankruptcy petition solely for the strategic purpose of delaying these proceedings. Finally, any mistaken belief that plaintiffs' counsel may have had about the effect of the bankruptcy petition does not explain (i) plaintiffs' failure to comply with the September 2 and September 16, 2009 deadlines, (ii) plaintiffs' counsel's repeated misrepresentations to the Court about plaintiffs' compliance with discovery orders, or (iii) plaintiffs' failure to file discovery responses after the stay was lifted on December 2, 2009..

Plaintiffs also argue that the requested discovery is irrelevant and thus should not have been compelled. Put another way, plaintiffs contend that they were justified in disobeying the magistrate judge's orders compelling discovery because those orders were in error. As discussed in the next section, the magistrate judge did not err in ordering plaintiffs to respond to defendants' request. But even assuming, *arguendo*, that the magistrate judge's rulings were contrary to law, this would not justify plaintiffs' failure to obey these rulings. To accept this argument would be to strip the magistrate judge's orders of any binding effect, leaving parties free to ignore these orders when-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
**(Cite as: 2010 WL 1039875 (E.D.Va.))**

ever they disagreed with them. This result is unsupported by any Rule or statute and would, if applied, undermine the very reasons-judicial economy and efficiency-that magistrate judges are authorized to rule on nondispositive motions. Accordingly, plaintiffs' argument in this regard must be rejected.

*6 Plaintiffs' next argument is that the response of the lead plaintiff was sufficient to satisfy the discovery requests and the orders compelling discovery. This contention is plainly merit less, as the record indicates that it was quite clear that individual responses were required. Indeed, the magistrate judge's second order compelling discovery requires that "each individual plaintiff shall serve full and complete responses" to the discovery request. *Plant v. Merrifield Town Center, L.P.,* No. 1:08cv374 (E.D.Va. Sept. 25, 2009) (Order). There is no room for ambiguity in these terms: all plaintiffs were required to file individual responses and yet, the great majority of them failed to do so.

Plaintiffs next contend that there is no jurisdiction to impose sanctions here because the bankruptcy court is currently considering whether to sanction plaintiffs' counsel for filing a frivolous bankruptcy petition against Merrifield. This argument, too, lacks any foundation in law. The bankruptcy court may, pursuant to Rule 9011, Fed. R. Bankr.P., sanction plaintiffs' counsel for any bad faith conduct in bankruptcy court, including the filing of a frivolous petition. Similarly, district courts are empowered, pursuant to Rules 11 and 37, Fed.R.Civ.P., to sanction plaintiffs' counsel for bad faith conduct and discovery violations that occurred in *this* Court. While there might be some merit to plaintiffs' contention if sanctions were sought here for plaintiffs' counsel's conduct in the bankruptcy court, that is simply not the case. The sanctions recommended by the magistrate judge are for discovery violations and bad faith conduct by plaintiffs' counsel that occurred solely in the district court proceedings. Thus, it is clear there is jurisdiction here to impose sanctions notwithstanding the ongoing sanctions proceeding in bankruptcy court.

Plaintiffs finally contend that the recommended sanctions are too severe. This argument also fails, for a careful review of the record confirms that the magistrate judge properly applied the *Anderson* factors, and his findings are accordingly adopted here. It is clear from the factual record that plaintiffs' counsel knew

that he was required to file responses from each of his clients individually and notwithstanding his objections to some-not all-of the discovery requests. And indeed, plaintiffs' counsel repeatedly represented to the Court, in pleadings subject to Rule 11, Fed.R.Civ.P., that he had made significant progress in complying with the discovery requests. For example, in a court filing on September 16, 2009, plaintiffs' counsel stated, "Plaintiffs ... have served, via U.S. Mail, their responses to discovery." Then, on September 23, plaintiffs' counsel stated in a pleading that discovery responses "were served by mail on September 16, 2009, and also that a "second group of documents" would be produced on September 24, 2009. Finally, on October 2, 2009, that plaintiffs "have produced the vast majority of the signed interrogatories and all responsive documents," and that only responses from approximately ten plaintiffs were missing. These representations were false; plaintiffs' counsel had, in fact, produced discovery responses from only twenty-three of the 120 plaintiffs by the end of the day on October 2, 2009, and he produced no additional responses until the eve of the sanctions hearing on December 17, 2009. And even by the time of the hearing on sanctions, plaintiffs' counsel had produced interrogatory responses from only thirty-eight plaintiffs. Thus, even by then, 82 plaintiffs had failed to file compelled discovery, choosing instead to ignore the magistrate judge's orders and clear warnings.

*7 Put simply, all four of the *Anderson* factors are satisfied on this record. First, bad faith is clearly evidenced by the repeated and flagrant disregard of the binding orders of the magistrate judge and plaintiffs' counsel's misrepresentation of material facts concerning plaintiffs' noncompliance with these orders. Second, the scope and length of the violations have clearly resulted in prejudice to defendants. These discovery requests were made on August 3, 2009. Yet, 97 of the 120 plaintiffs had not responded to the discovery requests by the October 2, 2009 deadline-which was at least the third discovery deadline that plaintiffs missed with respect to these specific requests-and despite repeated warnings, discovery responses still had not been produced from 82 of the 120 plaintiffs by the time of the hearing on the sanctions motion. Thus, while defendants have complied with their discovery obligations, they were left without any responses from the great majority of plaintiffs for four and one half months. Third, dismissal is necessary for purposes of deterrence. The repeated

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
**(Cite as: 2010 WL 1039875 (E.D.Va.))**

and deliberately misleading nature of the violations-including conduct after plaintiffs were warned of the possibility of dismissal-indicates that dismissal and an award of costs is necessary to deter plaintiffs' counsel and others from such conduct in the future. Finally, for the same reason, it is plain from the nature of the conduct in issue that a lesser remedy would be inadequate to provide a sufficient deterrent to noncompliant plaintiffs and their counsel from similar conduct in the future. Thus, pursuant to Rule 37, Fed.R.Civ.P., it is appropriate for the 82 plaintiffs who failed to provide interrogatory responses by December 18, 2009, to be dismissed from the case.[FN4] Moreover, pursuant to the recommendation of the magistrate judge and Rule 37, Fed.R.Civ.P., the 97 plaintiffs who failed to provide interrogatory responses by October 2, 2009, and their counsel, are appropriately held responsible for reasonable attorney's fees and costs related to defendants' third motion for sanctions.[FN5] Plaintiffs' counsel is advised that any further failure to comply strictly with court orders, and any further misrepresentations to the Court, will result in additional sanctions, including dismissal and award of fees and costs to defendants. The matter is appropriately referred to the magistrate judge for further proceedings to prepare a report and recommendation of the amount of fees and costs to which defendants are entitled.

### II. Objections to the Orders Compelling Discovery

The analysis next turns to plaintiffs' objections to the magistrate judge's orders compelling discovery. These nondispositive orders are reviewed for clear error of fact and for conclusions that are contrary to law. 28 U.S.C. § 636(b)(1); Rule 72(a), Fed.R.Civ.P. In their objections, plaintiffs contend (i) that defendants' interrogatories 2 and 9 are not reasonably related to any material issues remaining in the case,[FN6] and (ii) that it was unreasonable to require a plaintiff who resides in Georgia to be deposed in the Eastern District of Virginia. With respect to the first issue, plaintiffs argue that these two interrogatories are not reasonably related to any material issues because defendants' fraudulent inducement defense was previously stricken. *See Plant v. Merrifield*, No. 1:08cv374 (E.D.Va. Mar. 16, 2009) (Order).[FN7] The interrogatories in issue are as follows:

**\*8** *Interrogatory No. 2:*

As to each Purchase Agreement referenced in your complaint, provide the following:

(i) the date, location, and identities of the individuals present at the time you executed such Agreement (including a description for each Addendum executed as part of the Agreement);

(ii) the substance of any discussions between you and anyone acting on behalf of Merrifield Town Center relating (in any way) to such Agreement (including a description for each Addendum executed as part of the Agreement)."

*Interrogatory No. 9:*

If you contend that, at the time of contracting with Merrifield Town Center, you intended the subject condominium unit to be your principal residence, state, in detail, all facts which support or otherwise relate to such contention. Include in your answer the following:

(i) your principal residence address at the time of contracting and whether you owned such residence at that time;

(ii) if you owned the principal residence in which you lived at the time of contracting, identify any and all steps taken by you to sell or rent such residence from the time of contracting through the time you decided not to purchase the subject condominium unit from Merrifield Town Center; and,

(iii) identify all efforts made by you to obtain financing for your purchase of the subject condominium unit from Merrifield Town Center.

Plaintiffs contend that the information requested in these interrogatories could pertain only to a fraudulent inducement defense, and because that defense was previously stricken, there is no basis for the discovery requests. Defendants argue, and the magistrate judge correctly concluded, that the material is related to other potential defenses, including unclean hands, waiver, and estoppel. Indeed, there is a reasonable relationship between the information requested and the elements necessary to assert these defenses as construed by the magistrate judge and as adopted here. Moreover, the information requested is

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
**(Cite as: 2010 WL 1039875 (E.D.Va.))**

material to whether defendants are liable and, if they are, whether the rescission remedy is appropriate. Additionally, these requests for information impose only a minimal burden on plaintiffs. Thus, the magistrate judge's order compelling responses to these interrogatories was neither clearly erroneous nor contrary to law. Accordingly, this objection is appropriately overruled.

Plaintiffs also object to the magistrate judge's September 11, 2009 order on the ground that requiring in-person deposition of a plaintiff who resides in Georgia would be unduly burdensome.[FN8] According to defendants, the parties successfully resolved this disagreement and the plaintiff in issue was deposed.[FN9] Accordingly, on the basis of defendants' representation, the objection is appropriately overruled as moot.

### III. Objections to the Report and Recommendation on the Parties' Evidentiary Burdens

Next to be considered are the parties' objections to the magistrate judge's September 29, 2009 report and recommendation ("R & R II") concerning various matters relating to the merits of plaintiffs' claim and defendants' defenses. Specifically, the report addressed the following issues:

**\*9** (i) plaintiffs' evidentiary burden to establish entitlement to rescission of the Unit Purchase Agreements ("UPAs"),

(ii) defendants' evidentiary burden to prove affirmative defenses,

(iii) whether plaintiffs are entitled to a jury trial,

(iv) whether any plaintiff has failed to comply with the applicable statute of limitations, and

(v) whether certain defendants are developers or agents thereof subject to liability under the Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. § 1701.

The parties have lodged various objections to the magistrate judge's conclusions of law, which are reviewed *de novo*. Fed.R.Civ.P. 53(f)(3). The objections to each of these five issues will be addressed in turn.

A.

With respect to the first issue, the magistrate judge concluded that plaintiffs may seek rescission of the UPAs under 15 U.S.C. § 1709(a) or under 15 U.S.C. § 1709(b). More specifically, the magistrate judge found that rescission is available under § 1709(a), which empowers district courts to award all "fair, just, and equitable" relief insofar as it would be available under Virginia law, which law requires a showing that violations (i) were substantial, and (ii) prejudiced the plaintiff. Similarly, the magistrate judge found that under § 1709(b), which allows an equitable action to enforce "any right" under § 1703, plaintiffs are entitled to rescission provided they show that the § 1703(c) violation-the failure to provide notice of the automatic revocation right-was a substantial violation that prejudiced each plaintiff.

To begin with, the magistrate judge incorrectly concluded that it was appropriate to refer to Virginia law in considering the availability and elements of an ILSFDA claim for equitable rescission. It is well established that federal law, and not state law, governs the remedies available in a lawsuit in federal court arising under a federal cause of action. *See Franklin v. Gwinnett County Pub. Sch.,* 503 U.S. 60, 66, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992) (holding that federal law governs remedies available under Title IX); *Howlett v. Rose,* 496 U.S. 356, 375, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990) ("The elements of, and the defenses to, a federal cause of action are defined by federal law."). And where, as here, the statutory provisions in issue do not specify the available remedies, federal common law governs the analysis. *See Franklin,* 503 U.S. at 60; *Griggs v. E.I. Dupont de Nemours & Co.,* 385 F.3d 440, 447 n. 4 (4th Cir.2004) (holding that federal common law governs equitable remedies available under ERISA). This conclusion is further supported by the principle that there is a strong federal interest in the uniformity of remedies available under a federal cause of action such as ILSFDA. Indeed, the Supreme Court has long held that the very act of creating a federal cause of action is a strong Congressional indication of the federal interest in the uniformity of remedies available to a party aggrieved by a violation of federal law. *See Monessen S.W. Ry. Co. V. Morgan,* 486 U.S. 330, 335, 108 S.Ct. 1837, 100 L.Ed.2d 349 (1988)

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
**(Cite as: 2010 WL 1039875 (E.D.Va.))**

(applying federal common law to question of post-judgment interest under Federal Employers Liability Act and noting that "the proper measure of damages is inseparably connected with the right of action.") (quoting *Chesapeake & Oh. Ry. Co. v. Kelly,* 241 U.S. 485, 490, 36 S.Ct. 630, 60 L.Ed. 1117 (1916)).[FN10] Thus, federal common law governs the analysis here, namely whether, and under what circumstances, rescission is available for violations of §§ 1709(a) and (b).

*10 While the question whether equitable rescission is available under these provisions of ILSFDA is apparently a matter of first impression, the Supreme Court has construed similar provisions in the Securities Act of 1933 and ERISA to create an entitlement to equitable rescission where the necessary circumstances exist. *See Harris Trust & Sav. Bank v. Salomon Smith Barney, Inc.,* 530 U.S. 238, 250, 120 S.Ct. 2180, 147 L.Ed.2d 187 (2000) (applying federal common law to interpretation of § 502(a)(3) of ERISA, which creates cause of action for "appropriate equitable relief"); *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 289, 61 S.Ct. 229, 85 L.Ed. 189 (1940) (applying federal common law to interpretation of § 22(a) of the Securities Act, which creates cause of action for "suits in equity"). There is no basis to conclude that the ILSFDA provisions creating "an action at law or in equity" should be interpreted any differently from the provisions of ERISA and the Securities Act. Indeed, the broad language of §§ 1709(a) and (b) indicates that all equitable remedies "typically available" under the common law are available for qualifying ILSFDA violations. *Mertens,* 508 U.S. at 256 (construing ERISA). Because it is beyond dispute that rescission is such a typically available remedy, *see* 3 Pomeroy's Equity Jurisprudence § 891 (5th ed.1941), it is clear that rescission is available if the required elements are established.

The analysis therefore properly turns to the elements necessary to establish equitable rescission under federal common law.[FN11] In the ERISA context, courts have borrowed from traditional common law contract principles in concluding that misstatements or omissions must be "material" in order to warrant rescission.[FN12] And in this regard, misstatements or omissions are material when they "would have influenced the decision" to enter into the disputed contract with the omitting or misrepresenting party. *Shipley,* 333 F.3d at 905 (citing cases); *see also Grymes v. Sand-*

ers, 93 U.S. 55, 60, 23 L.Ed. 798 (1876) (holding, for rescission of contract for sale of land, that mistake "must be such that it animated and controlled the conduct of the party"). This standard is an objective one; in other words, rescission is appropriate only where an omission "would be likely to affect the conduct of a reasonable man" with respect to the specific contract in issue. Restatement (First) of Contracts § 470 (1932); *see also McCormick & Co. v. Childers,* 468 F.2d 757, 765-66 (4th Cir.1972) (citing Restatement (First) of Restitution § 28 (1937); Williston on Contracts § 1500 (3d ed.); 3 Pomeroy's Equity Jurisprudence § 891 (5th ed.1941)). This well established materiality requirement is properly adopted here.[FN13] Moreover, as the Fourth Circuit held in *Griggs,* rescission is generally appropriate only where the parties may be restored to their position prior to the contract, but this requirement is neither absolute nor unmoving, and federal common law allows rescission "where the equities of the situation so demand [ ]," even if full restoration is not possible. 385 F.3d at 449. Accordingly, in order to prove entitlement to rescission of the UPAs, plaintiffs must prove: (i) that ILSFDA violations occurred, (ii) that these violations were material or, in other words, that they would have influenced a reasonable purchaser's decision to enter into the contract for sale, and (iii) either that rescission would restore the parties to the *status quo ante,* or that the equities of the situation demand rescission.

*11 Plaintiffs make four objections to the magistrate judge's recommendation concerning the rescission remedy. First, plaintiffs argue that the UPAs are void as a matter of Virginia law because they violate ILSFDA, and because a contract to perform an act prohibited by statute is generally void under Virginia law. *See Niemeyer v. Wright,* 75 Va. 239 (1881). There is, to be sure, a question whether the ILSFDA remedy provisions preempt state law claims based on an ILSFDA violation. But this question need not be resolved, for it is clear that the UPAs would not be void under Virginia's doctrine of illegality. As the magistrate judge noted, a contract is not void if the statute prohibiting the acts underlying the contract makes it "manifest that [the law] was *not intended* to render the act in contravention of the statute void." *P.M. Palumbo, Jr., M.D., Inc. v. Bennett,* 242 Va. 248, 409 S.E.2d 152, 153 (Va.1991). Applying this principle, the magistrate judge analyzed ILSFDA and correctly concluded that Congress did not intend for contracts that violate ILSFDA to be void *ab initio.*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
**(Cite as: 2010 WL 1039875 (E.D.Va.))**

Instead, ILSFDA contains detailed remedies provisions, including allowing revocation of the contract under certain conditions. *See, e.g.,* § 1703(c) (allowing revocation by purchaser for § 1703 violation within two years of signing); § 1709(a) (allowing relief "as the court deems fair, just, and equitable"). Thus, ILSFDA makes it "manifest" that contracts that violate the statute are not *per se* void and, applying this rule, unless one of these statutory revocation conditions is met, the contract in issue is not void. Accordingly, this objection is overruled.

Second, plaintiffs dispute the magistrate judge's conclusion that plaintiffs' right of automatic revocation pursuant to § 1703(c) has lapsed because more than two years passed between execution of the UPAs and the date this action was filed. This was not a finding that the magistrate judge made in his September 29, 2009 report and recommendation; rather, this finding was made in the June 1, 2009 report and recommendation. Plaintiffs objected to the finding at that time, and the objection was overruled by Order dated July 21, 2009. *See Plant v. Merrifield,* No. 1:08cv374 (July 21, 2009) (Order). Accordingly, this conclusion is not presently reviewable.

Third, plaintiffs argue that they are entitled to rescission based on defendants' failure to provide notice to plaintiffs of their right of automatic revocation. This argument is essentially a reformulation of plaintiffs' first and second arguments: plaintiffs contend they are entitled to an automatic revocation right because they were not provided notice of their automatic revocation right under § 1703(c). To the extent this objection is appropriately raised at this time, it is clear that ILSFDA does not provide for an additional automatic revocation right where the seller fails to notify the purchaser of their automatic revocation right for failure to provide a property report pursuant to § 1703(c). Instead, rescission is appropriate only insofar as plaintiffs are entitled to rescission "in equity" under §§ 1709(a) and (b) to enforce a right under § 1703. Accordingly, this objection is overruled.

**\*12** Fourth, plaintiffs object to the magistrate judge's finding that, in order to obtain rescission, plaintiffs must show actual prejudice. Specifically, the magistrate judge concluded (i) that in order to obtain rescission for the § 1703(a) violations, plaintiffs must show that they would not have entered into the UPAs had they been provided with the required property

information, and (ii) that in order to obtain rescission for the § 1703(c) violations, plaintiffs must show that they would have exercised their automatic revocation rights within the two-year statutory period had they received proper notice of those rights. While plaintiffs incorrectly argue for the application of Virginia law governing materiality, they are correct, for the reasons stated above, that actual prejudice is not required under proper application of principles of federal common law. Instead, under federal common law, rescission is available under ILSFDA only if plaintiffs can prove objective materiality. Accordingly, this objection is appropriately sustained in part and overruled in part.

Defendants raise several objections relating to plaintiffs' right to seek rescission, but these objections primarily involve the rulings in the July 21, 2009 Order and other prior rulings, and not the magistrate judge's September 29, 2009 report and recommendation. Accordingly, these objections are neither reached nor decided here because they are not the proper subject matter of an objection pursuant to R & R II pursuant to Rule 72, Fed.R.Civ.P. Specifically, the following objections do not raise issues addressed by the magistrate judge in the report and recommendation and are therefore not considered here:

  (i) defendants' argument that ILSFDA does not apply to the UPAs (Objection No. 1),

  (ii) defendants' argument that plaintiffs cannot seek damages pursuant to ILSFDA (Objection No. 2),

  (iii) defendants' contention that the Court lacks subject matter jurisdiction over plaintiffs' claim for rescission (Objection No. 3),[FN14]

  (iv) defendants' objection to the report and recommendation's failure "clearly [to] reflect[s] that Plaintiffs must proceed with the purchase of the subject condominium units" if they prevail in their claim for damages but not in their claim for rescission (Objection No. 4), and

  (v) defendants' argument that plaintiffs are not entitled to rescission because they have "expressly disavow[ed]" such a claim (Objection No. 6).

Nonetheless, defendants also lodge several objections

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
**(Cite as: 2010 WL 1039875 (E.D.Va.))**

that do pertain to the magistrate judge's findings concerning the availability of the rescission remedy to plaintiffs. First, defendants argue that the magistrate judge's findings "authorize [ ] an independent right of revocation" in excess of ILSFDA's statutory authorization. Def. Objection No. 5. In this respect, it is clear that the magistrate judge correctly interpreted the plain language of §§ 1709(a) and 1709(b) to allow "an action at law or in equity" that includes "such other relief as the court deems fair, just, and equitable," including the rescission remedy. Accordingly, this objection is appropriately overruled.

**\*13** Defendants also object to the rescission remedy because "equity cannot restore the parties to the position which they occupied" prior to entering into the UPAs and because "the breach (if any) is not so substantial as to defeat the object of the parties." Def. Objection No. 7. As stated above, restoration of the *status quo ante* is generally required, unless the equities of the situation demand rescission even though full restoration is not possible. This objection is not ripe. To the contrary, defendants' "objection" is merely an argument that the evidence does not support a finding that these requirements are met. This objection is premature: the magistrate judge reached no conclusions on the sufficiency of the evidence. Accordingly, the merits of this objection are neither reached nor decided here.

Defendants further contend that rescission is not authorized by the UPAs and therefore cannot be granted (Objection Nos. 8 & 12). While defendants are correct that the UPAs do not expressly provide a right of rescission for plaintiffs in these circumstances, plaintiffs do not seek rescission as a matter of contractual right, but rather as a matter of statutory right under ILSFDA. Accordingly, rights and remedies normally available under ILSFDA govern with respect to the UPAs, except to the extent contractually waived-a matter addressed in subpart E *infra*. Because, as the magistrate judge correctly held, those rights and remedies include the right of rescission in some circumstances, rescission is available here if plaintiffs meet their burden to demonstrate entitlement to the equitable remedy under ILSFDA's remedy provisions. Accordingly, this objection is overruled.

Finally, defendants argue that the complaint only alleges violations of § 1703(a), and thus no other claims under ILSFDA-specifically, for violations of §

1703(b) or (c)-are properly pleaded (Objection No. 9). In this respect, while it is true that the amended complaint does not specifically reference § 1703(b) or (c), it is also true that the amended complaint alleges that defendants failed to deliver a property report to the purchasers as required by ILSFDA. This allegation is sufficient to satisfy the notice pleading requirements of Rule 8, Fed.R.Civ.P., and thus states a valid claim for relief for violations of § 1703(b) or (c).<sup>FN15</sup> Thus, this objection, too, must be overruled and accordingly, the magistrate judge's findings and conclusions on this first issue are adopted as modified by this section.

B.

On the second issue, the magistrate judge considered defendants' evidentiary burden to establish each of their asserted affirmative defenses. In this regard, magistrate judge's conclusions may be succinctly summarized as follows:

(i) to establish the applicability of the doctrine of laches, defendants must prove (1) that each plaintiff knew of his or her right to revoke the UPA, (2) that the plaintiff inexplicably or inexcusably delayed in asserting his or her right to revoke, and (3) that evidence has been lost that would support defendants' position or defendants have changed their position in a manner that would not have occurred but for plaintiffs' delay;

**\*14** (ii) to prevail on the equitable estoppel defense, defendants must prove (1) that a plaintiff represented that he or she would perform under the UPAs, (2) that the plaintiff never acted inconsistently with that intent during the time of defendants' performance, (3) that defendants reasonably relied on the plaintiff's representation, and (4) that this reasonable reliance resulted in injury to defendants;

(iii) to prevail on an unclean hands defense, defendants must show that each plaintiff engaged in inequitable or wrongful conduct;

(iv) to prevail on the "first material breach" affirmative defense, defendants must show that each plaintiff materially breached their UPA before defendants did;

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
**(Cite as: 2010 WL 1039875 (E.D.Va.))**

(v) the failure of condition precedent defense is not available to defendants because communication of revocation within two years is only a condition precedent to exercise of § 1703(c)'s automatic revocation provision and not to the Court's exercise of equitable powers under § 1709;

(vi) the Court has previously decided that ILSFDA applies to the UPAs and thus defendants may not argue that it does not apply;

(vii) the Court has previously ruled that plaintiffs have stated a valid claim for rescission of the UPAs under ILSFDA;

(viii) plaintiffs' intention not to perform on a contract is no defense to an action for equitable rescission; and

(ix) plaintiffs do not seek declaratory relief and thus whether there is a legal or factual basis for such relief is immaterial.

Whereas the magistrate judge applied Virginia law with respect to affirmative defenses, as noted above, federal common law controls this inquiry. *See Howlett v. Rose,* 496 U.S. 356, 375, 110 S.Ct. 2430, 110 L.Ed.2d 332 (1990) ( "The elements of, and the defenses to, a federal cause of action are defined by federal law."). In this respect, the Fourth Circuit held in *Griggs* that federal common law defines the doctrine of laches to require (i) unreasonable delay and (ii) prejudice. In *Griggs,* the defendant waited over four years from the time he became aware of the defendant-employer's negligent conduct in managing its pension program to bring his claim for rescission of his election to enter the pension program. This delay caused a statute of limitations for recovery of excessive tax payments to lapse. Accordingly, had rescission been ordered, the defendant-employer would have borne the entire cost of the excessive tax payments. On these facts, the Fourth Circuit concluded that the equitable defense of laches prevented equitable rescission because (i) the plaintiff unreasonably delayed seeking rescission and (ii) that delay prejudiced the defendant. *Id.* (citing Restatement (First) of Restitution § 64 (1937)). Applying these elements to the facts of this case, defendants must prove (i) that each plaintiff inexplicably or inexcusably delayed in seeking revocation of the UPAs once he or she be-

came aware of the ILSFDA violations, and (ii) that defendants have been prejudiced in a manner that would not have occurred but for each plaintiff's delay.[FN16]

***15** With respect to the second asserted defense to rescission, the Supreme Court has elucidated the principles of equitable estoppel as understood by federal common law as follows:

If one person makes a definite misrepresentation of fact to another person having reason to believe that the other person will rely upon it and the other in reasonable reliance upon it does an act ... the first person is not entitled ... to regain property or its value that the other acquired by the act, if the other in reliance upon the misrepresentation and before discovery of the truth has so changed his position that it would be unjust to deprive him of that which he thus acquired. Thus, the party claiming the estoppel must have relied on its adversary's conduct in such a manner as to change his position for the worse. And that reliance must have been reasonable in that the party claiming the estoppel did not know nor should it have known that its adversary's conduct was misleading.

*Heckler v. Comm. Health Servs. of Crawford County, Inc.,* 467 U.S. 51, 59, 104 S.Ct. 2218, 81 L.Ed.2d 42 (1984) (quoting Restatement (Second) of Torts § 894(1) (1979); 3 Pomeroy, Equity Jurisprudence § 805 (1941)) (citing *Wilber Nat'l Bank v. United States,* 294 U.S. 120, 124-25, 55 S.Ct. 362, 79 L.Ed. 798 (1935) (internal quotation marks and citations omitted). Applying these principles to the facts of this case, in order to prevail on the equitable estoppel defense, defendants must prove (i) that each plaintiff represented that he or she intended to perform on the UPAs despite knowing of the ILSFDA violations, (ii) that defendants changed position in reliance on that representation, and (iii) that defendants' reliance was reasonable.

Next, with respect to the unclean hands defense, the law of Virginia and the federal common law are the same: no party asserting an equitable claim or an equitable defense may himself or herself be "tainted with inequitableness or bad faith relative to the matter in which he [or she] seeks relief, however improper may have been the behavior" of the other party. *Precision Instr. Mfg. Co. v. Auto. Maintenance*

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
**(Cite as: 2010 WL 1039875 (E.D.Va.))**

*Mach. Co.,* 324 U.S. 806, 814, 65 S.Ct. 993, 89 L.Ed. 1381 (1945). Accordingly, plaintiffs are not entitled to rescission if they have engaged in inequitable conduct with respect to the UPAs, and likewise, defendants may not assert an equitable defense if their hands are similarly unclean.

Defendants next assert the first material breach doctrine. It is well established that the first material breach doctrine is a defense to breach of contract cases. *Williston on Contracts* § 63:3 (citing cases). This defense, however, has no bearing on claims asserting statutory violations. Plaintiffs' breach of contract claim has previously been dismissed from this case. *See Plant v. Merrifield,* No. 1:08cv374 (E.D.Va. Mar. 16, 2009) (Order). Accordingly, the first material breach defense fails as a matter of law with respect to the statutory violation claim remaining in this case.

On the asserted failure of condition precedent defense, the magistrate judge correctly applied federal law in concluding that the plain language of ILSFDA does not require notice of intent to revoke the contract within § 1703(c)'s two-year period as a condition precedent to seeking a remedy in equity pursuant to § 1709. Accordingly, the magistrate judge's conclusion in this respect is adopted in full.

**\*16** In their objection, plaintiffs assert that defendants should not be allowed to assert equitable defenses because of their "unclean hands." The magistrate judge was not asked to address whether plaintiffs may rebut defendants' assertion of equitable defenses by showing "unclean hands," and thus this objection is appropriately overruled. Nonetheless, as discussed above, federal common law requires that any party claiming an equitable remedy or an equitable defense is subject to the "clean hands" rule.

Defendants do not object to this portion of the magistrate judge's report and recommendation. The magistrate judge's findings and conclusions on this question are correct in all other respects and are adopted as modified above.

C.

The third issue the magistrate judge considered is whether plaintiffs are entitled to a jury trial on any fact or issue that must be established in order to obtain the equitable relief that they seek. The magistrate judge correctly concluded plaintiffs are not entitled to a jury trial because (i) they waived any jury trial right through an express waiver clause in the UPAs,[FN17] and (ii) plaintiffs seek equitable relief and accordingly are not entitled to a jury trial under the well settled interpretation of the Seventh Amendment of the Constitution of the United States. Plaintiffs object to this finding by renewing their argument that the UPAs are void and thus the jury waiver clause is a legal nullity. This argument is rejected above as unsupported by the case law or by the statute. Moreover, plaintiffs do not address the constitutional issue, and it is clear that, because plaintiffs only seek equitable rescission, they are not entitled to a jury trial. *See Ross v. Bernhard,* 396 U.S. 531, 537-38, 90 S.Ct. 733, 24 L.Ed.2d 729 (1970). Accordingly, because plaintiffs are not entitled to a jury trial, the objection is overruled and the magistrate judge's findings and conclusions on this issue are adopted in full.

D.

The fourth issue that the magistrate judge considered is whether plaintiffs have complied with ILSFDA's three-year statute of limitations. The magistrate judge concluded that the statute of limitations was tolled by filing a motion for class certification prior to the expiration of the limitations period, and thus all plaintiffs have complied with the three-year time limit. Plaintiffs, not unexpectedly, do not object to this conclusion. Defendants, however, object on two grounds. First, defendants argue that a prior suit filed in another district court and subsequently nonsuited should not toll plaintiffs' limitations period. This prior action played no part in the magistrate judge's analysis and thus, this objection is appropriately overruled. Second, defendants contend that a motion for class certification does not toll the limitations period where, as here, the proposed class fails to satisfy any of the requirements of Rule 23, Fed.R.Civ.P. This position is contrary to the holdings of the Supreme Court and the Fourth Circuit. *See Crown, Cork & Seal Co. v. Parker,* 462 U.S. 345, 352-53, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983); *Bridges v. Dep't of Md. State Police,* 441 F.3d 197, 210 (4th Cir.2006) (holding that limitations periods are tolled "regardless of why the district court denied certification). Accordingly, the objection is appropriately overruled, and the magistrate judge's findings and conclusions concerning plaintiffs' compliance with ILSFDA's

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
**(Cite as: 2010 WL 1039875 (E.D.Va.))**

three-year statute of limitations are adopted in full.

### E.

**\*17** Finally, the magistrate judge considered whether defendants Mr. Collier, Uniwest Group, LLC, and Uniwest Development, LLC are "developers" or "agents" thereof subject to ILSDFA liability under §§ 1701(5) and 1701(6). The magistrate judge concluded (i) that the exculpatory clause found at paragraph 38 of the UPAs does not waive ILSFDA claims against non-Merrifield defendants, and (ii) that plaintiffs have alleged sufficient facts from which to conclude that Uniwest Group, LLC and Mr. Collier are developers or agents of Merrifield within the meaning of ILSFDA, but that there are insufficient factual allegations from which to conclude that Uniwest Development, LLC is such a developer or agent.

Plaintiffs object to the conclusion that there are insufficient facts from which to conclude that Uniwest Development, LLC is a developer or agent under ILSFDA. In their amended complaint, plaintiffs allege (i) that Uniwest Development LLC is a Virginia limited liability company with offices in Virginia, (ii) that it "directly or indirectly, sells or leases, or offers to sell or lease, or advertises for sale or lease any lots ... in the Vantage project," and (iii) that it "was an 'agent' " of Merrifield as a "person who represents, or acts for or on behalf of, a developer in selling or leasing, or offering to sell or lease, any lot or lots in a subdivision." The complaint alleges, moreover, that Uniwest Development, LLC is located at the same address as Uniwest Group, LLC, which the complaint alleges to be the sole general partner of Merrifield. It may ultimately be the case that the evidence does not support plaintiffs' claim that Uniwest Development, LLC is a developer or agent thereof as those terms are understood by ILSFDA. Yet, the factual allegations contained in the amended complaint are sufficient to create a plausible inference that Uniwest Development, LLC is, in fact, a developer or agent. *See Ashcroft v. Iqbal, --- U.S. ----, ----, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).* Accordingly, the objection is sustained and Uniwest Development, LLC properly remains a defendant in this case.

Defendants object to the magistrate judge's conclusions concerning whether the three non-Merrifield defendants are subject to ILSFDA liability for two reasons. First, defendants object to the magistrate

judge's conclusion that the exculpatory clause does not apply to ILSFDA claims. Defendants do not, however, dispute that exculpatory clauses are disfavored and construed narrowly. *See Chesapeake & Ohio R. Co. v. Clifton Forge-Waynesboro Tel. Co., 216 Va. 858, 224 S.E.2d 317 (Va.1976).*[FN18] Moreover, the Fourth Circuit has held that an exculpatory clause did not bar an action under a Virginia statute when the clause did not "in terms attempt to limit [the defendant's] liability for violations of the" statute. *Gill v. Rollins Protective Servs. Co., 722 F.2d 55, 58 (4th Cir.1983).* Thus, because the exculpatory clause is ineffective to waive ILSFDA claims, this objection is overruled.

**\*18** Second, defendants contend that the magistrate judge erred in finding that plaintiffs' factual allegations are sufficient to allow the conclusion that Uniwest Group, LLC and Mr. Collier are developers or agents. For the reasons stated above, while the evidence may not ultimately support plaintiffs' claim, the allegations are sufficiently plausible to allow the ILSFDA claims to proceed against these defendants. Thus, this objection is overruled, and the findings and conclusions of the magistrate judge are adopted as modified above.

### IV. Plaintiffs' Motion for Partial Summary Judgment

On January 5, 2010, plaintiffs filed a motion for partial summary judgment. The memorandum accompanying the motion contains no argument, but instead "adopt[s] the arguments" contained in (i) plaintiffs' objections to the magistrate judge's September 29, 2009 report and recommendation, and (ii) plaintiffs' opposition to defendants' objections to the same report and recommendation. Pl. Mem. at 1. On these grounds, plaintiffs claim that they are entitled to summary judgment on five issues:

> 1. The applicability of § 1703(c) given Defendants' failure to give notice of the right to revoke,

> 2. The status of the UPA as void given that they violate the ILSFDA,

> 3. The materiality of the Defendants' violations of the ILSFDA,

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
**(Cite as: 2010 WL 1039875 (E.D.Va.))**

4. The applicability of the reasonable investor standard, and

5. Entry of Judgment in the amounts shown on the Walker Title Affidavit.

Defendants filed an opposition to plaintiffs' motion on January 10, 2010, and thereafter, on January 20, 2010, plaintiffs filed a thirty-four page brief titled "Plaintiffs' Memorandum in Support of Their Motion for Summary Judgment." This brief shall be construed as an amendment to the January 5, 2010 memorandum.[FN19] As such, it violates the local rules governing summary judgment briefs in at least two respects. First, it exceeds the thirty-page limit by four pages. *See* Local Civil Rule 7(F). Second neither the January 5 nor the January 20 brief provides a listing of undisputed facts upon which the motion for summary judgment is based and, moreover, plaintiffs' factual contentions are unsupported by citations to record evidence. *See* Local Civil Rule 56(B). Indeed, the January 20 memorandum is nothing more than a recitation of plaintiffs' objections to the magistrate judge's report and recommendations, which objections have been resolved in this Memorandum Opinion.

The summary judgment standard is too well-settled to require elaboration here. In essence, summary judgment is appropriate under Rule 56, Fed.R.Civ.P., only where, on the basis of undisputed material facts, the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see also* *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In this matter, plaintiffs have not carried their burden to demonstrate that judgment as a matter of law is warranted on the basis of the undisputed factual record. They have not presented a list of undisputed facts in violation of the local rules; they have not provided citations to the record that would support the conclusion that judgment is warranted as a matter of law; and, indeed, their legal argument is largely irrelevant to the matters on which they seek summary judgment. Accordingly, plaintiffs' motion for partial summary judgment is appropriately denied, and defendants' motion to strike plaintiffs' summary judgment pleadings should be denied as moot.

### V. Referral to Magistrate Judge

**\*19** Pursuant to 28 U.S.C. § 636(b)(1)(B), this matter is appropriately referred to the magistrate judge to prepare a report and recommendation containing factual findings and legal conclusions concerning *all* outstanding issues for trial, including (i) whether each plaintiff has proven that he or she is entitled to rescission of the UPA to which he or she is a party, (ii) whether defendants have proven that an affirmative defense applies to prohibit rescission with respect to each plaintiff, and (iii) whether each plaintiff has proven entitlement to any other remedy.

The magistrate judge may conduct evidentiary hearings and all other proceedings necessary in order to prepare this report and recommendation.

### VI. Conclusion

To summarize, plaintiffs' counsel's disregard for binding deadlines, and his material misrepresentations in pleadings filed in this Court, warrant dismissal of 82 of 120 of the plaintiffs in this case and an award of fees and costs to defendants. Additionally, plaintiffs' objections to the magistrate judge's orders compelling discovery are overruled, and the parties' objections to the magistrate judge's September 29, 2009 report and recommendation are sustained in part and overruled in part as set forth herein. Plaintiffs' motion for partial summary judgment is appropriately denied, and the matter is referred to the magistrate judge for evidentiary hearings on all triable issues.

An appropriate Order will issue.

### ORDER

T.S. ELLIS, III, District Judge.

For the reasons stated in the accompanying Memorandum Opinion of even date,

It is hereby **ORDERED** that the magistrate judge's report and recommendation on sanctions (Docket No. 186) is **ADOPTED IN PART** and **MODIFIED IN PART** in accordance with the accompanying Memorandum Opinion.

Accordingly, it is hereby **ORDERED** that the fol-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
**(Cite as: 2010 WL 1039875 (E.D.Va.))**

lowing plaintiffs are **DISMISSED** from this case:
Ollie An Hong, Kwang Y. Choi, Stephen Ghang,
Sung Bun Jung, Maria Rosa Cisneros, Hyunsook
Kim, Suhee Chris Park, Xiao Pei Yang, Eun Soo Lee,
Minna Lee, Hyo Sook Yun, Sung Hee Oh, James B.
Lai, Jeonghe Lal, Eunice Cha, Nikki Kim, Ha Il
Chung, Sok K. Yi, Hyung Min Kim, Jiin Kim, Lisa
Young Hee Kim, Jung Hae Kim, Hyung Nim Yi,
Gloria Eunmi Lim, Kum Hee Kang, Kevin Wu, Kelly
Wu, Chun Won Hwang, Kang Hon Lee, Kyong Eun
Lim, Young Hoon Jung, Il Hwan Oh, Ronnie Kim,
Joo Ho Song, Jae Sun Park, Young R. Chang, Jong
Hui Lee, Uyn Son Yang, Xia Jin. Hyunghee Kim,
Soonae Jeon, Olivia Shanelle Kim, Emily Sunwoon
Kim, Karen Sun Lee, Janice S. Ko, Linda T. Ko, Hye
Yon Ko, Tongil Lee, Giel Lee, Bong Hyun Yoo,
Chang Jeon Lee, Sun Hee Song, Chang Hyo Na,
Sung Hee Na, Jennifer Young Kim, Cindy S. Jeong,
Yun Ok Choi, Hae Sook Yoo, Yong Suk Stevenson,
Anh Doan, Dorn Trang, Yang Kim, Soon Ja Kim,
Soon Hak Kwon, Junghee Ro, Soon Ryeah Lee, Sung
Ho Lee, Ji Hee Nam, Kun Soo Han, Chien Ming Yee,
Haeng Ja Kim, Byoung C. Cho, Sae Rho Mee Kim,
Leah S. Her, Jerry Kim, Joung Ran Kim, Song C. Ho,
Jeong Eui Lee, Ryan Jin Lee, Sungkyoon Park, Jessy
Mansup Hyun, and Min Lee Hyun.

It is further **ORDERED** that defendants are
**AWARDED** costs, including reasonable attorney's
fees, incurred in filing their third motion for sanc-
tions, to be paid by the above-named plaintiffs, addi-
tional plaintiffs Rahul Chaudhry, Jin O'Neill, Oriole
O'Neill, Chris Padden, Han Ho Kim, Sinthia Kim,
Maria Bras, Jung N. Cho, Annie J. Cho, Joon Yong
Ann, Yang Ja Kim, Julia Kim, Lydia Cotto, Kyong
Chu Ashby, and Ahlam Abdel Meguid Sharaf Aldin,
and plaintiffs' counsel Henry St. John Fitzgerald.

**\*20** It is further **ORDERED** that plaintiffs' objec-
tions (Docket No. 195) to the magistrate judge's re-
port and recommendation on sanctions are **OVER-
RULED.**

It is further **ORDERED** that this matter is **RE-
FERRED** to the magistrate judge for a report and
recommendation concerning the costs, including rea-
sonable attorney's fees, to which defendants are enti-
tled in connection with their third motion for sanc-
tions.

It is further **ORDERED** that defendants' motion for

fees and costs (Docket No. 198) and defendants' mo-
tion for leave to file a supplemental declaration in
support of that motion (Docket No. 211) are **RE-
FERRED** to the magistrate judge.

It is further **ORDERED** that plaintiffs' objections
(Docket Nos. 143 & 178) to the magistrate judge's
orders compelling discovery are **OVERRULED** in
part and **OVERRULED AS MOOT** in part, as
specified by the accompanying Memorandum Opin-
ion.

It is further **ORDERED** that the magistrate judge's
report and recommendation of September 29, 2009
(Docket No. 162) is **ADOPTED IN PART** and
**MODIFIED IN PART** in accordance with the ac-
companying Memorandum Opinion.

It is further **ORDERED** that plaintiffs' objections
(Docket No. 177) to the September 29, 2009 report
and recommendation are **SUSTAINED IN PART**
and **OVERRULED IN PART** in accordance with
the accompanying Memorandum Opinion.

It is further **ORDERED** that defendants' objections
(Docket No. 179) to the September 29, 2009 report
and recommendation are **OVERRULED.**

It is further **ORDERED** that plaintiffs' motion for
partial summary judgment (Docket No. 192) is **DE-
NIED.** Accordingly, defendants' motion to strike
plaintiffs' motion for partial summary judgment
(Docket No. 204) is **DENIED AS MOOT.**

It is further **ORDERED** that this matter is **RE-
FERRED** to the magistrate judge for a report and
recommendation, in accordance with the accompany-
ing Memorandum Opinion, containing findings and
conclusions on all remaining triable issues in this
case.

The Clerk is directed to send a copy of this Order to
all counsel of record.

> FN1. For a summary of the underlying facts,
> see *Plant v. Merrifield*, No. 1:08cv374
> (E.D.Va. Mar. 16, 2009); *see also Ahn v.
> Merrifield*, 584 F.Supp.2d 848
> (E.D.Va.2008).

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
**(Cite as: 2010 WL 1039875 (E.D.Va.))**

FN2. Oral argument was heard on January 29, 2010, and additional oral argument on defendants' motion to strike pleadings was heard on February 12, 2010.

FN3. Contrary to plaintiffs' counsel's repeated assertion in the pleadings, the October 7, 2009 Order staying proceedings was entered by the undersigned district judge and not by the magistrate judge.

FN4. These 82 plaintiffs are: Ollie An Hong, Kwang Y. Choi, Stephen Ghang, Sung Bun Jung, Maria Rosa Cisneros, Hyunsook Kim, Suhee Chris Park, Xiao Pei Yang, Eun Soo Lee, Minna Lee, Hyo Sook Yun, Sung Hee Oh, James B. Lai, Jeonghe Lal, Eunice Cha, Nikki Kim, Ha Il Chung, Sok K. Yi, Hyung Min Kim, Jiin Kim, Lisa Young Hee Kim, Jung Hae Kim, Hyung Nim Yi, Gloria Eunmi Lim, Kum Hee Kang, Kevin Wu, Kelly Wu, Chun Won Hwang, Kang Hon Lee, Kyong Eun Lim, Young Hoon Jung, Il Hwan Oh, Ronnie Kim, Joo Ho Song Jae Sun Park, Young R. Chang, Jong Hui Lee, Uyn Son Yang, Xia Jin. Hyunghee Kim, Soonae Jeon, Olivia Shanelle Kim, Emily Sunwoon Kim, Karen Sun Lee, Janice S. Ko, Linda T. Ko, Hye Yon Ko, Tongil Lee, Giel Lee, Bong Hyun Yoo, Chang Jeon Lee, Sun Hee Song, Chang Hyo Na Sung Hee Na, Jennifer Young Kim, Cindy S. Jeong, Yun Ok Choi, Hae Sook Yoo, Yong Suk Stevenson, Anh Doan, Dorn Trang, Yang Kim, Soon Ja Kim, Soon Hak Kwon, Junghee Ro Soon Ryeah Lee, Sung Ho Lee, Ji Hee Nam, Kun Soo Han, Chien Ming Yee, Haeng Ja Kim Byoung C. Cho, Sae Rho Mee Kim, Leah S. Her, Jerry Kim, Joung Ran Kim, Song C. Ho, Jeong Eui Lee, Ryan Jin Lee, Sungkyoon Park, Jessy Mansup Hyun, and Min Lee Hyun.

FN5. These 97 plaintiffs are the 82 plaintiffs named in the immediately preceding footnote plus: Rahul Chaudhry, Jin O'Neill, Oriole O'Neill, Chris Padden, Han Ho Kim, Sinthia Kim Maria Bras, Jung N. Cho, Annie J. Cho, Joon Yong Ahn, Yang Ja Kim, Julia Kim, Lydia Cotto Kyong Chu Ashby, and Ahlam Abdel Meguid Sharaf Aldin. It is

worth noting that, pursuant to the magistrate judge's recommendation, it would have been entirely appropriate for all of these 97 plaintiffs to be dismissed from the case. Nonetheless, because these fifteen plaintiffs did eventually comply, at least in part, with the discovery request, the amount of prejudice to defendants was less grave, and thus, they will be allowed to remain in the case.

FN6. Plaintiffs' objection to the September 25, 2009 order compelling discovery does not specifically identify the interrogatories to which the objections applied, a violation of Rule 72 Fed.R.Civ.P. Nonetheless, because the objection was essentially identical in substance to the objection to the September 11, 2009 order, it is assumed that objections were properly made to interrogatories 2 and 9.

FN7. The defense was stricken for failure to allege fraud with specificity in the answer as required by Rule 9(b), Fed.R.Civ.P.

FN8. It is not entirely clear whose deposition it is to which plaintiffs object. The objection describes the individual in question only as "Plaintiff Lee." "Lee" is the last name of several plaintiffs.

FN9. Moreover, barring exceptional circumstances, plaintiffs must be available for a deposition in the district in which the action was brought. See 8A Federal Practice & Procedure § 2112.

FN10. See also United States v. Kimbell Foods, 440 U.S. 715, 728, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) (holding that federal programs that require uniform application "necessitate formulation of controlling federal rules"); Caleb Nelson, The Persistence of General Law, 106 Colum. L.Rev. 503, 548 (2006) ("Absent contrary guidance from Congress, statutes creating federal causes of action to enforce federal duties are typically understood not only to federalize questions about the proper measure of damages, but also to draw the substance of the federal rules from principles of general law.").

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
**(Cite as: 2010 WL 1039875 (E.D.Va.))**

FN11. *See Griggs,* 385 F.3d at 447 n. 4 ("Because no statutory provision addresses the contours of the remedy that we have concluded is proper under [ERISA] section 502(a)(3), the question is one of federal common law.").

FN12. *See Shipley v. Ark. Blue Cross & Blue Shield,* 333 F.3d 898, 902 (8th Cir.2003); *Provident Life & Accident Ins. Co. v. Sharpless,* 364 F.3d 634, 639-40 (5th Cir.2004); *Sec. Life Ins. Co. of Am. v. Meyling,* 146 F.3d 1184, 1191 (9th Cir.1998); *Davies v. Centennial Life Ins. Co.,* 128 F.3d 934, 943-44 (6th Cir.1997); *Hauser v. Life Gen. Sec. Ins. Co.,* 56 F.3d 1330, 1333-35 (11th Cir.1995); *see also Griggs,* 385 F.3d at 446 n. 3 (citing cases requiring materiality with approval).

FN13. It is worth noting that adoption of the materiality requirement for rescission under ILSFDA is further supported by ILSFDA's prohibition of obtaining money or property by means of "any omission to state a material fact necessary in order to make the statements made ... not misleading." § 1703(a)(2)(B).

FN14. Defendants are, of course, free to file a motion to dismiss for lack of subject-matter jurisdiction at any time pursuant to Rule 12(h).

FN15. Nonetheless, the magistrate judge also correctly noted that plaintiffs do not appear to have a viable claim for relief for a violation of § 1703(b). *See R & R II* at 13 n. 7.

FN16. Particularly relevant to the application of the doctrine of laches to this case is the Supreme Court's comment that the doctrine is "peculiarly applicable to speculative property ..., which is liable to large and constant fluctuations in value." *Grymes v. Sanders,* 93 U.S. 55, 62, 23 L.Ed. 798 (1876) (citing cases and treatises). Indeed, defendants allege that the property in issue here was purchased by plaintiffs for precisely the same speculative purposes as the Virginia land in issue in the *Grymes* case.

FN17. The relevant contract language states, in bold, large-case type:

**WAIVER OF JURY TRIAL. PURCHASER AND DECLARANT EACH WAIVE TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM BROUGHT BY EITHER OF THE PARTIES HERETO AGAINST THE OTHER, ON OR WITH RESPECT TO ANY MATTER WHATSOEVER RELATING IN ANY WAY TO THIS AGREEMENT THE CONDOMINIUM, CONDOMINIUM UNIT OR OTHERWISE, INCLUDING BUT NOT LIMITED TO CLAIMS ARISING IN CONTRACT TORT NEGLIGENCE, FRAUD, OR BY ANY APPLICABLE STATUTE, OR IN ANY MANNER, DIRECTLY OR INDIRECTLY ARISING OUT OF THIS TRANSACTION AND/OR RELATING TO THE PROPERTY.**

FN18. It is clear that Virginia law governs interpretation of the UPAs. They are contracts made in Virginia for the construction and sale of property in Virginia. *See Food Consulting Group, Inc. v. Azzalino,* 270 F.3d 821, 827 (9th Cir.2001) (applying California law to contractual interpretation in federal copyright case); *Med. Mutual of Ohio v. deSoto,* 45 F.3d 561, 570 (6th Cir.2001) ("In the absence of any established body of federal choice of law rules we begin with the Restatement (Second) of Conflicts of Law."); *Barry v. Midtown Miami No. 4, LLC,* 651 F.Supp.2d 1320, 1324 (S.D.Fla.2008) (in ILSFDA claim, applying state law to interpret land sale contract). It is pellucidly clear-and the parties do not dispute-that there is no federal interest in uniformity of interpretation of land sale contracts and Virginia law applies to interpretation of the UPAs under any choice of law rule.

FN19. *See* Rule 15(a)(1), Fed.R.Civ.P.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)
**(Cite as: 2010 WL 1039875 (E.D.Va.))**

> (permitting pre-trial amendment of a plead-
> ing as a matter of course within twenty-one
> days of service).

E.D.Va.,2010.
Plant v. Merrifield Town Center Ltd. Partnership
--- F.R.D. ----, 2010 WL 1039875 (E.D.Va.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit J

Westlaw.

Slip Copy, 2009 WL 1346394 (E.D.N.Y.)
**(Cite as: 2009 WL 1346394 (E.D.N.Y.))**

℅ Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Alexander ASHKENAZI, as Trustee of The Halpert
Alexander Trust, Plaintiff,
v.
LINCOLN NATIONAL LIFE INSURANCE CO.,
f/k/a Jefferson Pilot Life Insurance Co., Defendant.
**No. 08 CV 3235(ENV).**

May 13, 2009.

David Benhaim, Ira S. Lipsius, Schindel, Farman,
Lipsius, Gardner & Rabinovich LLP, New York, NY,
for Plaintiff.

Colleen M. Duffy, Steven Paul Del Mauro, McElroy,
Deutsch, Mulvaney & Carpenter, LLP, Newark, NJ,
for Defendant.

### MEMORANDUM AND ORDER

CHERYL L. POLLAK, United States Magistrate
Judge.

*1 On June 30, 2008, plaintiff Alexander Ashkenazi
("Ashkenazi") commenced this action, seeking a dec-
laration that two life insurance policies issued by
defendant Lincoln National Life Insurance Co. ("Lin-
coln National"), insuring the life of Mali Halpert
("Halpert"), remain in effect despite Lincoln Na-
tional's attempted cancellation of the policies for fail-
ure to pay the premiums. Currently pending before
the Court is plaintiff's application for a Protective
Order, pursuant to Federal Rule of Civil Procedure
26(c), on the grounds that defendant's discovery re-
quests seek material and information that is not rele-
vant to any claim or defense in the action or to plain-
tiff's credibility.

For the reasons set forth below, plaintiff's motion for
a protective order is denied.

### FACTUAL BACKGROUND

In June 2005, Lincoln National [FN1] issued two poli-
cies of life insurance in the name of Mali Halpert, the
insured, with a total value of $4,000,000 in death
benefits (the "policies"). (PL Ltr. [FN2] at 1; Def. Ltr.
[FN3] at 7). According to defendant, at the time of ap-
plication, Ms. Halpert was an 82-year-old retired
woman from Hungary who represented that she was
worth $9.6 million dollars with an income of
$490,000 per year. (Def. Ltr. at 5, Exs. 3, 4). Defen-
dant has submitted a copy of an application [FN4] which
indicates that Halpert was healthy and had no exist-
ing life insurance, although she had one additional
pending application for insurance. (*Id.*)

> FN1. The policies were issued by Jefferson
> Pilot Financial, the predecessor to Lincoln
> National.

> FN2. Citations to "Pl. Ltr." refer to the
> plaintiff's Amended Letter Regarding Dis-
> covery, submitted March 5, 2009, and the
> exhibits attached to plaintiff's original letter,
> submitted March 4, 2009.

> FN3. Citations to "Def. Ltr." refer to the De-
> fendant's letter in opposition to plaintiff's
> letter application for protective order, sub-
> mitted March 11, 2009.

> FN4. Although it is clear from the parties'
> submissions that Ashkenazi was issued two
> $2,000,000 insurance policies
> (Def.Ltr.Exs.9, 10), it is not entirely clear
> which policy or policies the application pa-
> perwork submitted by Lincoln National cor-
> responds to. It appears that a two-part appli-
> cation was required to obtain the life insur-
> ance policies. Lincoln National has provided
> three versions of the first part, one of which
> was submitted on its own (*id.* Ex. 3), and
> two of which were attached to the end of the
> respective insurance policies. (*Id.* Exs. 9,
> 10). Each of the applications sought cover-
> age in the amount of $2,000,000. (*Id.* Exs. 3,
> 9, 10). The handwriting on each of the ap-
> plications appears to be different (*id.*), al-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1346394 (E.D.N.Y.)
**(Cite as: 2009 WL 1346394 (E.D.N.Y.))**

though the signature pages on the two versions submitted with the policies appear to be identical. (*Id.* Exs. 9, 10). Those two signature pages are dated July 14, 2005. (*Id.*) The other signature page is dated July 2005; the day illegible. (*Id.* Ex. 3). Lincoln National submits only one version of the second part of the application (*id.* Ex. 4), which is dated February 3, 2005, and appears to have been completed by a medical examiner.

Ashkenazi is the trustee for the listed owner of the policies, the Halpert Alexander Trust (the "Trust"). Defendants claim that Ashkenazi procured these "stranger-originated" certificates of insurance ("STOLI"s) despite the fact that neither the Trust nor Ashkenazi has any known or stated insurable interest in the insured. (Def. Ltr. at 1).[FN5] According to Lincoln National, at the time the certificates were issued, Halpert lived in Brooklyn, but all the application paperwork was signed, executed, and delivered in New Jersey. (Def. Ltr. at 5). Similarly, defendant claims that the two certificates of life insurance issued by Lincoln National were delivered to Ashkenazi at his Irvington, New Jersey address on July 4, 2005. (Def. Ltr. at 7, Exs. 8, 9, 10). Lincoln National states that at the time of the issuance of the certificates, Lincoln National was not authorized to conduct insurance business in New York State. (*Id.*)

> FN5. Defendant also asserts that there has been no evidence or trust agreement produced by plaintiff to demonstrate that he was properly appointed as trustee or that identifies any beneficiary who does have an interest in the insured. (Def. Ltr. at 1). Indeed, defendant submits information and documentation suggesting that Ashkenazi has been sued in several other cases on claims that Ashkenazi obtained insurance death benefits from various insurers on the lives of elderly women with whom Ashkenazi had no apparent insurable interest. (Def. Ltr. at 2, 4 n. 2, Exs. 1, 2).

Defendant notes that according to Ashkenazi, the owner and beneficiary of the policies was the Trust, which had an address located at 1200 Clinton Avenue, Irvington, New Jersey. (Def.Ltr.Ex. 4). Defendant further claims that as trustee for the designated

owner of the policies, Ashkenazi played a significant role in completing the application paperwork for the certificates in question, making numerous representations as to the insured's income, net worth and health. (Def. Ltr. at 6). Defendant claims that Ashkenazi "executed" Part II of the life insurance application, entitled "Answers to Medical Examiner," though it is unclear whether his signature appears on the document. (*Id.;* Ex. 4). Among other things, defendant notes that this particular form, which asserts that Halpert was in perfect health, contains a crossed-out signature that appears to have been replaced by Halpert's signature. (*Id.;* Ex. 4). Ashkenazi also completed an "Amendment to Application for Insurance" for both of the certificates in question, designating the owner and beneficiary of the certificates as "The Halpert Alexander Trust dated April 1, 2005, Alexander Ashkenazi, trustee." (Def. Ltr. at 6-7, Ex. 5). This paperwork was signed on July 4, 2005 in Irving-ton, N.J. (*Id* .) In December 2006, Lincoln National claims it received a request to change the address of the policy owner-Ashkenazi-from the Irvington, New Jersey address to an address in New York. (Def. Ltr. at 7).

**\*2** On June 27, 2007 and July 7, 2007, the two certificates of insurance lapsed for non-payment of the premiums. (Def. Ltr. at 7; Exs. 11, 12). Although plaintiff does not dispute that the premium payments were not made in a timely fashion (Pl. Ltr. at 1), plaintiff claims that the lapse notice did not comply with New York Insurance Law § 3211 because Lincoln National failed to send the notice to the insured. (*Id.* at 1-2).

Ashkenazi commenced this action on June 30, 2008 in the Supreme Court of the State of New York, Kings County, seeking a declaration that the policies remain in effect. (Pl. Ltr. at 1-2; Def. Ltr. Ex 13). Defendant removed the case to federal court on August 7, 2008, denying the allegations of the Complaint and asserting several affirmative defenses, including that plaintiff's claims are barred by the doctrine of unjust enrichment and by the terms of the policies. (Def. Ltr. at 8, Ex. 14). The parties dispute the location of the issuance and delivery of the certificates and disagree as to whether New York or New Jersey law should apply. Ashkenazi claims the certificates were issued and delivered in New York and that the only legal question presented in this case is "whether the delivery of the policies to the retail

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1346394 (E.D.N.Y.)
**(Cite as: 2009 WL 1346394 (E.D.N.Y.))**

agent in New York qualifies as delivery in New York for the purpose of <u>New York Ins. Law § 3211</u>." (Pl. Ltr. at 2).<u>FN6</u>

> <u>FN6.</u> The Court notes that although this choice-of-law question is discussed in plaintiff's letter, the parties have not briefed the question and part of the defendant's requested discovery is designed to obtain information relevant to the choice of law determination. Thus, the Court has not addressed this issue.

On or about December 8, 2008, plaintiff received Lincoln National's discovery demands, seeking among other things information relating to the financial and medical representations made in the original application for insurance. (Pl. Ltr. at 2, Ex. 2). Following plaintiff's objections to the number and breadth of the demands (*id.* at 2, Ex. 1), Lincoln National served a revised set of demands on February 26, 2009, the majority of which continue to seek information relating to the circumstances surrounding the initial application process and plaintiff's relationship to the insured. (*Id.* at 2, Ex. 2). By letter dated March 4, 2009, plaintiff seeks a protective order precluding defendant from obtaining much of the information demanded, which plaintiff groups into three categories that he believes are outside the scope of the litigation: 1) the insured's actual health at the time of the application; 2) the insured's actual net worth; and 3) information relating to the "insurable interest" the plaintiff has in the policy. (*Id.* at 2, Ex. 3).

*DISCUSSION*

A. *Standard for Protective Order*

<u>Federal Rule of Civil Procedure 26(b)(1)</u> provides that:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

**\*3** <u>Fed. R. Civ. P. 26(b)(1)</u>. This rule "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253. 351 (1978); *see also Zanowic v. Reno,* No. 97 CV 5292, 2000 U.S. Dist. LEXIS 13845, at \*5, 2000 WL 1376251 (S.D.N.Y. Sept. 25, 2000); *Degulis v. LCR Biotechnology, Inc.,* 176 F.R.D. 123, 125 (S.D.N.Y.1997). Thus, discovery may be allowed for subjects not directly related to the main focus of a litigated claim, so long as the court determines that the requests could reasonably lead to the discovery of information that may ultimately be relevant.

Under <u>Rule 26(c)</u>, however, the Court may issue a protective order upon a showing of good cause. Specifically, the Rule provides in relevant part that "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." <u>Fed.R.Civ.P. 26(c)</u>. The burden is on the party seeking the protective order to demonstrate good cause. *Dove v. Atlantic Capital Corp.,* 963 F.2d 15, 19 (2d Cir.1992) (noting that where the requested discovery is " 'relevant, the burden is upon the party seeking non-disclosure or a protective order to show good cause' " (citation omitted)). In general, good cause exists " 'when a party shows that disclosure will result in a clearly defined, specific and serious injury.' " *Pitsiladi v. Guerrero,* No. 07 CV 6605, 2008 WL 5454234, at \*2 (S.D.N.Y. Dec.30, 2008) (quoting *In Re Terrorist Attacks on Sept. 11, 2001,* 454 F.Supp.2d 220, 222 (S.D.N.Y.2006)).<u>FN7</u> Conclusory assertions of harm are insufficient. *Id.; Rofail v. United States,* 227 F.R.D. 53, 54 (E.D.N.Y.2005). Courts have found good cause to exist in a wide range of contexts. *See, e.g., Chembio Diagnostic Sys. v. Saliva Diagnostic Sys.,* 236 F.R.D. 129 (E.D.N.Y.2006) (noting that where information is a trade secret under <u>Rule 26(c)(7)</u>, a disclosure may be blocked upon a showing that the harm caused by disclosure would outweigh the need for the information by the party seeking it); *Topo v. Dhir,* 210 F.R.D. 76, 78 (S.D.N.Y.2002) (granting protective order as to plaintiff's immigration status where such status was merely a collateral issue in the case); *Sheehan v. Metro. Life Ins. Co.,* No. 01 CV 9182, 2002 U.S. Dist. LEXIS 11789, at \*16-17, 2002 WL 1424592

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1346394 (E.D.N.Y.)
**(Cite as: 2009 WL 1346394 (E.D.N.Y.))**

(S.D.N.Y. June 28, 2002) (precluding as overly burdensome a request for documents regarding every transaction between employer and insurer in a suit by an employee against the insurer).

> FN7. *But see* Topo v. Dhir, 210 F.R.D. 76, 77-78 (S.D.N.Y.2002) (rejecting specificity requirement); *see also* Condit v. Dunne, 225 F.R.D. 113, 116 (S.D.N.Y.2004) (discussing disagreement as to proper standard).

The determination of whether a protective order should issue is "highly fact-contingent," and " 'Rule 26(c) confers broad discretion on the trial court.' " Condit v. Dunne, 225 F.R.D. at 116 (quoting Seattle Times Co. v. Rhinehart, 467 U.S. 20, 36, 104 S.Ct. 2199, 81 L.Ed.2d 17 (1984)). The court must balance the moving party's burden of production against that of the nonmoving party in full discovery. *See* Rofail v. United States, 227 F.R.D. at 55; Hasbrouck v. BankAmerica Hous. Servs., 187 F.R.D. 453, 455 (N.D.N.Y.1999).

### B. Plaintiff's Arguments

**\*4** In seeking the instant protective order, plaintiff argues that the defendant's requests seek discovery of matters unrelated to the current case. Plaintiff contends that the issues presented by this case are limited to the question of whether the notices of lapse complied with New York Insurance Law. Plaintiff contends that the information sought by defendant does not relate to any claim or affirmative defense raised in the pleadings, and that to the extent that defendant is attempting to raise claims of invalidity or fraudulent misrepresentation in applying for the policies, plaintiff argues that such defenses are barred by the incontestability clauses required under New York and New Jersey law because the policies were activated more than two years before they allegedly lapsed. *See* Security Mut. Life Ins. Co. of New York v. Herpaul, 36 A.D.3d 449, 450, 827 N.Y.S.2d 141, 142 (1st Dep't 2007) (applying New York and New Jersey incontestability provisions). Although there may be a question as to whether New York or New Jersey law governs this case, plaintiff contends that because the policies in question were active for over two years, they are incontestable both under New York Insurance Law § 3203(a)(3) (providing "that the policy shall be incontestable after being in force during the life of the insured for a period of two years from its

date of issue") and under New Jersey Statute § 17B:25-4 (providing that "[t]here shall be a provision that the policy ... shall be incontestable, except for nonpayment of premiums, after it has been in force during the lifetime of the insured for a period of 2 years from its date of issue").

### C. Defendant's Arguments

Defendant argues that its discovery demands are justified because the information is relevant to its defense of unjust enrichment. It bases its argument on three theories: 1) that there was no insurable interest at the time of application for the policies; 2) that the policies violate public policy; and 3) that the policies violate the New Jersey Insurance Fraud Prevention Act. All three theories are discussed below.

### 1. Insurable Interest

First, Lincoln National argues that the law of both New York and New Jersey provides that a policy issued in the absence of an underlying insurable interest [FN8] is to be voided, regardless of the incontestability provisions. (Def. Ltr. at 11-12). Specifically, both New Jersey law and New York law require that there must be an insurable interest at the time an individual procures a life insurance policy. N.J. Stat. Ann. § 17B:24-1.1(b); N.Y. Ins. Law § 3205(b)(2).

> FN8. New York law defines the term "insurable interest" as
>
> (A) in the case of persons closely related by blood or by law, a substantial interest engendered by love and affection; (B) in the case of other persons, a lawful and substantial economic interest in the continued life, health or bodily safety of the person insured, as distinguished from an interest which would arise only by, or would be enhanced in value by, the death, disablement or injury of the insured.
>
> N.Y. Ins. Law § 3205(a)(1). New Jersey law defines the term as follows:
>
> An individual has an insurable interest in the life, health and bodily safety of another individual if he has an expectation

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1346394 (E.D.N.Y.)
**(Cite as: 2009 WL 1346394 (E.D.N.Y.))**

of pecuniary advantage through the continued life, health and bodily safety of that individual and consequent loss by reason of his death or disability.... An individual has an insurable interest in the life, health and bodily safety of another individual to whom he is closely related by blood or by law and in whom he has a substantial interest engendered by love and affection.

N.J. Stat. Ann. § 17B:24-1.l(a)(2)-(3).

Defendant points out that New Jersey law explicitly states that "[a]n insurer shall be entitled to rely upon all statements ... made by an applicant for insurance relating to the insurable interest of the applicant in the insured and no insurer shall incur legal liability ... by virtue of any untrue statements ... so relied upon in good faith by the insurer." N.J. Stat. Ann. § 17B:24-1.1(d); see also Fioretti v. Mass. Gen. Life Ins. Co., 53 F.3d 1228, 1236-37 (11th Cir.1995) (applying New Jersey law to rescind life insurance policy on grounds of fraud after expiration of contestability period); Ledley v. William Penn Life Ins. Co., 138 N.J. 627, 635, 651 A.2d 92, 95 (1995) (noting that generally, "[e]ven after the expiration of the contestability period, an insurer may deny a claim if the insured committed fraud in the policy application"); Tulipano v. U.S. Life Ins. Co., 57 N.J.Super. 269, 277, 154 A.2d 645, 650 (App.Div.1959) (noting that "an insurance policy violative of public policy or good morals cannot be enforced simply because the incontestability period has run"). Thus, defendant argues that under New Jersey law, where the insurer can show that there was no insurable interest at the time of application, the policy may be voided, despite the incontestability provision.

**\*5** Defendant also argues that New York courts have held that if the facts surrounding the creation and issuance of an insurance policy fail to demonstrate that a proper contract was entered into, then the incontestability clause will not preclude an action for recission by the insurer. (Def. Ltr. at 12-14) (citing American Mayflower Life Ins. Co. of New York v. Moskowitz, 17 A.D.3d 289, 794 N.Y.S.2d 32 (1st Dep't 2005) (holding that if there is a forged signature to transfer ownership of a life insurance policy to a stranger, "the incontestability clause could not apply, since the provisions for incontestability inure to the benefit of the insured and his beneficiary, or to the

benefit of a bona fide assignee, but not a stranger" (citing 46 C.J.S.. Ins. § 859))). Defendant claims, therefore, that under the law of either state, the policies should be voided if the proper insurable interest was lacking, even if the contestability period has expired.

*2. Public Policy*

Defendant also contends that the policies should be voided as unenforceable contracts if it can be shown that Ashkenazi's conduct was violative of public policy, apart from the statutory insurable interest requirements. (Def. Ltr. at 16). Lincoln National alleges that Ashkenazi is "an investor who routinely violates insurable interest laws and misrepresents the health and/or income of the insured to procure" STOLI policies. (*Id.*) According to defendant, a typical STOLI policy is created when "an individual, typically an elderly one, procures life insurance on his own life in order to subsequently assign the policy to a third party following the lapse of the two-year contestability period." Lincoln National Life Ins. Co. v. Calhoun, 596 F.Supp.2d 882, 884 (D.N.J.2009). Such policies violate public policy, defendant argues, because they "enable the insured to obtain ready cash by selling his policy to a stranger whose only interest in the insured is his early demise." Life Prod. Clearing LLC v. Angel, 530 F.Supp.2d 646, 648 (S.D.N.Y.2008). Defendant claims its discovery requests may produce evidence demonstrating that the policies at issue in this case are in fact STOLI policies, obtained in violation of public policy, and thus are unenforceable.

Lincoln National notes that Ashkenazi has been a party in similar suits involving other alleged STOLI policies, see, e.g., Ashkenazi v. AXA Equitable Life Ins. Co., No. 07 CV 115034 (N.Y. Sup.Ct. compl. filed Nov. 9, 2007) (contained in Def. Ltr. Ex. 2), including one that involves the same named insured as in this case. See Berskhire Settlements, Inc. v. Ashkenazi, No. 09 CV 6 (E.D.N.Y. compl. filed Jan. 5, 2009) (contained in Def. Ltr. Ex. 1). Defendant states that this pattern of misrepresentation could support a ruling voiding the policies because they would fall under the STOLI category, and thus their enforcement would violate public policy. (Def. Ltr. at 16). Lincoln National contends that its discovery requests are necessary to fully understand Ashkenazi's actions and determine if the policies are STOLI policies that

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2009 WL 1346394 (E.D.N.Y.)
**(Cite as: 2009 WL 1346394 (E.D.N.Y.))**

may be voided.

3. *New Jersey Insurance Fraud Prevention Act*

**\*6** Finally, defendant points to the New Jersey Insurance Fraud Prevention Act, N.J. Stat. Ann §§ 17:33A-1 *et seq.* A person violates this statute if he "[p]repares or makes any written or oral statement, intended to be presented to any insurance company ... for the purpose of obtaining ... an insurance policy, knowing that the statement contains any false or misleading information concerning any fact or thing material to an insurance application or contract." *Id.* § 17:33A-4. Defendant contends that its discovery demands are necessary to explore whether Ashkenazi made misrepresentations that would give rise to a counterclaim under the Act. (Def. Ltr. at 19-22).

D. *Analysis*

The discovery rules are interpreted broadly so as to ensure that "civil trials are not conducted in the dark." *Estee Lauder, Inc. v. Fragrance Counter, Inc.,* 189 F.R.D. 269, 274 (S.D.N.Y.1999) (citing *Schlagenhauf v. Holder,* 379 U.S. 104, 114-15, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964)); *see* Fed.R.Civ.P. 26(b)(1). Defendant has pleaded the defense of unjust enrichment in its Answer, and the discovery sought may be relevant to that defense. (Def. Ltr. at 8, Ex. 14). Moreover, while not specifically pleaded in the Answer, defendant has raised a number of additional theories that may provide defenses to plaintiff's incontestability argument, including the absence of an insurable interest and a violation of public policy, evidence of which may be found through the requested discovery. Not only has defendant made an initial showing that Ashkenazi may have a practice of creating STOLI policies for his own personal gain, but Lincoln National's argument in support of this discovery is further strengthened by the existence of the New Jersey Insurance Fraud Prevention Act, if New Jersey law applies. The relevant statutes and caselaw suggest that these defenses may be viable.

Finally, other than the challenge to relevancy, plaintiff has failed to show good cause through specific facts as to why the Protective Order should be granted. Plaintiff contends that the discovery requests are overly burdensome because defendant is asking for information relating to the health and net worth of Halpert, who is not a party to this case. (Pl. Ltr. at 6).

Considering that plaintiff already has supplied some of Halpert's records to defendant, the Court does not believe that it will be unduly burdensome to supply the insured's records to the extent that they are in the possession, custody, and control of either Ashkenazi or the Trust. To the extent the requests intrude on Halpert's privacy (a concern plaintiff has not explicitly raised), that concern can be addressed through a narrow protective order ensuring the confidentiality of the information produced.

*CONCLUSION*

Accordingly, the Court finds that defendant's requested discovery is relevant or may lead to the discovery of admissible evidence relevant to the issues in this case, and given the broad nature of discovery and the potential defenses raised by Lincoln National, plaintiff's motion for an Order of Protection is denied.

**\*7 SO ORDERED.**

E.D.N.Y.,2009.
Ashkenazi v. Lincoln Nat. Life Ins. Co.
Slip Copy, 2009 WL 1346394 (E.D.N.Y.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit K

Westlaw.

Slip Copy, 2010 WL 774878 (E.D.Tex.)
**(Cite as: 2010 WL 774878 (E.D.Tex.))**

**H**Only the Westlaw citation is currently available.

**This decision was reviewed by West editorial staff
and not assigned editorial enhancements.**

United States District Court,
E.D. Texas,
Marshall Division.
TYCO HEALTHCARE GROUP LP, Mallinckrodt
Inc. and Liebel-Flarsheim Company, Plaintiffs,
v.
E-Z-EM, INC. and Acist Medical Systems, Inc., De-
fendants.
**Civil Action No. 2:07-CV-262 (TJW).**

March 2, 2010.

Allison Worthy Buchner, Guy Ruttenberg, Robert G.
Krupka, Thomas Charles Richardson, Kirkland &
Ellis LLP, Los Angeles, CA, for Plaintiffs.

Andrew William Stinson, Deron R. Dacus, Herschel
Tracy Crawford, Ramey & Flock, Tyler, TX, Bruce J.
Rose, Alston & Bird, LLP, Charlotte, NC, David J.
Eklund, Janice Ann Christensen, Keren Ben-Shahar,
Lara A. Holzman, Philippe Bennett, Robert E. Han-
lon, William H. Baker, Alston & Bird LLP, New
York, NY, for Defendants.

### MEMORANDUM OPINION AND ORDER

T. JOHN WARD, District Judge.

**\*1** Pending before the Court is Plaintiffs' Motion to
Compel Defendants to Produce Documents Allegedly
Covered by Defendants' Purported "Settlement Nego-
tiations" Privilege. [Dkt. No. 223]. After considering
the parties' briefing, Plaintiffs' motion is GRANTED.

Plaintiffs Mallinckrodt Inc.and Liebel-Flarsheim, Co.
(collectively "Mallinckrodt") seek communications
between Defendants E-Z-EM, Inc. and Acist Medical
Systems, Inc.'s (collectively "E-Z-EM") counsel and
third-party Medrad that culminated in a license
agreement (hereinafter "settlement negotiations"). E-

Z-EM entered into a license to use the technology
protected by Medrad's "injector control" patents in a
number of E-Z-EM's products, including the accused
products in this case. E-Z-EM Surreply, Exhibit A.
[Dkt. No. 328-2] E-Z-EM argues that the documents
are protected by a settlement negotiations privilege,
as recognized in *Goodyear Tire & Rubber Co. v.
Chiles Power Supply, Inc.,* 332 F.3d 976 (6th
Cir.2003). Mallinckrodt asserts that no such privilege
attaches because 1) the *Goodyear* doctrine has been
called into doubt and, 2) the license agreement was
not related to any litigation.

### I. Legal Standard

Rule 26(b)(1) governs the scope of discovery, provid-
ing that "[p]arties may obtain discovery regarding
any nonprivileged matter that is relevant to any
party's claim or defense" or "appears reasonably cal-
culated to lead to the discovery of admissible evi-
dence." Fed.R.Civ.P. 26(b)(1). The discovery rules
are accorded a broad and liberal treatment to effect
their purpose of adequately informing litigants in
civil trials. *Herbert v. Lando,* 441 U.S. 153, 176, 99
S.Ct. 1635, 60 L.Ed.2d 115 (1979). Nevertheless,
discovery does have "ultimate and necessary bounda-
ries." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S.
340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978)
(quoting *Hickman v. Taylor,* 329 U.S. 495, 507, 67
S.Ct. 385, 91 L.Ed. 451 (1947)).

As the Fifth Circuit has repeatedly instructed, " '[a]
district court has broad discretion in all discovery
matters, and such discretion will not be disturbed
ordinarily unless there are unusual circumstances
showing a clear abuse.' " *Beattie v. Madison County
Sch. Dist.,* 254 F.3d 595, 606 (5th Cir.2001) (quoting
*Kelly v. Syria Shell Petroleum Dev. B. V.,* 213 F.3d
841, 855 (5th Cir.2000)). *See also Alpine View Co. v.
Atlas Copco AB,* 205 F.3d 208, 220 (5th Cir.2000).
The party requesting discovery may move to compel
the disclosure of any materials requested so long as
such discovery is relevant and otherwise discover-
able. *See* FED. R. CIV. P. 37; *Export Worldwide,
Ltd. v. Knight,* 241 F.R.D. 259, 263 (W.D.Tex.2006)
("[Rule] 37(a) [ (3)(B)(iii) and (iv) ] empowers the
court to compel the production of documents ... upon
motion by the party seeking discovery."). Materials

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2010 WL 774878 (E.D.Tex.)
**(Cite as: 2010 WL 774878 (E.D.Tex.))**

and information are discoverable if they are "relevant to any party's claim or defense" or if they "appear [ ] reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1).

## II. Discussion

**\*2** This Court has in the past followed *Goodyear* generally and adopted a bright-line rule that settlement negotiations are privileged while the resulting license agreement is discoverable. *See, e.g., Intergraph Hardware Tech. Co v. Dell Computer Corp.,* No. 2:02-cv-312, Dkt. No. 348 (E.D. Tex. June 2, 2004) (citing to *Goodyear* in a denial of a motion to compel settlement negotiations). A recent decision from the Federal Circuit causes the Court to shift its approach toward the discoverability of settlement negotiations. *See ResQNet.com, Inc. v. Lansa, Inc.,* 594 F.3d 860, 2010 WL 396157 (Fed.Cir.2010).

The Federal Circuit has explained that prior license agreements that result from litigation can be the "most reliable" to the hypothetical negotiation damages analysis and, when performing a reasonable royalty calculation, the Court should consider "the panoply of 'events and facts that occurred thereafter and that could not have been known to or predicted by the hypothesized negotiators.' " *ResQNet,* 594 F.3d 860, 2010 WL 396157 at *11 (quoting *Fromson v. Western Litho Plate & Supply Co.,* 853 F.2d 1568, 1575 (Fed.Cir.1988)). A prior, related settlement agreement, where it exists, may be central to the factfinder's determination of damages using a hypothetical negotiations analysis. Given that the "hypothetical reasonable royalty calculation occurs before litigation and that litigation itself can skew the results of the hypothetical negotiation," the parties are entitled to show whether and to what extent the rate from a prior license agreement is the result of a compromise or reflects a desire to avoid litigation. *Id.* Moreover, the district court should make "factual findings that account[ ] for the technological and economic differences between [previous] licenses and the [patent-insuit]." *Id.* It necessarily follows that, in light of the admissibility and importance of prior related settlement agreements, *ResQNet* suggests that the underlying negotiations are relevant to the calculation of a reasonable royalty using the hypothetical negotiation damages model. The prior license agreements, as before *ResQNet,* must relate to the same patents or comparable technology to be of any value to the hy-

pothetical negotiation process. *Id.* ("[T]he trial court should not rely on unrelated licenses to increase the reasonable royalty rate above rates more clearly linked to the economic demand for the claimed technology.") *See also Lucent Techs., Inc. v. Gateway,* 580 F.3d 1301, 1327-28 (Fed.Cir.2009). The *Goodyear* privilege does not apply in light of the Federal Circuit's ruling in *ResQNet.*

## III. Conclusion

E-Z-EM is ordered to produce the settlement negotiations within 20 days of this order.

It is so ORDERED.

E.D.Tex.,2010.
Tyco Healthcare Group LP v. E-Z-EM, Inc.
Slip Copy, 2010 WL 774878 (E.D.Tex.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit L

Not Reported in F.Supp.2d, 2000 WL 33906936 (D.N.M.)
**(Cite as: 2000 WL 33906936 (D.N.M.))**

**C**Only the Westlaw citation is currently available.

United States District Court, D. New Mexico.
Felix M., as parent and next friend of Jane M., a minor child, Plaintiff,
v.
Robert CORDOVA et al., Defendants.
**No. CIV.99-1287MV/LFGACE.**

March 24, 2000.

Paul J. Kennedy, Esq., Mary Y.C. Han, Esq., for Plaintiff.

Kevin M. Brown, Esq., Brian A. Thomas, Esq., for Defendant Cordova.

MEMORANDUM AND ORDER GRANTING MOTION TO COMPEL PRODUCTION OF INITIAL DISCLOSURES

GARCIA, Magistrate J.

**\*1** THIS MATTER is before the Court on Defendant Robert Cordova's Motion to Compel [Doc. 41]. Defendant seeks to compel Plaintiff to comply with initial disclosure obligations under Fed.R.Civ.P. 26 and D.N.M.LR-Civ. 26. Plaintiff opposes the motion. The Court considered the motion, response and reply. Oral argument is not necessary.

*Background*

Plaintiff's complaint asserts causes of action under 42 U.S.C. § 1983, the Fourteenth Amendment to the United States Constitution, Title IX of the Education Acts of 1972, the Violence Against Women Act, the Rehabilitation Act, the Americans With Disabilities Act, and the New Mexico Tort Claims Act.

Plaintiff contends that Jane M., a special needs child assigned to a special education class, was sexually abused by a teacher. Plaintiff concedes that the child's psychological records are relevant and discoverable as her psychological condition has been placed at issue, but contends that her remaining medical records, including records of any physical condition she has or may have had are not relevant. While Plaintiff's response to the motion asserts that there is no physical injury, a review of the parties' Initial Pretrial Report ("IPTR") contains the following Plaintiff's Contentions:

[1] ... Defendant Cordova posed a substantial risk of serious harm to students

[2] ... Defendant Cordova sexually assaulted and battered the minor Plaintiff, while she was a student in his special education class.

[3] This sexual abuse included, but was not limited to, fondling the minor Plaintiff's breasts and vagina.

[4] Defendant Cordova targeted the minor Plaintiff for sexual abuse because she is female, and because of her heightened vulnerability due to her diagnosed learning disabilities.

[5] ... the minor Plaintiff has suffered substantial damages and injuries, including but not limited to pain and suffering, emotional distress, embarrassment, humiliation, fear, lost educational opportunity, and lasting psychological harm.

(IPTR, Plaintiff's Contentions, p. 5-6)

The very nature of Plaintiff's accusations belie the contention that the child's damages are limited to only psychological injury. For example, Defendant Robert Cordova ("Cordova") is accused of engaging in physically abusive sexual conduct. The specific claim is a sexual assault and battery on a minor. Plaintiff's own contentions demonstrate that Cordova physically and intrusively invaded the child's bodily integrity by physical touching and abusing her intimate and private body parts. As a result of the intrusive, wrongful conduct, Plaintiff claims substantial damages for these injuries. She did not limit her request for damages for emotional distress, embarrassment and humiliation. Indeed, the complaint and IPTR speak of "substantial damages and injuries" "including but not limited to pain and suffering" in

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 33906936 (D.N.M.)
**(Cite as: 2000 WL 33906936 (D.N.M.))**

addition to claims for emotional distress, embarrassment, humiliation, fear, lost opportunities and lasting psychological harm.

**\*2** Plaintiff concedes that the child's psychological records are relevant and discoverable because the claim for psychological injury and damages are at issue. She resists, however, release of any other medical records, contending that such records are not relevant and, in any event, privileged. The Court rejects both contentions. First, Plaintiff fails to distinguish between "relevancy" for discovery purposes and "admissibility" for trial purposes. Indeed, <u>Rule 26(b)(1)</u> states in relevant part:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party ....

The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The Rule's language is subject to broad interpretation. This is consistent with the federal rule policy that the rules of procedure are designed in part to "make a trial less a game of blind man's buff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." <u>United States v. Procter & Gamble Co., 356 U.S. 677, 682, 78 S.Ct. 983, 986-87 (1958)</u>(citing <u>Hickman v. Taylor, 329 U.S. 495, 501, 67 S.Ct. 385, 388-89 (1947)</u>). Because the test of relevancy is significantly broader at the discovery stage, discovery is permitted as to matters which "[are] or may become relevant," <u>Payer, Hewitt & Co. v. Bellanca Corp., 26 F.R.D. 219, 221 (D.Del.1960)</u>, or "might conceivably have a bearing" on the subject matter of the action, <u>Triangle Mfg. Co. v. Paramount Bag Mfg. Co., 35 F.R.D. 540, 542 (E.D.N.Y.1964)</u>.

Conversely, courts will prohibit discovery unless the matters inquired into can have "no possible bearing upon the issues" or are clearly irrelevant to the subject of the action. <u>E.I. duPont de Nemours & Co. v. Deering Milliken Research Corp., 72 F.R.D. 440, 443 (D.Del.1976)</u>; <u>Marshall v. Elec. Hose & Rubber Co., 68 F.R.D. 287 (D.Del.1975)</u>. Here, given the claim for substantial damages, it is appropriate to inquire

whether there are any other causes for the significant damage claims being advanced.

Plaintiff argues that the child's physical condition is not relevant and has no bearing on her present psychological condition. Cordova, however, is not bound to accept Plaintiff's explanation as to the reasons for the child's damages and may explore if there are other possible explanations for the child's injuries or damages. The whole purpose of discovery is to allow a party to be as fully prepared as possible to evaluate the case for settlement or, alternatively, to meet the proofs at trial. *United States v. Procter & Gamble Co.*

For example, a prior physical injury, assault or physical abuse may have caused or contributed to the cause of the child's present psychological condition. As in other psychological abuse or emotional harm cases, a defending party is free to examine whether other life stressors or prior acts may have caused or contributed to the cause of the injured person's present condition. The child's medical records may contain information or may provide insight based on reports to physicians by parents, nurses, teachers or others, information which may either be relevant in itself or may lead to the discovery of other relevant, admissible evidence. As such, this information is subject to discovery.

**\*3** Plaintiff also objects to production of medical records because of New Mexico's physician-patient privilege. Plaintiff relies on New Mexico's substantive law because federal courts do not recognize a physician-patient privilege. *See, e.g., <u>Gilbreath v. Guadalupe Hosp. Found., Inc., 5 F.3d 785 (5th Cir.1993)</u>*(no physician-patient privilege under federal law); <u>Patterson v. Caterpillar, Inc., 70 F.3d 503 (7th Cir.1995)</u>(in ERISA action, federal law does not recognize physician-patient privilege).

While the Court recognizes that New Mexico's substantive law in reference to evidentiary privileges is applicable, when a party seeks substantial damages, as in this case, that party may not prevent an opposing party from examining the merits of the claim for damages. It would be improper to assert a substantial claim for damages and thereafter deny access to the very information which may assist the opposing party in challenging or refuting the claim.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2000 WL 33906936 (D.N.M.)
**(Cite as: 2000 WL 33906936 (D.N.M.))**

It is possible that nothing in the child's records will lead to the discovery of other relevant, admissible evidence, or that nothing in the child's records will make a fact of consequence in this litigation more probably true or untrue. Nonetheless, Cordova is entitled to discover facts necessary for his evaluation of the case or to prepare to meet the proofs at trial.

The Court overrules Plaintiff's objections and directs that Plaintiff fully comply with the requirements of D.N.M.LR-Civ. 26. The medical records produced to Cordova, pursuant to discovery, are, of course, confidential and may not be used for purposes other than this litigation.

Plaintiff argues that sanctions are not appropriate. The Court notes, however, that at the Rule 16 conference conducted in this case, the Court inquired of the parties if Rule 26 disclosures had been made, and reminded the parties of each category of initial disclosure obligations. Specifically, the Court advised Plaintiff of the necessity to provide a ten-year listing of all healthcare providers, by name, address and phone number, and a signed medical release form. It was incumbent on Plaintiff to promptly seek the Court's protective order if Plaintiff disagreed that medical records should be provided.

Here, Plaintiff failed to produce initial disclosures and failed to seek the Court's order limiting discovery obligations. This is improper. It is axiomatic that a party is required to comply with discovery obligations imposed by the Federal Rules of Civil Procedure, the Court's local rules and directives of the Court. The Court determines that Plaintiff has wrongfully failed to produce discoverable information. The Court admonishes Plaintiff to ensure future compliance with discovery obligations, but will not impose sanctions as a result of the present violation.

The listing of all healthcare providers and signed medical release forms shall be produced to Cordova within ten calendar days.

D.N.M.,2000.
Felix M. v. Cordova
Not Reported in F.Supp.2d, 2000 WL 33906936 (D.N.M.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit M

Not Reported in F.Supp.2d, 2008 WL 3200642 (S.D.Ohio)
**(Cite as: 2008 WL 3200642 (S.D.Ohio))**

**H**Only the Westlaw citation is currently available.

United States District Court,
S.D. Ohio,
Western Division,
THOMAS & MARKER CONSTRUCTION, CO.,
Plaintiff,
v.
WAL-MART STORES, INC., et al., Defendants.
**No. 3:06-cv-406.**

Aug. 6, 2008.

Terrence G. Stolly, John D. Bodin, Thompson, Dunlap, Heydinger, et. al, Ltd., Bellefontaine, OH, for Plaintiff.

Andrew R. Kwiatkowski, Mark Christian Bissinger, Melissa Lynn Korfhage, William A Sherman, II, Dinsmore & Shohl, Cincinnati, OH, Rand L. McClellan, Sherri Blank Lazear, Joseph Edward Ezzie, Baker & Hostetler LLP, Columbus, OH, for Defendants.

**ENTRY AND ORDER GRANTING WAL-MART'S MOTION TO COMPEL PRODUCTION OF THE CONFIDENTIAL SETTLEMENT AGREEMENT AND DISCOVERY DEPOSITIONS (Doc. # 94)**

THOMAS M. ROSE, District Judge.

**\*1** Now before the Court is a Motion To Compel by Defendant Wal-Mart Stores, Inc. ("Wal-Mart"). (Doc. # 94.) Wal-Mart seeks to compel Plaintiff Thomas & Marker Construction Co. ("Thomas & Marker") to produce its confidential settlement agreement (the "Agreement") with Jergens Bales Contractors, Inc. ("Jergens-Bales") and to produce for a discovery deposition the signatories to the Agreement. Wal-Mart's Motion To Compel is made pursuant to Fed.R.Civ.P. 37.

**PROCEDURAL BACKGROUND**

Thomas & Marker's original Complaint was filed on November 17, 2006, in the Court of Common Pleas of Clark County, Ohio. Therein Thomas & Marker alleges various causes of action primarily arising out of rock excavation expenses allegedly incurred during construction of a Wal-Mart Supercenter in Springfield, Ohio.

Thomas & Marker's original Complaint was subsequently removed to this Court. Wal-Mart then answered and asserted a counterclaim for the negligent installation of a water line at the Supercenter.

In February of 2007, Wal-Mart propounded on Thomas & Marker its First Set of Interrogatories and Requests for Production of Documents. Therein, Wal-Mart asked Thomas & Marker to produce all documents related to the subcontractors who performed excavation work on the Supercenter project, all correspondence between Jergens Bales and Thomas & Marker relating to the Supercenter project and, to the extent not already requested, any and all documents relating or referring to the Supercenter project. At that time, Wal-Mart accepted Thomas & Marker's project file in lieu of Thomas & Marker responding to the discovery request after Thomas & Marker raised concerns regarding the broad scope of several document requests.

On April 26, 2007, Thomas & Marker filed its First Amended Complaint. Therein, in addition to the claims against Wal-Mart, Thomas & Marker claims that Jergens Bales breached its contract with Thomas & Marker when it failed to complete the water line installation in accordance with the Contract Documents and when it "coerced" Thomas & Marker into accepting from and paying to Jergens Bales change orders for rock excavation on the Supercenter site. Thomas & Marker's First Amended Complaint also adds a claim for enforcement of a mechanics lien. Wal-Mart's Answer includes a counterclaim against Thomas & Marker for negligent installation of a waterline on the Supercenter project.

In April of 2008, following the close of discovery, Thomas and Marker entered into the Agreement with Jergens Bales. Thomas & Marker argues that the terms of the Agreement relate solely to the claims

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3200642 (S.D.Ohio)
**(Cite as: 2008 WL 3200642 (S.D.Ohio))**

and defenses asserted by the signatories to the underlying subcontract.

On May 30, 2008, Wal-Mart raised an issue regarding this Court's lack of subject matter jurisdiction stemming from the addition of non-diverse parties when Thomas & Marker's First Amended Complaint was filed. The non-diverse parties were Jergens Bales and the Clark County Treasurer.

**\*2** In response, Thomas & Marker attempted to get a stipulated dismissal of Jergens Bales. Thomas & Marker informed Wal-Mart that it had settled its claims against Jergens Bales. Wal-Mart declined to agree, in part, because Thomas & Marker refused to provide a copy of the Agreement with Jergens Bales.

Thomas & Marker then filed a motion to dismiss Jergens Bales and later a notice of release of Jergens Bale's mechanic's lien. The Court then dismissed Jergens Bales and the Clark County Treasurer, thereby restoring its diversity jurisdiction. The Court also indicated that Wal-Mart had exhausted its extrajudicial efforts to obtain the Agreement and could file the motion to compel regarding the Agreement that is now before the Court.

**THE ARGUMENTS**

Wal-Mart now seeks to compel discovery of the confidential settlement agreement and to depose the signatories thereto. Wal-Mart argues that the terms of the confidential settlement agreement are relevant and discoverable pursuant to Fed.R.Civ.P. 37. Wal-Mart specifically argues that Thomas & Marker is required by the federal and local rules to supplement its initial discovery responses regarding correspondence between Jergens Bales and Thomas & Marker relating to the Supercenter project by providing the Agreement.

Wal-Mart also argues that the terms of the Agreement are relevant to the credibility of the witnesses who may be called to testify at trial. There is no doubt, according to Wal-Mart, that employees from Jergens Bales will be called to testify and the factfinder is entitled to consider any hidden motives related to the Agreement in these witnesses' testimony.

Wal-Mart also argues that the terms of the Agree-

ment may be relevant to the damages at issue in this case. The Agreement may, according to Wal-Mart, provide a set-off to any damages that may be awarded to Thomas & Marker.

In addition, Wal-Mart argues that it is entitled to any information related to the settlement of the claim regarding the waterline. This is because Wal-Mart has a counterclaim against Thomas & Marker for the alleged negligent installation of the waterline.

Wal-Mart also argues that the assertion that the Agreement is confidential is without merit. This is because settlement agreements are discoverable and the Parties already have a protective order in place that can be applied to the settlement agreement.

Finally, Wal-Mart argues that the confidential settlement agreement may be a *Mary Carter* agreement.[FN1] *Mary Carter* agreements are discoverable and admissible in Ohio. *Hodesh,* 2008 WL 1913530 at \*6.

> FN1. A *Mary Carter* agreement is a contract between a plaintiff and at least one defendant allying them against another defendant at trial. *Hodesh v. Korelitz,* 2008 WL 1913530 at \*5 (Ohio Ct.App. May 2, 2008).

Thomas & Marker responds that it does not have to supplement its discovery response because Wal-Mart agreed to accept its project file in lieu of responses to Wal-Mart's First Set of Interrogatories and Requests for Production of Documents. Thomas & Marker also argues that the Agreement is not relevant to any of Wal-Mart's claims or defenses. It is not relevant, according to an Affidavit submitted by Thomas & Marker, because it does not align Thomas & Marker and Jergens Bales against Wal-Mart, because it does not include an agreement for Jergens Bales to repay any money from rock excavation change orders or limit Jergens Bales' liability based upon the amount Thomas & Marker recovers from Wal-Mart and because it does not result in Thomas & Marker receiving any money or the promise of any money from Jergens Bales in payment for the installation of the subject waterline by Jergens Bales. Finally, Thomas & Marker avers that the confidential settlement agreement is not a *Mary Carter* agreement.

**\*3** Thomas & Marker requests that the Court conduct an in camera review of the confidential settlement to

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2008 WL 3200642 (S.D.Ohio)
**(Cite as: 2008 WL 3200642 (S.D.Ohio))**

determine whether it is relevant. Wal-Mart responds that an in camera inspection is unnecessary and improper and, without seeing the Agreement, it can only speculate as to its relevancy

## ANALYSIS

The Federal Rules of Civil Procedure provide for broad, liberal discovery. *Evenflo Co., Inc. v. Hantec Agents Limited,* No. C-3-05-346, 2006 WL 1580221 at * 1 (S.D.Ohio June 5, 2006). Discovery may be obtained regarding any matter not privileged that is relevant to the claim or defense of any party. *Id.* Further, relevance is to be broadly construed when applying the discovery rules. *Herbert v. Lando,* 441 U.S. 153, 177, 99 S.Ct. 1635, 60 L.Ed.2d 115 (1979).

In this case, the Agreement may be relevant to Wal-Mart's claims and defenses. It may be relevant to the credibility of witnesses who may be called at trial, it may be relevant to any damages that may ultimately be awarded, it may be relevant to the claim regarding the waterline and it may be relevant if it has the effect of a *Mary Carter* agreement.

In addition to being relevant, Thomas & Marker has a duty to supplement its initial discovery responses regarding correspondence between Jergens Bales and Thomas & Marker relating to the Supercenter project by providing the Agreement. *See Abrahamsen v. Trans-State Express, Inc.,* 92 F.3d 425, 428 (6th Cir.1996). The fact that Thomas & Marker provided its project file to satisfy several items in Wal-Mart's initial discovery request does not relieve Thomas & Marker from supplementing information that it receives regarding one of the requested items.

In addition to being relevant, the Agreement is otherwise discoverable. *See American Guarantee and Liability Insurance Co., v. CTA Acoustics, Inc.,* 2007 U.S. Dist. LEXIS 26485 at *10-11, 2008 WL 1924229 (E.D .Ky. Apr. 9, 2007). Regarding confidentiality, the Parties have a Protective Order in place that, if applicable, could be used to facilitate exchange of the Agreement. Finally, regarding an in camera inspection, absent assertion of some legal privilege, which is not the case here, this Court declines to become involved at this stage of the proceedings.

Wal-Mart's Motion To Compel Settlement Agree-

ment and Discovery Depositions (doc. # 94) is GRANTED. Thomas & Marker is given until not later than five (5) days following entry of this Order to provide a copy of the Agreement to Wal-Mart. Further, depositions of the signatories to the Agreement may be conducted so long as they are limited to the contents of the Agreement and so long as they are completed by not later than October 13, 2008, which is one week before motions in limine are to be filed in this matter.

**DONE** and **ORDERED.**

S.D.Ohio,2008.
Thomas & Marker Const. Co. v. Wal-Mart Stores, Inc.
Not Reported in F.Supp.2d, 2008 WL 3200642 (S.D.Ohio)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit N

Not Reported in F.Supp.2d, 2004 WL 769325 (D.Kan.)
**(Cite as: 2004 WL 769325 (D.Kan.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
D. Kansas.
Roberta E. SONNINO, M.D. Plaintiff,
v.
UNIVERSITY OF KANSAS HOSPITAL AU-
THORITY, et al., Defendants.
**No. Civ.A.02-2576-KHV-DJ.**

April 8, 2004.

Alan R. Kabat, Gena Elyse Wiltsek, Lynne Ann
Bernabei, Bernabei & Katz, PLLC, Washington, DC,
Dennis E. Egan, Stephen J. Dennis, The Popham Law
Firm, P.C., Kansas City, MO, for Plaintiff.

Douglas S. Laird, Patricia A. Sexton, Polsinelli Shal-
ton & Welte, P.C., Kansas City, MO, John C.
McFadden, University of Kansas Medical Center,
Kansas City, KS, for Defendant.

*MEMORANDUM AND ORDER*

WAXSE, Magistrate J.

**\*1** Pending before the Court is the Motion to Compel
Discovery (doc. 153) filed by Defendant Barbara
Atkinson, M.D. In her motion, Defendant Atkinson
requests that the Court compel Plaintiff to answer the
interrogatory directed to her regarding her charge of
discrimination against a previous employer and su-
pervisor. Defendant Atkinson also requests that the
Court require Plaintiff to respond to questions regard-
ing this charge of discrimination and the settlement
of this charge at the continuation of her deposition.
Plaintiff has filed her response in opposition to the
Motion to Compel Discovery in which she contends
that she is contractually barred from disclosing the
underlying facts pertaining to her charge of discrimi-
nation pursuant to a confidential settlement agree-
ment with her former employer. She also contends
that the information sought is neither relevant to the
subject matter of this action, nor reasonably calcu-
lated to lead to the discovery of admissible evidence.
For the reasons set forth below, the Court will grant

in part and deny in part the Motion.

I. Introduction and Brief Factual Background

Plaintiff brings this action, asserting claims under 42
U.S.C. §§ 1983 and 1985, the Equal Pay Act, and
Title VII of the Civil Rights Act of 1964, as
amended,[FN1] against nine Defendants. She sues De-
fendant Atkinson pursuant to 42 U.S.C. §§ 1983 and
1985 for alleged violations of her rights of free
speech secured by the First Amendment and her right
to due process secured by the Fourteenth Amend-
ment. Plaintiff claims that Defendant Atkinson, in
conjunction with the other individual defendants,
manufactured false allegations against her, improp-
erly suspended her clinical privileges, reported the
suspension to the National Practitioners Data Bank
and the Kansas Board of Healing Arts without justifi-
cation, conducted an improper investigation that had
a predetermined outcome, improperly recommended
the permanent revocation of her medical staff mem-
bership and clinical privileges, and transferred her
academic appointment from the Department of Sur-
gery to the Department of Pathology.

FN1. 42 U.S.C. § 2000e, *et seq.*

Defendant Atkinson served her First Interrogatories
to Plaintiff on October 20, 2003. Plaintiff transmitted
her original responses to Defendant Atkinson's First
Interrogatories via e-mail on December 3, 2003, and
mailed supplemental responses on December 19,
2003. After attempting to confer with Plaintiff to
resolve the issue without court action,[FN2] as required
by Fed.R.Civ.P. 37(a)(2)(A) and D. Kan. Rule 37.2,
Defendant Atkinson filed the instant motion to com-
pel discovery on January 9, 2004.

FN2. *See* Certificate of Compliance (doc.
155).

II. First Interrogatory No. 2

The interrogatory at issue in this motion, First Inter-
rogatory No. 2, requests that Plaintiff "describe the
allegations of discrimination set forth in the charge of
discrimination filed with the Equal Employment Op-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 769325 (D.Kan.)
**(Cite as: 2004 WL 769325 (D.Kan.))**

portunity Commission [ ("EEOC") ] by plaintiff in Richmond, Virginia." In her response to First Interrogatory No. 2, Plaintiff set forth the following objections:

**\*2** Plaintiff objects to this interrogatory on the grounds that it seeks information not relevant to the subject matter of this action, and is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff also objects to this interrogatory on the ground that it contains two discrete and independent subparts. As such, plaintiff will count this interrogatory as two separate interrogatories.

Subject to and without waiving these objections, plaintiff responds that this EEOC charge was subsequently withdrawn pursuant to a confidential settlement. Plaintiff can not disclose the details of the allegations, per the confidentiality clause of this settlement agreement.

Plaintiff's objections that the interrogatory seeks information not relevant to the subject matter of this action, that the interrogatory is not calculated to lead to the discovery of admissible evidence, and that she is contractually barred from disclosing this information were reiterated in her response the Motion to Compel. The Court will address each of these objections.

A. Relevancy objection

Plaintiff argues that Defendant Atkinson has made no showing that the terms of Plaintiff's settlement agreement with another employer or the facts underlying the settlement have any bearing on witness credibility or any other matter that would demonstrate relevance to the current litigation.

Federal Rule of Civil Procedure 26(b)(1) governs the scope of discovery. It provides that "[p]arties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter.... Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." [FN3]

FN3. Fed.R.Civ.P. 26(b)(1).

The touchstone of the relevancy of documents and information requested is not whether the discovery will result in evidence that is, or even may be, admissible at trial, but rather whether the discovery is "reasonably calculated to lead to the discovery of admissible evidence." [FN4] Relevancy is broadly construed, and a request for discovery should be considered relevant if there is "any possibility" that the information sought may be relevant to the claim or defense of any party.[FN5] A party does not have to prove a prima facie case to justify a request which appears reasonably calculated to lead to the discovery of admissible evidence. Furthermore, the Court is mindful of the rule that "discovery in discrimination cases should not be narrowly circumscribed." [FN6] It is well settled that the scope of discovery is particularly broad in Title VII cases.[FN7]

FN4. Fed.R.Civ.P. 26(b)(1).

FN5. *Hammond v. Lowe's Home Ctrs., Inc.,* 216 F.R.D. 666, 670 (D.Kan.2003); *Sheldon v. Vermonty,* 204 F.R.D. 679, 689-90 (D.Kan.2001).

FN6. *Sprague v. Thorn Americas, Inc.,* 129 F.3d 1355, 1368 (10th Cir.1997); *Gomez v. Martin Marietta Corp.,* 50 F.3d 1511, 1520 (10th Cir.1995).

FN7. *Gomez,* 50 F.3d at 1520 (citing *Scales v. J.C. Bradford & Co.,* 925 F.2d 901, 906 (6th Cir.1991)); *Garrett v. Sprint PCS,* No. 00-2583-KHV, 2002 WL 181364, at \*1 n. 3 (D.Kan. Jan.31, 2002).

In her response to the motion, Plaintiff argues that the fact that she was discriminated against and filed an EEOC charge to protect her interests before she came to the Defendant University of Kansas has no bearing on the issue of whether the adverse employment actions taken against her by defendants in this case were motivated by discriminatory animus. The Court agrees with Plaintiff that information pertaining to an EEOC charge of discrimination that she filed against a prior employer is not relevant to whether the adverse employment actions taken against her by de-

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 769325 (D.Kan.)
**(Cite as: 2004 WL 769325 (D.Kan.))**

fendants in this case were motivated by discriminatory animus. This information, however, is relevant to the defense of these claims, specifically the credibility of Plaintiff's allegations of discrimination in this case.

**\*3** The Court concludes that the information requested by Interrogatory No. 2, i.e., a description of the allegations of discrimination set forth in the charge of discrimination filed with the EEOC by Plaintiff in Richmond, Virginia, is relevant to the credibility of Plaintiff's allegations of discrimination in this case. Accordingly, the Court will overrule Plaintiff's relevancy objection to the interrogatory.

B. Admissibility objection

Plaintiff also argues that the discovery sought by Defendant Atkinson is not admissible evidence nor is it calculated to lead to the discovery of admissible evidence. She argues that the discovery sought is inadmissible character evidence under _Federal Rule of Evidence 404._[FN8]

> FN8. _Federal Rule of Evidence 404(b)_ provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, ..."

The Court need not address Plaintiff's admissibility argument because the scope of discovery under _Rule 26(b)(1)_ is not whether the discovery will result in evidence that is, or even may be, admissible at trial, but rather whether the discovery is "reasonably calculated to lead to the discovery of admissible evidence." [FN9] In this case, the Court determines that although information pertaining to allegations of discrimination set forth in the EEOC charge of discrimination against Plaintiff's prior employer may not be admissible at trial as substantive proof of conduct in conformity therewith, [FN10] it may be admissible for some other purpose such as proof of intent or to challenge a witness' credibility on cross-examination.[FN11] Moreover, the requested discovery may very well lead to the discovery of other admissible evidence. The Court therefore finds this information is reasona-

bly calculated to lead to the discovery of admissible evidence. Plaintiff's admissibility objection to First Interrogatory No. 2 is overruled.

> FN9. _Fed.R.Civ.P. 26(b)(1)._

> FN10. _See Lovejoy-Wilson v. Noco Motor Fuels, Inc.,_ 242 F.Supp.2d 236, 250 (W.D.N.Y.2003) (although evidence that employee brought claim of discrimination against previous employer was not admissible in ADA action against later employer as substantive proof of conduct in conformity therewith, such evidence could, upon appropriate showing, be introduced for other purposes, including proof of intent or to challenge a witness's credibility on cross-examination).

> FN11. _Id._ (citing _Outley v. City of New York,_ 837 F.2d 587, 592-93 (2d Cir.1988)).

C. Objection that Plaintiff is contractually barred from disclosing the settlement information

Having determined that First Interrogatory No. 2 seeks information that is relevant to the subject matter of this litigation and reasonably calculated to lead to the discovery of admissible evidence, the Court must next examine Plaintiff's contention that she is contractually barred from answering First Interrogatory No. 2. She claims that she is contractually barred from disclosing the underlying facts pertaining to the EEOC charge of discrimination she filed in Virginia, including the details of the allegations, pursuant to a confidential settlement agreement with her previous employer.

Parties cannot create a privilege against civil discovery by mere written agreement.[FN12] Moreover, the mere fact that the settling parties agree to maintain the confidentiality of their agreement cannot serve to shield it from discovery.[FN13] Although a settlement agreement contains a confidentiality provision, litigants cannot shield otherwise discoverable information from disclosure to others by agreeing to maintain its confidentiality, and cannot modify the Federal Rules of Civil Procedure by agreement.[FN14]

> FN12. _In re Columbia/HCA Healthcare_

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 769325 (D.Kan.)
**(Cite as: 2004 WL 769325 (D.Kan.))**

*Corp. Billing Practices Litig.,* 293 F.3d 289, 313 n. 3 (6th Cir.2002) (citing *Westinghouse Elec. Corp. v. Republic of the Philippines,* 951 F.2d 1414, 1426 (3d Cir.1991)).

FN13. *Griffin v. Mashariki,* No. 96 CIV. 6400(DC), 1997 WL 756914, at *2, S.D.N.Y. Dec. 8, 1997); *Tribune Co. v. Purcigliotti,* No. 93 Civ. 7222(LAP) (THK), 1996 WL 337277, at *3 (S.D.N.Y. June 19, 1996) (citing *Weissman v. Fruchtman,* No. 83 Civ. 8958(PKL), 1986 WL 15669, at *19 (S.D.N.Y. Oct.31, 1986)).

FN14. *Burda Media, Inc. v. Blumenberg,* No. 97 Civ. 7167(RWS), 1999 WL 413469, at *3 (S.D.N.Y. June 21, 1999) (reh'g granted on other grounds) (citing *Griffin,* 1997 WL 756914, at *2).

**\*4** In light of the above, the Court holds that the mere fact that Plaintiff entered into a settlement agreement with her former employer and this settlement agreement contains a clause that prohibits her from disclosing the underlying facts pertaining to that charge of discrimination, including the details of the allegations, does not create a privilege and does not shield this information from discovery. Accordingly, the Court will overrule Plaintiff's objection that she is contractually barred from answering First Interrogatory No. 2.

Having overruled all of Plaintiff's objections, the Court will grant Defendant Atkinson's Motion to Compel Discovery as it relates to First Interrogatory No. 2. Within twenty (20) days of the date of filing of this Order, Plaintiff shall serve Defendant Atkinson with her response to First Interrogatory No. 2.

III. Deposition questions

Defendant Atkinson also requests in her Motion to Compel Discovery that the Court require Plaintiff to respond to questions regarding this charge of discrimination and the settlement of this charge at the continuation of her deposition. As previously stated, the allegations of discrimination set forth in the EEOC charge of discrimination Plaintiff against her prior employer in Virginia are relevant to the credibility of Plaintiff's allegations of discrimination in this case and are reasonably calculated to lead to the

discovery of admissible evidence. The Court, however, holds that any deposition questions concerning Plaintiff's settlement of these claims or the terms of the settlement agreement are not relevant. Defendant Atkinson has failed to establish how such deposition questions would be relevant to the claims and defenses in this case. The Court therefore denies Defendant Atkinson's request to require Plaintiff to respond to deposition questions regarding the settlement of her prior EEOC charge of discrimination.

IV. Sanctions

Pursuant to Federal Rule of Civil Procedure 37(a)(4)(C), when a court grants in part and denies in part a motion to compel, the court may "apportion the reasonable expenses incurred in relation to the motion among the parties and persons in a just manner." [FN15] Here, the Court finds it appropriate and just for Plaintiff and Defendant Atkinson to bear their own expenses and fees incurred in connection with the Motion to Compel Discovery.

FN15. Fed.R.Civ.P. 37(a)(4)(C).

IT IS THEREFORE ORDERED that Defendant Atkinson's Motion to Compel Discovery (doc. 153) is granted in part and denied in part. Within twenty (20) days of the date of filing of this Order, Plaintiff shall serve Defendant Atkinson with her response to First Interrogatory No. 2.

IT IS FURTHER ORDERED that at the continuation of her deposition, Plaintiff shall not be required to answer questions regarding the settlement agreement settling her prior EEOC charge of discrimination.

IT IS FURTHER ORDERED that Plaintiff and Defendant Atkinson shall bear their own expenses incurred in relation to this Motion to Compel Discovery.

**\*5** IT IS SO ORDERED.

D.Kan.,2004.
Sonnino v. University of Kansas Hosp. Authority
Not Reported in F.Supp.2d, 2004 WL 769325 (D.Kan.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2004 WL 769325 (D.Kan.)
**(Cite as: 2004 WL 769325 (D.Kan.))**

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit O

Westlaw.

Not Reported in F.Supp.2d, 2001 WL 36086590 (S.D.Fla.)
**(Cite as: 2001 WL 36086590 (S.D.Fla.))**

**H**Only the Westlaw citation is currently available.

United States District Court,
S.D. Florida.
Steven J. GUTTER, on behalf of himself and all others similarly situated, Plaintiff,
v.
E.I. DuPONT DE NEMOURS AND COMPANY
and Edgar S. Woolard, Jr., Defendants.
**No. 95-2152-CIV-GOLD.**

Jan. 31, 2001.

Barry S. Taus, Bruce E. Gerstein, Kevin S. Landau, Noah H. Silverman, Scott W. Fisher, Garwin Bronzaft Gerstein & Fisher LLP, Robert I. Harwood, Wechsler Harwood LLP, New York, NY, C. Oliver Burt, III, Michael J. Pucillo, Robert Scott Palmer, Manuel Juan Dominguez, Berman Devalerio Pease Tabacco Burt & Pucillo, West Palm Beach, FL, Elwood S. Simon, John Zuccarini, Elwood S. Simon & Associates, Birmingham, MI, Marvin A. Miller, Miller Faucher Cafferty & Wexler, Chicago, IL, for Plaintiff.

Crescenzo D'Avossa, pro se.

Darin P. McAtee, David Boies, Evan R. Chesler, Cravath Swaine & Moore LLP, New York, NY, David Boies, Boies Schiller & Flexner, Armonk, NY, Dawn Giebler-Millner, John A. Boudet, Greenberg Traurig, Orlando, FL, Edward A. Moss, Shook Hardy & Bacon, Humberto H. Ocariz, Humberto Ocariz PA, Miami, FL, for Defendants.

***REPORT AND RECOMMENDATION REQUIRING DISCOVERY OF CERTAIN SETTLEMENT DOCUMENTS***

THEODORE KLEIN, Special Master.

**\*1** DuPont settled a number of cases brought against it arising out of claims involving Benlate. In many of those cases, the parties agreed by contract to keep the terms of those settlements confidential. Plaintiff now seeks discovery of those settlement documents in- cluding some underlying documents as part of the 42 case discovery program, and DuPont has resisted such discovery, as it was contractually obligated to do in some of those agreements. Some agreements apparently only require the plaintiffs, and not DuPont, to maintain confidentiality.

Federal Rule of Evidence 408 creates no settlement privilege for purposes of discovery, but rather precludes the admission of compromise negotiations into evidence. Federal Civil Procedure Rule 26(b)(1) still requires a showing that settlement-related materials must appear reasonably calculated to lead to the discovery of admissible evidence before they may be discovered. *Morse/Diesel, Inc. v. Trinity Industries, Inc.,* 142 F.R.D. 80 (S.D.N.Y.1992). Some courts require a particularized showing of relevancy of such information, *e.g. Fidelity Federal Savings and Loan,* 148 F.R.D. 532 (E.D.Penn.1993); *Bottaro v. Hatton Associates,* 96 F.R.D. 158 (E.D.N.Y.1982), while others reject this extra condition as violative of the "modest threshold" of relevancy Rule 26(b) requires. *Bennett v. LaPere, M.D.,* 112 F.R.D. 136, *139-140* (D.R.I.1986) (explicitly rejecting the *Bottaro* approach in holding that once material is shown to be relevant and not privileged, the party resisting discovery must show good cause for nondisclosure). In either case, Plaintiff has made a sufficient showing, and DuPont does not automatically disagree with that position.[FN1]

> FN1. Although DuPont obviously disagrees with the conclusions reached by Plaintiff in justifying discovery of these settlement documents, it apparently concedes that given the broad scope of Rule 26(b), this normally protected area is discoverable within the aegis of the ostensible legal theories advanced by Plaintiff. It does so by recognizing Plaintiff's "asserted need for information about the settlements in the 42 cases" although not conceding the relevance of that information.

Where the litigants part company is on the issue of disclosure when the parties to the settlement agreement have entered into a confidentiality agreement. DuPont contends that in some of the agreements it is bound to maintain confidentiality, and that therefore

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 36086590 (S.D.Fla.)
**(Cite as: 2001 WL 36086590 (S.D.Fla.))**

it cannot produce settlement-related documents without violating its contractual obligations to maintain the confidentiality of those settlements. As to those agreements in which only the plaintiff is bound, DuPont has no such obligation, and accordingly has no cognizable objection on this ground. In those agreements in which DuPont is bound to maintain confidentiality, other considerations here call for overriding those strictures.

Despite the salutary purposes of preserving confidentiality to encourage settlements, under appropriate circumstances courts have the authority to encroach upon such agreements. *Bennett, supra.,* *ABF Capital Management v. Askin Capital,* 2000 WL 191698 (S.D.N.Y.2000) (Litigants cannot shield a settlement agreement from discovery merely because it contains confidentiality provisions if it itself is relevant to the subject matter of the action, or is likely to lead to relevant evidence). Citing public policy concerns, a number of courts have held that such confidentiality provisions will not be utilized as a shield to obstruct the discovery process. *Channelmark Corporation v. Destination Products International, Inc.,* 2000 WL 968818 (N.D.Ill.2000); *Key Pharmaceutical, Inc. v. ESI-Lederle, Inc.,* 1997 WL 560131 (E.D. Penn 1997); *Tribune Co. v. Purcigliotti,* 1996 WL 337277 (S.D.N.Y.1996); *Young v. State Farm Mutual Automobile Insurance Co.,* 169 F.R.D. 72 (S.D.W.V.1996); *Kalinauskas v. Wong,* 151 F.R.D. 363 (N.D.Nev.1993); *Koprowski v. Wistar Institute of Anatomy and Biology,* 1993 WL 332061 (E.D.Penn.1993); *City of Hartford v. Chase,* 942 F.2d 130 (2nd Cir.1991); *See also* *Bank of America National Trust & Savings Ass'n v. Hotel Rittenhouse Associates,* 800 F.2d 339 (3d Cir.1986). This is particularly true when confidentiality provisions may have the effect of silencing witnesses with a settlement agreement where the facts of one controversy are relevant to another. *See, Channelmark and Kalinauskas, Id.; Wendt v. Walden University, Inc.,* 1996 WL 84668 (D.Minn.1996); *Scott v. Nelson,* 697 So.2d 1300 (Fla. 1st DCA 1997).* ("Settlement agreements which suppress evidence violate the greater public policy").

**\*2** In this instance, there are sufficient reasons to require disclosure of the settlement agreements. The Plaintiff's theories of recovery include claims that DuPont and its attorneys engaged in a fraudulent scheme to conceal material adverse evidence in many

cases relating to Benlate testing, and that DuPont issued false statements which misled the securities market as to the extent of DuPont's potential exposure in the Benlate cases, thus artificially inflating the price of DuPont's stock.

Discovery of the settlement documents appears reasonably calculated to lead to admissible evidence on those issues. Plaintiff's theories include claims that there may have been selective disclosure and advertisement of certain settlements favorable to DuPont and a pattern of seeking to keep confidential those settlements where the adverse results had been discovered. In addition, the allegations raised by plaintiff regarding the *Davis Tree* settlement and its aftermath lend further support to the proposition that discovery of settlement information requested in this instance falls within the ambit of *F.R.C.P. 26(b)(1).*[FN2]

> FN2. DuPont has not responded to those allegations, but has strongly maintained that it plans to save that fight for another day. Plaintiff contends that after settling *Davis Tree* and other cases with DuPont, the Friedman Rodriguez firm was hired by DuPont for $6,445,000 to perform unspecified legal work, and failed to disclose this retention to its clients or the courts. At this juncture, these allegations, together with the reasons set forth above, raise sufficient reasons to justify disclosure of the confidential settlement agreements under the standards enunciated above.
>
> As for DuPont's time frame argument, the time period of the alleged fraud does not necessarily circumscribe the period of discovery. In fact, in previous Reports, the Special Master has recommended the temporal scope of discovery to be from January 1, 1992 through November 8, 1996. The *Davis Tree* settlement took place in August of 1996.

The Davis Tree allegations raised by the plaintiff call for further airing of the facts surrounding that settlement, including revisiting any new *subpoenas duces tecum* issued to the Friedman, Rodriguez law firm and its successors.

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2001 WL 36086590 (S.D.Fla.)
**(Cite as: 2001 WL 36086590 (S.D.Fla.))**

Plaintiff has asked for settlement-related documents from the 42 cases consisting of the agreements, damage analyses, expert reports, negotiating guidelines and settlement policy guidelines. This request is too broad. Damage analyses are protected by the work product privilege, as are undisclosed expert reports, negotiating guidelines and settlement policy guidelines.[FN3] The documents which should be produced are the settlement agreements themselves, any documents filed in court, reports of disclosed experts, and any correspondence exchanged between the parties relating to such settlement agreements.

> [FN3.] Plaintiff has eschewed the suggestion to tailor this request, which might have yielded discoverable materials within these categories.

In order to prevent improper dissemination of these materials, any documents produced should be subject to the same terms and conditions as contained in the Permanent Protective Order entered by the Special Master in this cause on September 19, 1997.

S.D.Fla.,2001.
Gutter v. E.I. DuPont de Nemours and Co.
Not Reported in F.Supp.2d, 2001 WL 36086590 (S.D.Fla.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# Exhibit P

Not Reported in F.Supp., 1990 WL 72789 (E.D.La.)
**(Cite as: 1990 WL 72789 (E.D.La.))**

**C**Only the Westlaw citation is currently available.

United States District Court, E.D. Louisiana.
KOCH INDUSTRIES, INC.
v.
COLUMBIA GAS TRANSMISSION CORP.
**CIV. A. No. 89-2156.**

May 29, 1990.

MINUTE ENTRY

SEAR, District Judge.

*MEMORANDUM AND ORDER*

**\*1** This suit arises out of the alleged breach of oil and gas purchase contracts and a related letter agreement entered into between plaintiff, Koch Industries, Inc. (Koch), and the defendant, Columbia Gas Transmission Corp. (Columbia). In this present motion, Columbia seeks review of Magistrate Chasez' order in which she granted plaintiff's motion for a protective order and denied defendant's motion to compel production of prior settlement agreements between Koch and third parties, Koch's reasons for entering into the settlement agreements, and any documents relied upon by Koch in analyzing the settlement offers.

In the original motion for a protective order, Koch argued that the settlement agreements were not admissible in the trial under Fed.R.Evid. 408. Thus, Koch argued, the information could not lead to the discovery of admissible evidence. Next, Koch argued that the disclosure of the settlement agreements and the documents upon which Koch relied in deciding to settle would disclose counsel's thought processes in violation of the work product doctrine.

Columbia filed a motion to compel discovery in which it claimed that the settlement agreements are likely to lead to the discovery of admissible evidence and are relevant to its defenses of mitigation of damages, good faith requirement in output contracts, waiver and estoppel, and lack of entitlement to specific performance. Columbia also contended that

Koch entered into two long term contracts-fifteen and twenty years-covering the gas at issue in this case after Columbia first refused dedication of the gas in 1982. Later, Koch and the third parties with whom Koch contracted to sell the gas settled their disputes related to those gas contracts. Columbia now argues that Koch gave up its rights to sell the gas at issue pursuant to a settlement agreement, and thus, the terms of the settlement agreement and related information is both relevant in itself and likely to lead to admissible evidence.

In Koch's opposition, Koch argued that it has no duty to mitigate its damages. Koch claims that it settled its cases with the third parties *before* Columbia refused the dedication, and the duty to mitigate arises after the breach of contract, not before.[FN1] Thus, Koch argues, the settlement agreement and related information is neither relevant nor is it likely to lead to the discovery of admissible evidence. Koch also argues that this is an alternative obligation rather than an output contract, and thus, its good faith is not relevant.

*DISCUSSION*

A district judge is permitted to refer any nondispositive pretrial matter, including discovery, to a United States Magistrate. 28 U.S.C. § 636(a)(1)(B). The magistrate's decision on a nondispositive matter is reversed only when clearly erroneous or contrary to law. Fed.R.Civ.P. 72(a). A decision is clearly erroneous or contrary to law when the reviewing court is left with the definite and firm conviction that a mistake has been committed. *See, e.g., Palacios Seafood, Inc. v. Piling, Inc.,* 888 F.2d 1509 (5th Cir.1989).

**\*2** Whether the parties label the contract at issue in this case as an output contract, alternative obligation, or some other innominate contract is irrelevant. In addition to the good faith obligation to perform output contracts found in Civil Code article 1975, Louisiana law imposes a duty to perform all contractual obligations in good faith. *See* La.Civ.Code art. 1983. Thus, good faith is at issue in any contract case, and Columbia is entitled to discover information that may lead to the discovery of admissible evidence.

Not Reported in F.Supp., 1990 WL 72789 (E.D.La.)
**(Cite as: 1990 WL 72789 (E.D.La.))**

The parties also devote a great deal of their arguments to whether Koch has a duty to mitigate damages. Koch argues that it does not have a duty to mitigate damages because this contract involves a take or pay provision. Columbia, however, argues that Koch does have a duty to mitigate damages because this is not an ordinary take or pay case. Rather, Columbia characterizes this case as a dispute concerning whether Koch can dedicate this gas to the base contracts, which contain take or pay provisions. Plaintiff recently filed a motion for summary judgment in which it addresses part of its argument to this issue. The resolution of this issue is best left for the motion for summary judgment rather than in the context of this discovery dispute.

Magistrate Chasez was not "clearly erroneous" when she granted Koch's protective order forbidding Columbia from the discovery of information used to determine whether to settle and the processes used by Koch to determine whether to settle. The information Koch considered important and the processes it used to settle the case are covered by the work product privilege. The actual settlement agreements, however, are not so privileged. Given the broad scope of discovery and the likelihood that the settlements will provide some relevant information or lead to admissible evidence regarding the affirmative defenses raised by Columbia, Columbia is entitled to these documents. Accordingly,

IT IS ORDERED that Magistrate Chasez' ruling is MODIFIED to allow discovery of the actual settlement agreements sought by Columbia Gas Transmission Corp. and AFFIRMED in all other respects.

IT IS FURTHER ORDERED that the settlement agreements remain confidential and used only for this litigation.

> FN1. *See* Memorandum in Opposition, at 17-19. *But see* Memorandum in Opposition, at 5 (Columbia rejected dedicated gas in 1982 before Koch contracted with third parties).

E.D.La.,1990.
Koch Industries, Inc. v. Colombia Gas Transmission Corp.
Not Reported in F.Supp., 1990 WL 72789 (E.D.La.)

END OF DOCUMENT

© 2010 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT 2

**Jason B. Lattimore**
LATHAM & WATKINS LLP
One Newark Center, 16th Floor
Newark, New Jersey 07101-3174
Telephone: 973.639.1234
Facsimile: 973.639.7298

Attorneys for Defendants Orchid Chemicals &
Pharmaceuticals Ltd. and Orgenus Pharma Inc.

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| WYETH, | Case No. 3:09-CV-03235 (FLW-DEA) |
| Plaintiff, | |
| v. | |
| ORGENUS PHARMA INC. | **ORCHID'S FIRST SET OF** |
| and | **REQUESTS FOR PRODUCTION TO** |
| | **PLAINTIFFS** |
| ORCHID CHEMICALS & | |
| PHARMACEUTICALS LTD., | |
| Defendants. | |

Pursuant to Rules 26 and 34 of the Federal Rule of Civil Procedure, defendants Orchid

Chemicals & Pharmaceuticals Ltd. and Orgenus Pharma Inc. ("Orchid") request that plaintiff

Wyeth produce the following documents, electronically stored information, and tangible things

in its possession, custody, or control for inspection and copying within thirty days of service of

this request at the offices of Latham & Watkins LLP, One Newark Center, 16th Floor, Newark,

New Jersey 07101.

NSD\120898.1

## DEFINITIONS AND INSTRUCTIONS

1.      "Orchid" shall mean the entities identified in Paragraphs 2 and 3 of the Complaint.

2.      "Wyeth" shall mean the entity identified in Paragraph 1 of the Complaint, and any and all present or former divisions, and shall also include any present or former parent, subsidiary, affiliated or related corporation or any other related entity of Wyeth. "Wyeth" shall further mean all past or present directors, officers, employees, agents, representatives, or persons acting on behalf of any of the foregoing entities.

3.      "Venlafaxine Litigations" shall mean any lawsuit to which Wyeth is or was a party and involving a claim or defense relating to U.S. Patent No. 6,274,171; U.S. Patent No. 6,403,120; and/or U.S. Patent No. 6,419,958 (excluding the present action).

4.      The term "document," as used herein, shall mean all materials and things encompassed by  Rule 34 of the FEDERAL RULES OF CIVIL PROCEDURE and shall include each and every writing, record or thing of every type (including the original, and all non-conforming or non-identical drafts of written materials and any and all translations thereof) including, without limitation, correspondence, memoranda, stenographic or handwritten notes, diaries, contracts, statistics, letters, telegrams, minutes, agendas, agreements, inter-office correspondence, notations on any sort of conversation, meeting or other communications, e-mails and other electronically stored information (including any and all printouts of such information), drafts, studies, blueprints, journals, invoices, sales slips, vouchers, samples, models, simulations, production records, service records, warranty records, catalogs, advertisements, bulletins, pamphlets, books, publications, pictures, films, voice or other recordings, maps, reports, storage discs or other data records.

2

NSD\120898.1

5.      The words "and" and "or," as used herein, shall be construed either conjunctively or disjunctively, as required by the context, to bring within the scope of these interrogatories and requests any information that might be deemed outside their scope by any other construction.

6.      Except as specifically provided herein, words that impart the singular shall include the plural and vice versa.

7.      In responding to these Requests, Wyeth is requested to furnish all documents in its actual or constructive possession, custody and/or control including, without limitation, documents which may be in the physical possession of another person or entity such as Your advisors, attorneys, investigators, employees, agents, associates, subsidiaries, parent and sister companies, affiliates, and/or representatives.

8.      If any document responsive to any Request was once within Wyeth's possession, custody or control but no longer is, please state:

(a) the identity of the last known custodian of the document;

(b) the date or dates on which the document was lost, misplaced, transferred, destroyed or otherwise disposed of;

(c) the identity of the person responsible for the loss, misplacement, transfer, destruction or other disposition of the document;

(d) the reasons for and circumstances surrounding the loss, misplacement, transfer, destruction or other disposition of the document; and

(e) any policy, directive, procedure, regulation or requirement pursuant to which the loss, misplacement, transfer, destruction or disposition of the document occurred or was carried out.

9.      If Wyeth objects to a document request on the grounds of privilege or work product, provide all non-privileged documents and information that is responsive, specify the precise manner in which the document is privileged in accordance with Local Civil Rule 34.1 and provide a privilege log in accordance with Local Civil Rule 34.1, identifying the date of the

3

document, the name of its author, the name of its recipient, the names of all people given copies of the document, the subject of the document, and the privilege or privileges asserted.

10.     These discovery requests shall be deemed continuing under Federal Rule of Civil Procedure 26(e).  Accordingly, any additional information referring or relating in any way to these requests which Wyeth acquires or which becomes known to Wyeth up to and including the time of trial shall be furnished to Orchid promptly after being so acquired or known by Wyeth.

11.     Pursuant to Rule 34(b) of the Federal Rules of Civil Procedure, Wyeth is instructed to produce documents as they are kept in the usual course of business.

## REQUESTS FOR PRODUCTION

### REQUEST NO. 1.

All documents filed in Court by any party in any of the Venlafaxine Litigations, including, but not limited to pleadings, motion papers, briefs, evidence, expert reports, deposition transcripts, hearing transcripts, trial transcripts and exhibits to any of the aforementioned.

### REQUEST NO. 2.

All documents served, but not filed, in any of the Venlafaxine Litigations, including but not limited to discovery responses, demonstrative evidence, and expert reports and any exhibits to any of the aforementioned.

### REQUEST NO. 3.

To the extent not covered by any of the preceding requests, all deposition transcripts, including exhibits, of depositions taken by any party in any of the Venlafaxine Litigations.

### REQUEST NO. 4.

To the extent not covered by any of the preceding requests, all court transcripts, including hearing transcripts and trial transcripts, in any Venlafaxine Litigations.

NSD\120898.1

**REQUEST NO. 5.**

To the extent not covered by any of the preceding requests, all tutorials provided to a Court, including presentations, exhibits and transcripts, in the Venlafaxine Litigations.

**REQUEST NO. 6**

To the extent not covered by any of the preceding requests, any correspondence to the Court in any of the Venlafaxine Litigations.

**REQUEST NO. 7**

Copies of any agreements relating to any settlement of any of the Venlafaxine Litigations.

**REQUEST NO. 8**

To the extent not covered by any of the preceding requests, copies of any license agreements relating to the resolution of any of the Venlafaxine Litigations.

DATED:  September 21, 2009

_____
**JASON B. LATTIMORE**
LATHAM & WATKINS LLP
One Newark Center, 16th Floor
Newark, New Jersey 07101-3174
Telephone: 973.639.1234
Facsimile:  973.639.7298

**TERRENCE J. CONNOLLY** (*pro hac vice*)
LATHAM & WATKINS LLP
885 Third Avenue, Suite 1000
New York, New York 10022-4834
Telephone: 212.906.1200
Facsimile:  212.751.4864

5

**KENNETH G. SCHULER** (*pro hac vice*)
LATHAM & WATKINS LLP
Sears Tower, Suite 5800
233 South Wacker Drive
Chicago, Illinois 60606
Telephone: 312.876.7700
Facsimile:  312.993.9767

**DARRYL H. STEENSMA** (*pro hac vice*)
LATHAM & WATKINS LLP
12636 High Bluff Drive, Suite 400
San Diego, California 92130
Telephone: 858.523.5400
Facsimile:  858.523.5450

Attorneys for Defendants Orchid Chemicals &
Pharmaceuticals Ltd. and Orgenus Pharma Inc.

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing:

**ORCHID'S FIRST SET OF REQUESTS FOR PRODUCTION TO PLAINTIFFS**

was served by electronic mail upon counsel for Plaintiff:

> Liza M. Walsh
> CONNELL FOLEY, LLP
> 85 Livingston Avenue
> Roseland , NJ 07068
> (973) 535-0500
> Email: lwalsh@connellfoley.com
>
> Basil J. Lewris
> Bill.Lewris@finnegan.com
> Allen M. Sokal
> Allen.Sokal@finnegan.com
> Robert D. Litowitz
> Rob.Litowitz@finnegan.com
> FINNEGAN, HENDERSON, FARABOW,
> GARRETT & DUNNER, L.L.P.
> 901 New York Avenue, N.W.
> Washington, D.C. 20001
> Telephone: (202) 408-4000
> Facsimile (202) 408-4400
>
> Attorneys for Plaintiff Wyeth

Dated:  September 21, 2009

**DARRYL H. STEENSMA** (*pro hac vice*)
LATHAM & WATKINS LLP
12636 High Bluff Drive, Suite 400
San Diego, California 92130
Telephone: 858.523.5400
Facsimile:  858.523.5450

# EXHIBIT 3

# CONNELL FOLEY LLP

## ATTORNEYS AT LAW

JOHN A. PINDAR (1969)
GEORGE W. CONNELL (2005)
ADRIAN M. FOLEY, JR.
GEORGE J. KENNY*
KENNETH F. KUNZMAN
SAMUEL D. LORD
RICHARD D. CATENACCI
RICHARD J. BADOLATO*
PETER D. MANAHAN
JOHN B. MURRAY
MARK L. FLEDER
KEVIN J. COAKLEY
THOMAS S. COSMA
KATHLEEN S. MURPHY
PATRICK J. McAULEY
PETER J. PIZZI*†
KEVIN R. GARDNER
ROBERT E. RYAN
MICHAEL X. McBRIDE*
JEFFREY W. MORYAN
PETER J. SMITH*
BRIAN G. STELLER
PHILIP F. McGOVERN, JR.
KAREN PAINTER RANDALL
LIZA M. WALSH
JOHN P. LACEY
MICHAEL J. CROWLEY·

TIMOTHY E. CORRISTON*
ERNEST W. SCHOELLKOPFF'
PATRICK J. HUGHES*•
JAMES C. McCANN*
JOHN D. CROMIE
ANGELA A. IUSO*
WILLIAM T. McGLOIN*
BRENDAN JUDGE
CHARLES J. HARRINGTON III*
STEPHEN V. FALANGA*
JEFFREY L. O'HARA
TRICIA O'REILLY*
ANTHONY F. VITIELLO*'
MARC D. HAEFNER
JONATHAN P. McHENRY
JAMES P. RHATICAN*'
MATTHEW W. BAUER*
BRAD D. SHALIT*
W. NEVINS McCANN*
THOMAS J. O'LEARY*
MITCHELL W. TARASCHI
M. TREVOR LYONS*
MICHAEL A. SHADIACK
PATRICIA A. LEE*'
AGNIESZKA ANTONIAN*
BRYAN P. COUCH*

*ALSO ADMITTED IN NEW YORK
+ALSO ADMITTED IN PENNSYLVANIA
·ONLY ADMITTED IN NEW YORK
PLEASE REPLY TO ROSELAND, NJ

85 LIVINGSTON AVENUE
ROSELAND, N.J. 07068-3702
(973) 535-0500
FAX: (973) 535-9217

JERSEY CITY OFFICE
HARBORSIDE FINANCIAL CENTER
2510 PLAZA FIVE
JERSEY CITY, N.J. 07311-4029
(201) 521-1000
FAX: (201) 521-0100

NEW YORK OFFICE
888 SEVENTH AVENUE
NEW YORK, N.Y. 10106
(212) 262-2390
FAX: (212) 262-0050

PHILADELPHIA OFFICE
1500 MARKET STREET
PHILADELPHIA, PA 19102
(215) 246-3403
FAX: (215) 665-5727

COUNSEL

JOHN W. BISSELL
FRANCIS E. SCHILLER*
EUGENE P. SQUEO*
NOEL D. HUMPHREYS*
ANTHONY ROMANO II*
STEVE BARNETT*
THOMAS M. SCUDERI*

CRAIG S. DEMARESKI*
ELIZABETH W. EATON
JOSEPH M. MURPHY
JASON E. MARX*
DOUGLAS J. SHORT*
JAMES M. MERENDINO
MICHELE T. TANTALLA*
HECTOR D. RUIZ*
NEIL V. MODY*
ROBERT A. VERDIBELLO*
MATTHEW S. SCHULTZ*
JENNIFER C. CRITCHLEY*
PATRICK S. BRANNIGAN*
DANIELA R. D'AMICO*
CHRISTINE I. GANNON*
PHILIP W. ALLOGRAMENTO III*
CATHERINE G. BRYAN*
JAMES C. HAYNIE*
LAURIE B. KACHONICK*
ANDREW C. SAYLES*
STEPHEN D. KESSLER
CHRISTOPHER ABATEMARCO*
AARON M. BENDER

KARIN I. SPALDING*
JODI ANNE HUDSON*
RICHARD A. JAGEN*
OWEN C. McCARTHY*
NANCY A. SKIDMORE*
GREGORY E. PETERSON*

ANTHONY J. CORINO*
WILLIAM D. DEVEAU*
DANIEL B. KESSLER*
CONOR F. MURPHY*
MEGHAN B. BARRETT*
RUKHSANAH L. LIGHARI*
NICOLE B. DORY*
PATRICK E. DURING
CHRISTIAN J. JENSEN*
JOSEPH A. VILLANI, JR.*
ANDREW B. BUCKMAN
MICHAEL BOJRASA·
E. KEVIN VOLZ*
BETH A. PERLICCHI
JENNIFER E. CONSTANTINOU*
CHRISTOPHER M. HEMRICK*
SUSAN KWIATKOWSKI
MONICA SETH*
MELISSA D. LOPEZ
JASON D. FALK
JOANNA S. RICH
NEIL V. SHAH
STEPHEN R. TURANO*

April 30, 2010

## VIA FACSIMILE AND ELECTRONIC FILING

Hon. Douglas E. Arpert, U.S.M.J.
U.S. District Court, District of NJ
C.S. Fisher Fed. Bldg. & U.S. Courthouse
402 E. State St.
Trenton, NJ 08608

> Re:  *Wyeth v. Orgenus Pharma Inc. and Orchid Chemicals & Pharmaceuticals Ltd.,* Civil Action No. 3:09-cv-03235-FLW-DEA

Dear Judge Arpert:

This office, together with Finnegan, Henderson, Farabow, Garrett, & Dunner, LLP, represent Plaintiff Wyeth in this case. We write on behalf of Wyeth to respectfully respond to Defendants' April 22, 2010, letter seeking the production of confidential settlement agreements that Wyeth has entered into with defendants in prior related cases involving the same three patents at issue here and that are subject to confidentiality obligations to those third parties. Those prior settlement agreements and their terms are not relevant to any issue in the case, are not reasonably calculated to lead to admissible evidence, and are not discoverable in this action. *See Centillion Data Sys., Inc. v. Ameritech Corp.,* 193 F.R.D 550 (S.D. Ind. 1999) (denying discovery of settlement agreements from prior related patent infringement litigation involving the same patents).

Here, Defendants blatantly seek Wyeth's prior settlements with other generic drug manufacturers for the improper purpose of aiding them in negotiating a settlement with Wyeth in this case. In a recent communication with Wyeth's in-house negotiator, Defendants counsel stated:

> [M]y client has expressed that it will only be able to take the time and expense of flying from India to New Jersey [with Wyeth for a settlement meeting] if it has accurate information to have a fruitful negotiation with the [Wyeth] team. Without understanding the royalties paid by the other settling parties, Orchid

Hon. Douglas E. Arpert, U.S.M.J.
April 30, 2010
Page 2

does not feel it is in a position to negotiate settlement. Orchid does not wish to be disadvantaged in the marketplace in pricing.

(Exhibit A, attached hereto). In fact, Defendants acknowledge to this Court that they seek Wyeth's prior settlement agreements to "facilitate any settlement discussions." Defendants' April 22, 2010, Letter at p. 2. But "information is not relevant or discoverable under Rule 26(b) because it might assist a party's evaluation of whether to settle or try a case or help a party prepare negotiating strategies." *Id.* at 552, citing *Griffin v. Mashariki,* No. 96 CIV CY00 (DC), 1997 WL 756914 (S.D.N.Y. 1997); *Wyeth v. Lupin Ltd.,* Civil No. 1:07-cv-00632-WDQ (Mar. 28, 2008) (denying Lupin's discovery request for settlement information where Lupin failed to demonstrate how the information would lead to admissible evidence) (order attached hereto as Exhibit B).

Furthermore, a party seeking discovery of prior settlements must make a particularized or heightened showing that the settlement information sought is relevant and likely to lead to admissible evidence. *Ford Motor Co. v. Engewood Properties, Inc.,* 257 F.R.D. 418, 423 (D.N.J. 2009); *Dent v. Westinghouse,* slip op., MDL No. 875, 2010 WL 56054, at *1 (E.D. Pa. Jan. 4, 2010) ("Courts in this circuit and others, to effectuate the goals of both rules, have required a more 'particularized showing' that the evidence [of settlement] sought is relevant and calculated to lead to the discovery of admissible evidence," *quoting Block Drug Co. v. Sedona Labs. Inc.,* No. CIV A 06-350, 2007 WL 1183828, at *1 (D. Del. Apr. 19, 2007)); *see also Key Pharma v. ESI-Lederle, Inc.,* 1997 WL 560131, at *2 (E.D. Pa. Aug. 29, 2007) ("[T]he burden is on the party seeking discovery to make a particularized showing 'that the documents relating to the settlements negotiations are relevant and likely to lead to the discovery of admissible evidence.'"); *Ford Motor,* 257 F.R.D. at 424 ("[M]ere 'interest' in the documents is not enough."); *Doe v. Methacton School Dist.,* 164 F.R.D. 175, 176-77 (E.D. Pa. 1995) ("These assertions [that the Release could lead to admissible evidence and that it is 'clearly' relevant to the issue of damages and is imperative for trial preparation], however, without any detail or analysis whatsoever, are insufficient to prove the relevance of the Release.").

Instead of the required particularized showing of relevance, Defendants simply assert that prior settlement and license terms may sometimes be relevant to the issues of patent validity, damages, preliminary injunctive relief, and patent misuse.[1] Here, however, Wyeth does not rely on

---

[1] In the five cases cited by Defendants, a particularized showing on one or more of these issues was established: *Datapoint Corp. v. Picturetel Corp.,* No. 3:93-cv-2381, 1988 WL 51356 (N.D. Tex. 1998) (defendant sought settlement agreement for the validity and damages issues in the case); *Key Pharma., Inc. v. ESI-Lederle, Inc.,* No. 96-1219, 1997 WL 560131 (E.D. Pa. Aug. 29, 1997) (defendant met the heightened burden by demonstrating that the settlement agreement was itself or would provide evidence of a pattern of patent misuse, defendant's asserted defense, by showing that patentee had asserted its patent against "clearly non-infringing" products); *Phoenix Solutions Inc. v. Wells Fargo Funds Mgmt.,* 254 F.R.D. 568, 583 (N.D. Cal. 2008) (finding settlement communications between patentee and thirty third-party companies relevant to show "what Phoenix believes infringes the patents in suit, what Phoenix would consider a reasonable royalty rate to the patents-in-suit," and because they might reveal evidence of prior art" relevant to invalidity); *Am. Standard, Inc. v. Pfizer, Inc.,* MISC 87-1-73-IP, 1988 WL 156152 (S.D. Ind. July 8, 1988) (patentee affirmatively intended to rely on prior settlement as evidence of commercial success and non-

Hon. Douglas E. Arpert, U.S.M.J.
April 30, 2010
Page 3

the settlements and licenses from the prior related cases to establish patent validity. Furthermore, this case brought under the Hatch-Waxman Act involves neither a claim for damages nor an imminent request for a preliminary injunction. (Wyeth's ultimate remedy, should it prevail, would be an order that FDA approval of Orchid's ANDA shall be no earlier than the expiration date of Wyeth's patents and a permanent injunction barring Defendants from selling their infringing generic version of Wyeth's Effexor XR antidepressant. Wyeth's prior settlements have no bearing whatsoever on Wyeth's entitlement to that relief). And while Defendants speculate that Wyeth may at some point move for a preliminary injunction before the automatic 30-month stay of approval of Defendant's ANDA expires, that event is not until November, 2011, may never come to pass, and cannot justify Defendants' present request, even if it were not a mere pretext for seeking the prior settlements as a negotiation tool in this case.

Defendants' suggest that permitting discovery of Wyeth's prior agreements may reveal evidence to support a patent misuse defense or counterclaim. But Defendants' have not raised any such defense in this case. And they have not made the required particularized showing of how discovery of prior settlements is reasonably calculated to lead to admissible evidence of any putative potential defense of patent misuse. On the contrary, such discovery is *unlikely* to do so, since all of Wyeth's prior settlement agreements were approved by each of the courts presiding over the matters before the parties entered into license agreements, and the content of those agreements passed review by the FTC before becoming final. None of the cases cited by Defendants support their position that discovery of prior settlements should be permitted simply to troll for evidence of unasserted defenses, and none apply the Third Circuit's heightened "particularity" standard. Specifically, in *Plant v. Merrifield Town Ctr. Ltd P'ship.*, No. 1:08cv374, 2010 WL 1039875 (E.D. Va. Mar. 18, 2010), plaintiff requested responses to interrogatories, <u>not</u> production of prior settlement agreements; in *Ashkenazi v. Lincoln Nat'l Life Ins. Co.*, No. 08 CV 3235(ENV), 2009 WL 1346394 (E.D.N.Y. May 13, 2009), defendant sought discovery on issues unrelated to production of settlement agreements; and in *Condit v. Dunne*, 225 F.R.D. 100 (S.D.N.Y. 2004), defendant did not specifically seek production of the settlement agreement itself or any settlement agreement terms.

In addition to failing to demonstrate the relevance of Wyeth's settlement agreements to an issue in the case, the Federal Rule of Evidence 408 weighs against disclosure of the documents. Under Rule 408, evidence of settlement offers and acceptances is not admissible on the issues of liability and damages, although it might be admissible for other purposes "such as proving bias or prejudice of a witness, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408. *See Shipes v. BIC Corp.*, 154 F.R.D. 301, 309 (M.D. Ga. 1994) (Rule 408 makes it unlikely that information about prior settlements will

obviousness); *Datatreasury Corp. v. Wells Fargo & Co.*, Civ. No. 2:06-CV-72 DF, 2010 WL 903259 (E.D. Tex. Mar. 4, 2010) (admitting litigation-related licenses offered by the <u>patentee</u> to show non-obviousness, acknowledging defendants' arguments regarding the dubious reliability of litigation-related licenses); *Phoenix Solutions, Inc. v. Wells Fargo Funds Mgmt.*, 254 F.R.D. 568, 582 (N.D. Cal. 2008) (the patentee had produced, and presumably intended to rely on, prior settlement agreements with third parties as evidence of patent validity). As discussed above, none of the issues warranting the production of confidential settlements are present here.

Hon. Douglas E. Arpert, U.S.M.J.
April 30, 2010
Page 4

lead to admissible evidence).  Here, where Defendants expressly seek discovery of prior settlement agreements to assist in their settlement negotiations, Rule 408 makes it unlikely that discovery of those prior agreements or terms will lead to admissible evidence, and thus places them outside the scope of discovery.  *Bottaro v. Hatton Assoc.,* 96 F.R.D. 158, 159 (E.D.N.Y. 1982) ("[W]hile admissibility and discoverability are not equivalent, it is clear that the object of the inquiry must have some evidentiary value before an order to compel disclosure of otherwise inadmissible material will issue."); *Ford Motor,* 257 F.R.D. at 423-24 ("[D]iscovery which can only lead to inadmissible evidence is prohibited by the plain language of Rule 26 and would violate the command of Rule 1 of the Federal Rules of Civil Procedure, which requires that the Rules be construed and administered to secure the just, speedy, and inexpensive determination of every action," *quoting Steele v. Lincoln Fin. Group,* No. 05-7163, 2007 WL 1052495, at *4 (N.D. Ill. Apr. 3, 2007)).

In their letter, Defendants characterize the progress of settlement as "painfully slow."  But as evidenced by the parties' recent settlement communications, Orchid, not Wyeth, is impeding the progress of settlement talks by improperly demanding access to Wyeth's confidential terms of settlement in other cases before agreeing to even meet with Wyeth business representatives, and then waiting over five months to raise the issue with the Court.  And in any event, Orchid does not need access to Wyeth's previous settlement terms to resolve this case.  In each of nine prior settled cases, without having access to such information, the ANDA filer was able to negotiate what both parties found to be an acceptable settlement.

Finally, the prior settlement agreements contain confidential business information of third parties, including royalties and other items, and have been filed under seal in each of the courts in which the case was pending.  Their production would violate Wyeth's confidentiality obligations in those prior case, and provides yet another reason for strictly enforcing the requirement for a particularized showing of relevance, which Defendants' cannot satisfy, given their true motive for seeking this discovery, namely, to gain tactical advantage in settlement negotiations.

For the above reasons, Wyeth respectfully submits that Defendants' request that the Court order Wyeth to produce the settlement and license agreements sought in Defendants' Request No. 8 should be denied.  We thank the Court for its consideration of this submission and should Your Honor or your staff need anything further we are always available.

Respectfully submitted,

Liza M. Walsh

LMW/CIG
Attachment(s)

cc:   All Counsel of Record (via ECF and Email)

2335562-01

# EXHIBIT A

**Cohn, Arthur J.**

| | |
|---|---|
| **From:** | STEVEN.CHINOWSKY@lw.com |
| **Sent:** | Tuesday, April 13, 2010 1:00 PM |
| **To:** | Cohn, Arthur J. |
| **Subject:** | RE: Orchid |

Arthur,

While we are available the week of May 10th as well, my client has expressed that it will only be able to take the time and expense of flying from India to New Jersey if it has accurate information to have a fruitful negotiation with the Pfizer team. Without understanding the royalties paid by the other settling parties, Orchid does not feel it is in a position to negotiate settlement. Orchid does not wish to be disadvantaged in the marketplace in pricing. Can we discuss possible options to break through this impasse? Feel free to call me at my office.

Regards,
Steve


**Steven T. Chinowsky**

**LATHAM & WATKINS LLP**
600 West Broadway, Suite 1800
San Diego, CA 92101-3375
Direct Dial: +1.858.523.5437
Fax: +1.619.696.7419
Email: steven.chinowsky@lw.com
http://www.lw.com

**From:** Cohn, Arthur J. [mailto:Art.Cohn@pfizer.com]
**Sent:** Friday, April 09, 2010 8:32 AM
**To:** Chinowsky, Steve (SD)
**Subject:** RE: Orchid

Steve,

The Pfizer team is available on Friday May 7th and generally available during the week of May 10th. We could meet in either our NY office, our Madison, NJ office or our Collegeville, PA office.

Please let me know what works for the Orchid team.

Art

**From:** STEVEN.CHINOWSKY@lw.com [mailto:STEVEN.CHINOWSKY@lw.com]
**Sent:** Monday, April 05, 2010 4:43 PM
**To:** Cohn, Arthur J.
**Subject:** RE: Orchid

Hi Arthur,

I just returned from India for the closing of the Hospira/Orchid transaction wherein Hospira acquired Orchid's injectable business. As part of that transaction Dr. C.B. Rao has left Orchid to head the newly formed Hospira India. Thus, your new business contact at Orchid is Madhu Rao (no relation to Dr. Rao). I spoke with Madhu last week about Orchid's ongoing litigation matters, including Venlafaxine. Madhu suggested we all meet in New Jersey at the beginning of May. Does that work for you?

Regards,
Steve

**From:** Cohn, Arthur J. [mailto:Art.Cohn@pfizer.com]
**Sent:** Monday, April 05, 2010 1:38 PM
**To:** Chinowsky, Steve (SD)
**Subject:** Orchid

Steve,


4/29/2010

By way of follow up from our discussion of March 5th, have you obtained the availability of the Orchid business team for a meeting or teleconference to discuss the settlement proposals regarding the litigation pertaining to Orchid's ANDA for venlafaxine.

Art

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
To comply with IRS regulations, we advise you that any discussion of Federal tax issues in this
e-mail was not intended or written to be used, and cannot be used by you, (i) to avoid any penalties
imposed under the Internal Revenue Code or (ii) to promote, market or recommend to another party any
transaction or matter addressed herein.

For more information please go to  http://www.lw.com/docs/irs.pdf
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This email may contain material that is confidential, privileged and/or attorney work product for
the sole use of the intended recipient.  Any review, reliance or distribution by others or forwarding
without express permission is strictly prohibited.  If you are not the intended recipient, please
contact the sender and delete all copies.

Latham & Watkins LLP

4/29/2010

# EXHIBIT B

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

CHAMBERS OF
SUSAN K. GAUVEY
U.S. MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
MDD_skgchambers@mdd.uscourts.gov
(410) 962-4953
(410) 962-2985 - Fax

March 28, 2008

Jerrold A. Thrope, Esq.
Gordon, Feinblatt, Rothman,
 Hoffberger & Hollander
233 East Redwood Street
Baltimore, MD 21202-3332

Michael B. MacWilliams, Esq.
Venable, LLP
Two Hopkins Plaza, Suite 1800
Baltimore, MD 21201-2978

   Re: Wyeth v. Lupin Ltd., et al.
     Civil No. WDQ-07-632

Dear Counsel:

   This is a patent dispute now in the discovery phase.  Wyeth
has sued Lupin for infringement of various of its patents based
on Lupin's filing of an abbreviated New Drug Application ("ANDA")
with the FDA for approval to market a generic copy of Wyeth's
Effexor XR® pharmaceutical products.  Lupin has filed various
affirmative defenses and counterclaims asserting the invalidity
of '171, '120 and '958 patents and non-infringement of the
patents.  By Order dated January 16, 2008, Judge William D.
Quarles referred to the undersigned the determination of
discovery disputes.  (Paper No. 55).  Wyeth has filed a motion
under Fed. R. Civ. P. 26(c) for an order protecting Wyeth from
unduly burdensome and oppressive discovery (Paper No. 51), which
Lupin opposed.  The parties resolved most of their discovery
disputes.  The only remaining dispute involves three of the
topics in Lupin's 30(b)(6) deposition notice to Wyeth.  Wyeth has
refused to produce a witness on these topics, asserting that they
are neither relevant nor reasonably calculated to lead to the
discovery of admissible evidence.  Briefing is complete.  A
telephone hearing was held on February 19, 2008.

   For the reasons set forth below, the Court grants Wyeth's
motion for a protective order as to deposition Topics 7, 12 and

13.

Topic 7:  "The settlement of litigation involving the ALZA '457 patent, including without limitation, the terms and circumstances thereof, the content of any settlement agreement, and documents relating to settlement, an identification of documents relating thereto, and an identification of persons having knowledge of the foregoing."

Lupin makes several points in support of its discovery demand.  First, Lupin asserts that "the ALZA patent contains method claims that are substantially similar to those of the Wyeth patents, and the settlement may refer or lead to information that is relevant to the validity of the Wyeth patents."  (Paper No. 71, 2).[1]

Second, Lupin asserts that "during the ALZA litigation, Wyeth filed for reexamination of the ALZA patent in the U.S. Patent and Trademark Office – and in doing so alleged that the ALZA patent directed to the therapeutic use of an extended-release venlafaxine product was invalid.  Inquiry into the settlement may shed light on Wyeth's position here that its patents on using extended-release venlafaxine products are valid (while ALZA's patent on substantially the same subject matter is not)."  Id.

Third, Lupin asserts that "the ALZA work underlying its patent (and a related ALZA PCT published patent application) is prior art to the Wyeth patent, and the settlement may reflect or refer information that is relevant to the validity of the Wyeth patent."  Id.

Finally, in its post-hearing briefing Lupin argued that

---

[1] In its reply, Lupin expands its original points, but does not raise any new points.  Lupin declares that the mere fact the litigation between ALZA and Wyeth concerned (1) Wyeth's Effexor XR® product, the same product purportedly covered by Wyeth's patents at issue in this litigation, and (2) patent claims directed to a method of treatment which arguably cover the same subject matter as those of the Wyeth patents-in-suit, is sufficient evidence that testimony related to such litigation and the settlement thereof are "reasonably calculated to lead to the discovery of admissible evidence" in this case.  Moreover, Lupin believes it has a right to discover factual positions taken by Wyeth concerning its Effexor XR® product in settlement documents relating to its litigation with ALZA in order to determine if such factual positions are inconsistent with those taken by Wyeth in this litigation.  (Paper No. 73, 1).

there is no recognized "settlement privilege" under federal law
which would in any way shield otherwise discoverable information
because it was generated or developed in the course of settlement
negotiations.  (Paper No. 75, 1).

Thus, Lupin argues the information sought in Topic 7 is
"relevant or reasonably calculated to lead to discovery of
admissible evidence."

Wyeth makes several arguments in reply.

First, as to Lupin's assertions of relevance, Wyeth counters
that the litigation involved an ALZA patent (not a Wyeth patent)
(Paper No. 72, 1).  However, Wyeth does not disagree that the
ALZA suit alleged that Effexor XR® infringed ALZA's patent on
extended release venlafaxine.  As to the issues in the re-
examination, Wyeth states that as an ex parte matter, it was not
involved in the re-examination and further that "the settlement
could not and did have any impact on the re-examination."  (Paper
No. 72, 2).  Finally, as to the argument that ALZA work is prior
art to the Wyeth patent, and the settlement may reflect
information relevant to the validity of the Wyeth patent, Wyeth
counters that "ALZA's work underlying its patent was not public
and is therefore not prior art."  (Paper No. 72, 2).

Second, Wyeth declares that "[t]he lack of any substantive
activity in the ALZA action [no meaningful discovery had taken
place at the time of the stay and subsequent dismissal]
demonstrates that Lupin's assertion that the ALZA settlement may
refer or lead to information relevant to the validity of the
Wyeth patents has no basis."  (Paper No. 72, 1).  Additionally
and significantly, Wyeth has stated that "neither the validity
nor the infringement of the patent was involved in that [Wyeth -
ALZA] settlement negotiation" (Tr. 5) and moreover has agreed to
"produc[e] a 30(b)(6) witness to confirm that the Wyeth/ALZA
settlement agreement does not contain any terms relating to the
validity or infringement of the ALZA patent."  (Paper No. 77,
n.2).

Third, Wyeth states, but without citation to any
authorities, that Lupin should not be entitled to discovery about
a settlement of a different case involving a third party's
patent.  (Id.)

Fourth, in its post hearing briefing, Wyeth disclaims any
assertion of a "settlement privilege."  However, Wyeth argues
that under Federal Rule of Evidence 408's bar to the
admissibility of settlement discussions and Fourth Circuit case

3

law, it is highly unlikely that any settlement information would
lead to the discovery of admissible evidence.

The Court is largely persuaded by Wyeth's argument that the
information sought in Topic 7 is not reasonably calculated to
lead to admissible evidence.  While it is theoretically possible,
since the ALZA litigation and this litigation involve the same
extended release product, that Wyeth might have taken a position
or made a statement bearing on the issues in this case (although
Wyeth denies it)(Tr. 5), the Court declines to compel this
discovery for several reasons.  First, Lupin has not demonstrated
how this information, if discovered, would lead to admissible
evidence.  As Wyeth correctly stated: "[S]imply put, Lupin hopes
discovery might yield evidence that might help it to argue the
invalidity and the non-infringement of Wyeth's patents.  Fed. R.
Evid. 408 is clear, however, that settlement negotiations are not
admissible to prove invalidity of a claim and Lupin has cited no
alternative reason that would suggest this evidence could
possibly lead to the discovery of admissible evidence under Fed.
R. Civ. P. 26(b)(1)."  (Paper No. 77, 1).  The Court agrees.

Rule 408 unequivocally bars admission of settlement
communications to prove invalidity of the patent or non-
infringement.  Accord Fiberglass Insulators, Inc. v. Dupuy, 856
F.2d 652, 654 (4th Cir. 1988), (statements made during settlement
of a prior related litigation also are clearly not admissible in
a subsequent case.)  Wyeth argues that the principles of
Fiberglass Insulators apply equally to preclude the discovery of
settlement negotiations, and cites two cases to support this
argument. See Goodyear Tire & Rubber Co. v. Chiles Power Supply,
Inc., 332 F.3d 976, 980 (6th Cir. 2003) (recognizing a settlement
privilege because there is no guarantee of the veracity of such
testimony, because such a privilege is necessary for settlement
to be effective, and the historical recognition of the need for
secrecy surrounding settlement); Duncan v. Phoenix Supported
Living, Inc., 2006 LEXIS 66742, 8-10 (W.D.N.C.) (denying
discovery of settlement negotiations because plaintiffs did not
show that it was calculated to lead to discovery of admissible
evidence or that the information was otherwise unavailable to
them, because the evidence likely contained the thoughts and
legal theories of defendants and counsel, and it would chill
settlement).  These cases are strong support for Wyeth's
position.

Moreover, other case law suggests - indeed requires - a
heightened showing of need and relevance where discovery of
settlement documents and communications are sought.  Wyeth does
not ask the Court to recognize a "settlement privilege" to shield

its pre-settlement communications from discovery (Paper No. 77, 13). Nor does this Court need to reach the question to resolve the issue before it.

In fact, courts are split on whether to recognize an independent settlement privilege under Federal Rule of Evidence 510. Compare Goodyear Tire, 332 F.3d at 980 (recognizing a settlement privilege because there is no guarantee of the veracity of such testimony, because such a privilege is necessary for settlement to be effective, and the historical recognition of the need for secrecy surrounding settlement) with In re Subpoena Issued to Commodity Futures Trading Commission, 370 F. Supp.2d 201, 208-12 (D.C. 2005) (citing Jaffee v. Redmond, 518 U.S. 1, 12 (1996) and finding that no settlement privilege exists because no consensus exists in federal or state law for such a privilege; Congress considered the issue and chose to limit the admissibility of such evidence, rather than the discoverability; the privilege was not listed among those identified in the proposed Federal Rules of Evidence; and the opposing party has not established "with a high degree of clarity and certainty that the proposed privilege will effectively advance a public good").

If the case law in this area thus does not unequivocally establish a settlement privilege under federal law, the pertinent case law does counsel judicial caution in laying bare settlement documents and communications. While the Fourth Circuit has not recognized a settlement privilege, it has indicated that it would apply enhanced protections to settlement documents and communications sought in discovery. In In re Anonymous, the Fourth Circuit required a heightened showing by parties seeking to disclose confidential settlement information to resolve a dispute. 283 F.3d 627 (4th Cir. 2002). The court determined that it must "balance the public interest in protecting the confidentiality of the settlement process and countervailing interests, such as the right to every person's evidence." Id. at 637. The court decided to require that the party seeking disclosure of settlement documents demonstrate that "manifest injustice will result from non-disclosure." Id. Although Anonymous arose in a different factual context, it strongly suggests to this Court that a party seeking discovery of settlement documents must demonstrate a heightened showing of need and relevance to the action.

Furthermore, many other courts have similarly required a heightened or "particularized" showing of need and relevance to permit the discovery of settlement documents because of the significant policy considerations against discovery. Lupin does not dispute this in its submissions, but only argues that a

majority of courts reject a settlement privilege. In fact, many of the cases cited by Lupin apply a heightened standard to discovery of settlement documents. See Philadelphia's Church of Our Savior v. Concord Tp., 2004 WL 1824356 *4 (E.D. Pa.) ("The strong Congressional policy behind Fed. R. Evid. 408 as well as the liberal discovery rules support putting the burden on the party seeking discovery to make a particularized showing that the documents relating to the settlement negotiations are relevant and likely to lead to the discovery of admissible evidence."); Primetime 24 Joint Venture v. Echostar Communications Corp., 2000 WL 97680 *4 (S.D.N.Y.) (finding that courts are disinclined to require disclosure of settlement information, particularly if the negotiations are ongoing, absent a substantial showing of need, due to policy considerations that seek to give attorneys a zone of privacy in handling ongoing litigation); Key Pharmaceuticals, Inc. v. ESI-Lederle, Inc., 1997 WL 560131 *2 (E.D. Pa.) (finding that "the burden is on the party seeking discovery [of a settlement agreement] to make a particularized showing that the documents related to the settlement negotiations are relevant and likely to lead to the discovery of admissible evidence"); Butta-Brinkman v. FCA Int'l, LTD, 164 F.R.D. 475, 476-77 (N.D. Ill. 1995) ("Absent a showing by the plaintiff that she will be unable to obtain the relevant information through other discovery requests or interrogatories, we believe these settlement documents ought to retain their confidentiality."); Shipes v. BIC Corp., 154 F.R.D. 301, 309 (M.D. Ga. 1994) ("Other courts have required that one make a particularized showing that settlement information is likely to lead to admissible evidence before it can be discovered. This position encourages settlements and protects their confidentiality while still allowing discovery if the information is truly relevant. This court, then, will require plaintiff to make a particularized showing in order to obtain discovery of settlement information.") (internal citations omitted); Morse/Diesel, Inc. v. Trinity Industries, Inc., 142 F.R.D. 80, 84 (S.D.N.Y. 1992) (adopting Bottaro's holding and finding that the requesting party is only entitled to discovery of settlement materials upon showing that the information it seeks "appears reasonably calculated to lead to the discovery of admissible evidence"); Bottaro v. Hatton Assoc., 96 F.R.D. 158, 160 (E.D.N.Y. 1982) (finding that the requesting party must make a "particularized showing of a likelihood that admissible evidence will be generated by the dissemination of the terms of a settlement agreement" in order for the evidence to be "reasonably calculated to lead to discovery" and discoverable under Rule 26).

Lupin seeks to discover settlement documents and communications from the ALZA litigation for the purpose of determining whether Wyeth took any factual positions concerning

6

its Effexor XR® product inconsistent with those taken in this litigation.[2] Lupin has not demonstrated that injustice will result from non-disclosure, nor demonstrated a particularized showing of the likelihood that the discovery will generate admissible evidence.  Like the plaintiffs in Duncan, Lupin has "not shown to the satisfaction of this court that discovery of what are clearly inadmissible documents are 'calculated to lead to the discovery of admissible evidence.'" Duncan, 2006 LEXIS 66742 at 8.  Moreover, the Advisory Committee to the Rules and a number of courts have recognized the lack of reliability or veracity of statements made in settlement, to the point of undermining their relevance.  As the Court observed in Cook v. Yellow Freight System, Inc., 132 F.R.D. 548, 554 (E.D. Cal. 1990), overruled on other grounds by Jaffee, 518 U.S. 1:

> Settlement negotiations are typically punctuated with numerous instances of puffing and posturing since they are 'motivated by a desire for peace rather than from a concession of the merits of the claim.'  What is stated as fact on the record could very well not be the sort of evidence which the parties would otherwise actually contend to be wholly true.  That is, the parties may assume disputed facts to be true for the unique purpose of settlement negotiations.  The discovery of these sort of 'facts' would be highly misleading if allowed to be used for purposes other than settlement.  (internal citations omitted).

The Goodyear court likewise noted that:

> one of the proposed rationales for the enactment of Fed. R. Evid. 408 was the statements made in furtherance of settlement are never relevant.  The advisory committee note to Rule 408 states that 'exclusion may be based on' the fact that '[t]he

_____

[2] Lupin states in its submission that

> it has a right to discover factual positions taken by Wyeth concerning its Effexor XR product in settlement documents relating to its litigation with Alza in order to determine if such factual positions are inconsistent with those taken by Wyeth in this litigation. To the extent the settlement related documents do not contain information that is inconsistent with positions taken by Wyeth in this litigation, Lupin is willing to drop this deposition topic.

(Paper No. 73, 1.)

evidence is irrelevant, since the offer may be motivated by a desire for peace rather than from any concession of weakness of position.

Id. at 983.

As Lupin has not asserted a sufficient basis for the discovery of settlement documents and communications between Wyeth and ALZA, Wyeth's motion for a protective order as to Topic 7 is granted.

Topic 12: "An identification of benefits (e.g., reduction in side effects such as the level, severity or incidences of nausea or emesis) provided or alleged to be provided by a formulation containing O-desmethylvenlafaxine and salts thereof, such as desvenlafaxine succinate (Pristiq), relative to a Venlafaxine Product (e.g., Effexor or Effexor XR), including without limitation an identification of all documents reflecting or relating to such benefits, the date(s) of recognition of such benefits, all facts supporting or otherwise relating to such benefits, and an identification of persons having knowledge of the foregoing."

Lupin seeks information on the asserted benefits of Wyeth's next generation extended release Venlafaxine product Pristiq™ relative to the current product Effexor XR®. Lupin asserts that Effexor XR® and Pristiq™ products are "closely related" as the active ingredient in Pristiq™ is "desvenlafaxine" which is the active "metabolite" to which venlafaxine hydrochloride, the active ingredient in Effexor XR® is converted in the body. "[T]his information pertaining to the benefits allegedly provided by Wyeth's Pristiq™ product ... is relevant to the patentability of the Wyeth patents-in-suit and is reasonably included to lead to the discovery of admissible evidence." (Paper No. 71, 3).

Wyeth counters that Pristiq™, which has not yet received FDA approval, is not prior art. "The information sought about the side effect profile of Pristiq™ has no relevance to the patentability of the Wyeth patents-in-suit in fact or law." (Paper No. 72, 2). In its reply, Lupin acknowledged that Pristiq™ is not prior art but maintained the relevance of Pristiq™ information nonetheless.

At the hearing, this Court stated that it did not see how Pristiq™ discovery was relevant, but permitted Lupin to clarify a "specific use" it could make of the Pristiq™ information "in terms of the issues of patentability" of Effexor XR®. (Tr. 25.)

Subsequently, Lupin submitted an expert affidavit, identifying two reasons why the information on Pristiq may be relevant in this case. (Paper No. 76, Ex. 7, 2.) First, Dr. Moreton stated that "information concerning the source of nausea and emesis obtained during the development of Pristiq may indicate that the reduction of nausea and emesis has little to do with controlling the concentration of venlafaxine in the bloodstream via an extended release formulation, but instead on the concentration of the metabolite ODV." (Paper No. 76-7, ¶ 4).

The Court agrees with Wyeth that the question as posed seems to have nothing to do with the patents-in-suit. It is not disputed that Effexor XR® contains only venlafaxine; ODV is not present in the formulation. While venlafaxine breaks down in the body into metabolites, including ODV, Wyeth asserts - unrebutted by Lupin - that "the claims relate to the administration of venlafaxine and say nothing about the levels of ODV." (Paper No. 78, 2).

Moreover, Wyeth has cited case law providing that "an inventor need not comprehend the scientific principles on which the practical effectiveness of his invention rests." Fromson v. Advance Offset Plate, Inc., 720 F.2d 1565, 1570 (Fed. Cir. 1983). Thus, whether the reduction of nausea and emesis is the effect of the concentration of the venlafaxine or the effect of the concentration of the metabolite ODV once broken down in the body (if the two effects can be separated) is immaterial to the validity of the patent. This basis for the discovery is unpersuasive.

Second, Dr. Moreton states that "because the claims recite a reduction in nausea and emesis, and a method of determining whether such reduction has occurred is not provided in the patents-in-suit, it is my further opinion that any testing in support of Pristiq's alleged reduction of nausea and emesis may be relevant to the identification of such a method." (Paper No. 76-7, ¶ 5). Following up on the expert's observation, counsel states that the requested information "would be relevant to identifying such a method" and then simply declares, without linking the need for this information to any specific aspect of the proof necessary to the defense of invalidity or claim of non-infringement, that "[t]his information is clearly reasonably calculated to lead to the discovery of admissible evidence." (Paper No. 76, 3). Wyeth rejects Lupin's insinuation that its patents-in-suit are deficient for not spelling out a method of determining whether such reduction in nausea and emesis has occurred. Wyeth further notes that it has provided "a huge amount of documents relating to the clinical testing of Effexor

9

XR® ... and Lupin has not explained why these documents do not
provide the information it says it needs to assess the method
used to compare the side effects of Effexor XR® with those of the
immediate release Effexor® product." (Paper No. 78, 2; accord
Tr. 19.)  Lupin has not demonstrated to this Court's satisfaction
how learning the method of determining whether reduction of
nausea and emesis utilized in Pristiq is related to the defenses
and counterclaims to the patents-in-suit.  It is difficult for
this Court to understand how discovery of a third generation drug
(patent date 1/6/04) is relevant to issues of invalidity or
patentability and infringement of an earlier generation drug
(patent date of 7/16/02).  Moreover, it is not difficult for this
Court to understand Wyeth's concern with laying open otherwise
highly confidential information about a potentially highly
profitable drug, still pending FDA approval.  In the absence of a
specific and cogent basis for such discovery, which this Court
has not seen, discovery shall not be allowed.  Accordingly,
Wyeth's motion for protective order as to Topic 12 is granted.

        Topic 13: "All facts relating to any allegation of
invalidity or unenforceability relative to any claim of the
Patents-in-Suit or any foreign counterparts thereof, including
without limitation, any allegation made: (I) in ay legal
proceeding in the United States; (ii) outside the context of a
litigation, and (iii) opposition proceedings involving a foreign
counterpart of the Patents-in-Suit, the foregoing including
without limitation the following civil actions: No. 03-cv-1293
Wyeth v. Teva (D.NJ); No. 06-cv-156 Alza v. Wyeth (E.D. Texas);
No. 06-cv-222 Wyeth v. Impax (D. Del.); No. 06-cv-386 Wyeth v.
Anchen (C.D. Cal.); No. 06-cv-1098 Wyeth v. Anchen (C.D. Cal.);
No. 07-cv-67 Wyeth v. Osmotic (E.D.N.C.); No. 07-cv-91 Wyeth v.
Mylan (N.D.W.V.); No. 07-cv-5166 Wyeth v. Wockhardt (C.D. Cal.);
No. 07-cv-234 Wyeth v. Sandoz (E.D.N.C.), an identification of
documents allegedly supporting invalidity or unenforceability,
and an identification of persons having knowledge of the
foregoing."

        The dispute as to Topic 13 has been narrowed.  Wyeth has
produced pleadings and expert reports from the nine district
court cases specifically identified but with confidential
information by third parties redacted, citing protective orders
in those cases.  (Paper No. 71, 3).

        Wyeth does not challenge the discoverability of the redacted
information in the pleadings or the expert reports but, correctly
in the Court's opinion, states it is "not at liberty to disclose
such third party information that is subject to protective order
in another court." (Paper No. 72, 2).  As this Court noted at

the hearing, Lupin should contact the third parties involved to attempt to obtain their confidential information, in order to avoid a "clash of courts" or "clash of orders."  (T. 35-36.)  If the third parties do not agree to disclosure, Lupin should seek modification of the protective orders from the courts that entered the orders.  Those courts, of course, are knowledgeable about the initial and continued need for the confidentiality, whether it was a standard, blanket protective order agreed to by the parties, or a contested matter involving a hearing, whether there is a particular concern with Lupin having access to the confidential information as opposed to others, etc.  See Wright, Miller & Marcus, Federal Practice and Procedure: Civil 2d § 2044.1.  If Lupin is unable to gain the agreement of the third parties or an expeditious modification from the courts that issued the protective orders because the cases are closed, etc., Lupin can renew its discovery request, providing to the court the information necessary to intelligently rule on the motion.  Id.; Tucker v. Ohtsu Tire & Rubber Co., Ltd., 191 F.R.D. 495, 500-502 (D. Md. 2000)

In sum, Wyeth's motion for protective order as to Topics 7 and 12 is granted and as to Topic 13 is granted at this time.

Despite the informal nature of this letter, it will constitute an Order of the Court and will be docketed accordingly.

Sincerely yours,

/s/

Susan K. Gauvey
United States Magistrate Judge

12